**Nos. 24-6256, 24-6274**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EPIC GAMES, INC.,

*Plaintiff-Appellee,*

*v.*

GOOGLE LLC, *et al.*,

*Defendants-Appellants*

On Appeal from an Order of the United States
District Court for the Northern District of California

United States District Judge James Donato
Case No. 3:20-cv-05671-JD, 3:21-md-02981-JD

## UNOPPOSED MOTION OF ACT | THE APP ASSOCIATION TO FILE BRIEF AS AMICUS CURIAE SUPPORTING DEFENDANT-PETITIONER

Brian Scarpelli
ACT | THE APP ASSOCIATION
1401 K St NW (Ste 501)
Washington, D.C. 20005
(517) 507-1446
bscarpelli@actonline.org

*Counsel for ACT | The App Association*

October 23, 2024

1

Pursuant to Federal Rule of Appellate Procedure 29(a), ACT | The App Association, respectfully requests leave to file the attached *amicus curiae* brief in support of the motion by Appellant Google LLC et al. ("Google"). Google and Appellee Epic Games, Inc. ("Epic") consent to this motion.

## INTEREST OF AMICUS

Founded in 1998, ACT |The App Association ("App Association") is an international not-for-profit grassroots advocacy and education organization representing the small business technology developer community. Our members are entrepreneurs, innovators, and independent developers within the global app ecosystem that engage with verticals across every industry. We work with and for our members to promote a policy environment that rewards and inspires innovation while providing resources that help them raise capital, create jobs, and continue to build incredible technology. Today, the ecosystem the App Association represents is valued at approximately $1.8 trillion and is responsible for 6.1 million American jobs.[1]

As the App Association has explained in comments filed with the FTC and in testimony before Congress, mobile platforms solve many of the problems that

---

[1] *State of the U.S. App Economy: 2022*, ACT|The App Association (8th ed. 2022), (hereinafter *"App Economy Report"*), https://actonline.org/wp-content/uploads/APP-Economy-Report-FINAL-1.pdf.

developers faced in the early Internet economy.[2] Before mobile platforms, app developers were effectively required to pay publishers and other intermediaries and engage in time-consuming marketing campaigns to make it onto store shelves in order to reach users.[3] These costs imposed formidable barriers to entry, resulting in higher prices and fewer choices for consumers.[4] Software platforms, which provide one-stop shops where developers and consumers transact directly, lower these barriers to entry and thus free up substantial amounts of capital that startups can use to grow their businesses.[5] There are now several hundred thousand companies active in the mobile app market in the United States and nearly three million apps available on major app platforms.[6]

Today, developers overwhelmingly use software platforms—such as Google Play—to distribute their applications. A mutually beneficial relationship has flourished between developers and platform companies.[7] Small developers provide

---

[2] *See Comments of ACT | The App Association to the Federal Trade Commission on Competition and Consumer Protection in the 21st Century (Question 3)* (Aug. 20, 2018) at 3–4, (hereinafter "*App Association FTC Comments*"), https://tinyurl.com/bdncf8bh. *See also* Testimony of Morgan Reed, President ACT | The App Association, Before the U.S. House of Representatives Judiciary Committee, Subcommittee on Antitrust, Commercial and Administrative Law (2019), at 3-6 (hereinafter "Reed Testimony"), https://tinyurl.com/2ynpvx4s.

[3] *See id.*, at 3–4.

[4] *Id.*

[5] *Id.*

[6] *Mobile App Download and Usage Statistics*, buildfire (2024), (hereinafter *"Mobile App Statistics"*), https://tinyurl.com/4a952te7.

[7] *See App Association FTC Comments*, *supra* n.2, at 2, https://tinyurl.com/bdncf8bh.

3

useful and enjoyable digital content and services, which draw consumers to the platform, while the platform provides developers with low overhead costs, simplified market entry, consumer trust, dispute resolution, data analytics, flexible marketing and pricing models, and strengthened IP protections.[8]

The App Association has a keen interest in the legal rules governing software platforms where apps are downloaded by users and monetized by developers. In fact, one of the first amicus briefs the App Association ever filed was in *United States v. Microsoft Corp.,* 253 F.3d 34 (D.C. Cir. 2001) (en banc) (per curiam), which involved an effort to break up a company that provided a "platform[] for software applications." *Id.* at 53. The App Association provides this brief to highlight how small and midsized developers in particular benefit from their symbiotic relationship with companies like Google and to explain how the district court's injunction would upend the app ecosystem writ large to the detriment of these developers, and should therefore be stayed pending the exhaustion of appeals.

### RELEVANCE OF ACT | THE APP ASSOCIATION'S AMICUS BRIEF

The App Association's brief will address a matter critical to Google's motion: the harm to app developers and the broader Android app ecosystem if the district court's injunction is not stayed pending appeal. The district court's permanent injunction upends the nature of the app economy, directing Google to undertake a

---

[8] *Id.*

number of actions, including requiring the Google Play store to distribute competitor app stores and providing them with Google Play's entire catalog of apps.

The App Association's brief will aid the Court by offering its analysis of the effect of the district court's injunction on small and midsized developers. The app association will explain, for instance, that Epic's interests are not aligned with those of the thousands of small and midsized developers that use Google Play, and how the injunction would lead to significant challenges for the thousands of small and midsized developers that use the Google Play Store who would be suddenly put in a quasi-contractual relationship with an unknown number of third-party app stores with which they have had no prior contact and how they would be forced to spend scarce time and resources determining the answers to a range of difficult questions about their new judicially mandated business partners. Lastly, the brief will highlight how the district court's injunction limits the ability of all implicated parties to mitigate unforeseen security, data stewardship, and other unforeseen issues and fails to anticipate the challenges that could result if further litigation leads to different results.

## CONSENT OF THE PARTIES

Both parties have consented to the filing of the App Association's amicus brief. On October 18, 2024, Reedy Swanson, counsel for Google, stated that Google consents to the App Association's participation as amicus. The App Association also contacted Gary Bornstein, counsel for Epic, who stated that Epic consents to this

motion on October 18, 2024.

## CONCLUSION

For the foregoing reasons, the App Association respectfully requests leave to participate as *amicus curiae* in support of Google's motion for a partial stay pending appeal.

Dated: October 23, 2024               Respectfully submitted,

*/s/ Brian Scarpelli*

Brian Scarpelli
ACT | The App Association
1401 K St NW (Ste 501)
Washington, D.C. 20004
(501) 507-1446
bscarpelli@actonline.org

*Attorney for ACT | The App Association.*

7

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion uses a proportionately spaced, 14-point font and contains 942 words according to the count of the word processing system used to compose this brief and thus complies with Federal Rules of Appellate Procedure 27(d)(1)(D) and (E) and (2)(A) and with Circuit Rule 27-1.

*/s/ Brian Scarpelli*
Brian Scarpelli

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2024, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, thereby effecting service on counsel of record who are registered for electronic filing.

Executed on October 23, 2024

                                              */s/ Brian Scarpelli*
                                               Brian Scarpelli