Nos. 24-6256, 24-6274

IN THE
United States Court of Appeals for the Ninth Circuit

IN RE: GOOGLE PLAY STORE ANTITRUST LITIGATION

EPIC GAMES, INC.,

*Plaintiff-Appellee*,

v.

GOOGLE LLC, *et al*.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of California
Nos. 3:20-cv-05671-JD, 3:21-md-02981-JD
Hon. James Donato

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR PARTIAL STAY
OF PERMANENT INJUNCTION PENDING APPEAL
UNDER CIRCUIT RULE 27-3**

| | |
|---|---|
| Katherine B. Wellington<br>HOGAN LOVELLS US LLP<br>125 High Street, Suite 2010<br>Boston, MA 02110<br>Telephone: (617) 371-1000 | Neal Kumar Katyal<br>Jessica L. Ellsworth<br>Reedy C. Swanson<br>HOGAN LOVELLS US LLP<br>555 Thirteenth Street NW<br>Washington, DC 20004<br>Telephone: (202) 637-5600<br>Facsimile: (202) 637-5910<br>neal.katyal@hoganlovells.com |
| November 4, 2024 | *Counsel for Defendants-Appellants* |

*(Additional Counsel Listed on Signature Page)*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

    I.    GOOGLE IS LIKELY TO SUCCEED ON THE MERITS .........................2

        A.    Serious Legal Errors Cast Substantial Doubt On The Liability Verdict .......................................................................................................2

        B.    The Injunction Is Legally Flawed ......................................................5

            1.    The Injunction Makes The Court And A Technical Committee Central Planners For Play's Day-To-Day Operations ................................................................................5

            2.    The Injunction Lacks A Causal Connection To Anticompetitive Conduct, Stalls Competition, And Regulates Prices ..........................................................................6

            3.    Epic Failed To Establish Standing For Injunctive Relief ..............9

    II.    THE EQUITIES STRONGLY FAVOR A STAY ......................................9

CONCLUSION ........................................................................................................12

CERTIFICATE OF COMPLIANCE

INDEX OF EXHIBITS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ............................................................................... 11

*Bahra v. County of San Bernardino*,
  945 F.3d 1231 (9th Cir. 2019) ............................................................................... 2

*Epic Games, Inc. v. Apple Inc.*,
  559 F. Supp. 3d 898 (N.D. Cal. 2021) ................................................................... 2

*Epic Games, Inc. v. Apple Inc.*,
  67 F.4th 946 (9th Cir. 2023) .................................................................................. 3

*Epic Games, Inc. v. Apple Inc.*,
  No. 21-16506, 2021 WL 6755197 (9th Cir. Dec. 8, 2021) ................................. 10

*FTC v. Enforma Natural Prods., Inc.*,
  362 F.3d 1204 (9th Cir. 2004) ............................................................................... 6

*FTC v. Qualcomm Inc.*,
  935 F.3d 752 (9th Cir. 2019) ......................................................................... 1, 11

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) ............................................................................... 8

*In re Victor Techs. Sec. Litig.*,
  792 F.2d 862 (9th Cir. 1986) ............................................................................... 11

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009) ............................................................................... 5

*Murthy v. Missouri*,
  144 S. Ct. 1972 (2024) ........................................................................................... 9

*NCAA v. Alston*,
  594 U.S. 69 (2021) ............................................................................................ 7, 8

## TABLE OF AUTHORITIES—Continued

Page(s)

*Novell, Inc. v. Microsoft Corp.*,
　731 F.3d 1064 (10th Cir. 2013) ........................................................................7

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
　20 F.4th 466 (9th Cir. 2021) ............................................................................7

*Peralta v. Dillard*,
　744 F.3d 1076 (9th Cir. 2014) (en banc) ..........................................................4

*U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*,
　89 F.4th 1126 (9th Cir. 2023) ........................................................................10

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko LLP*,
　540 U.S. 398 (2004) ........................................................................................7

## INTRODUCTION

Epic's opposition buries the lede: The injunction indisputably impacts over a hundred million users and half-a-million developers—none of whom are parties—by radically altering the Play store they know and trust. It injects "extensive security, privacy, and safety risks" into those users' devices, Computer Security Experts Amicus Br. 10; "upend[s] the Android app ecosystem writ large," hurting small developers in particular, ACT Amicus Br. 3-4; and "requires Google to share with competitors features of the Play store that are the direct result of its hard work and innovation," resulting in a "homogenized app store landscape" that is "the opposite of meaningful competition," NetChoice Amicus Br. 7, 9. All this, before the Court can resolve the "serious questions on the merits" in this appeal to be argued in just a few months. *FTC v. Qualcomm, Inc.*, 935 F.3d 752, 756 (9th Cir. 2019) (per curiam).

Epic offers no compelling reason why such a disruptive injunction must take effect before this Court's review of numerous significant legal issues—including this Court's prior ruling against Epic and the misapplication of settled antitrust precedent. Epic never briefed *any* legal justification for the injunction below, which alone should give the Court significant pause about its lawfulness. Even the amicus brief from the U.S. Department of Justice and Federal Trade Commission neither supports nor opposes the stay and is, as they candidly admit, motivated by DOJ's

1

litigation elsewhere against Google. And their brief presents arguments contrary to settled antitrust law, while ignoring the heightened risk of harm to Android users and developers.

This Court should hit pause and grant a stay. Even the District Court, when granting an administrative stay, recognized it "would not at all be surprising if the case were stayed for the life of [the] appeal." Dkt. 1034 at 7:24-25.

## ARGUMENT

### I. GOOGLE IS LIKELY TO SUCCEED ON THE MERITS.

#### A. Serious Legal Errors Cast Substantial Doubt On The Liability Verdict.

1. Epic and DOJ's amicus brief miss the point by discussing possible "overlapping" markets and "submarkets." Opp. 22; DOJ Amicus Br. 14. Those concepts have nothing to do with the preclusion argument Google actually raised, which this Court reviews de novo. *Bahra v. County of San Bernardino*, 945 F.3d 1231, 1234 (9th Cir. 2019). Epic's suit against Apple squarely decided that Apple and Google compete within the markets Epic proposed *in this case*. The *Apple* court found that Google is Apple's "main competitor" with respect to app downloads and in-app purchases, at least for gaming transactions. *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1030 (N.D. Cal. 2021); *see* Mot. 10 (collecting citations). Here, *those same gaming transactions* are in the markets that Epic—a gaming company—proposed, yet the court below allowed Epic to argue that, *even as to those*

2

*transactions*, Google and Apple do not compete.[1] No case in Epic's or DOJ's briefs says a losing party can evade a prior judicial finding of competition in this way. *See* Opp. 22; DOJ Amicus Br. 14. And, to this day, Epic has never argued it can prevail if Apple is within the asserted markets. *See* ICLE Amicus Br. 3-4 ("Ignoring the competition between Apple's App Store and Google Play creates a false sense of Google's market share….").

2. The District Court misstated the legal framework for market definition. Epic alleged Android-only markets, which are "single-brand aftermarkets," *i.e.*, markets where "demand for a good is entirely dependent on the prior purchase of a durable good." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 976 (9th Cir. 2023). But the District Court wrongly excused Epic from having to meet the legal requirements for single-brand aftermarkets. Clinging to formalism, Epic says it never uttered the word "aftermarket"—but it cannot dispute that demand for Android apps and in-app transactions is entirely dependent on prior purchases of Android devices. Citing no case or economic justification, Epic also claims (at 19) that single-brand aftermarkets require one company sell all the durable goods in the foremarket, but the Court applied this legal requirement in *Apple* even though there are many sellers of iPhones. 67 F.4th at 979.

---

[1] Tellingly, over half of Microsoft's amicus brief addresses the importance of gaming transactions to the markets asserted here. Microsoft Amicus Br. 6-11.

3

3. The District Court erred in refusing to hold a bench trial on claims seeking exclusively injunctive relief. This Court will likely conclude Google never consented to trying Epic's injunctive claims in a standalone jury trial. At most Google agreed to a *joint* jury trial proposal involving many other parties indisputably entitled to a jury—but the other parties settled and no such trial occurred. Epic's invocation of Google's contract counterclaim is a red herring; Google demanded a jury trial on that claim only as to issues "so triable," Dkt. 386 ¶ 75, and the District Court *agreed* that Epic's antitrust defenses were not triable by jury. Tr. 3050:15-16.

Even if Google had consented, other Circuits have permitted parties to withdraw consent even days before trial, as Epic does not dispute. Epic has never articulated any prejudice from having a judge decide its equitable claims. Nor did the District Court articulate any such prejudice. Yes, a switch from a bench to a jury trial means a different fact-finder, but if that were prejudice, it would exist in every case. If anything, a bench trial would have been *simpler*, avoiding jury logistics, jury instructions, and the necessity of real-time rulings on evidentiary objections.

4. Epic's defense of the court's procompetitive justification instructions ignores that the court affirmatively misstated the law, an issue reviewed de novo. *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc). The court twice limited the jury's consideration of Google's procompetitive justifications to the "relevant market[s]" found by the jury, Tr. 3328:11-16, 3337:1-5, and squarely

4

rejected Google's request to correct this problem. Tr. 3257:22-3258:10. As Epic does not deny, the Supreme Court and this Court have previously considered cross-market justifications, and this issue has divided other Circuits. *See* Mot. 14. The United States, for its part, asserted a position similar to Google's in the Supreme Court. U.S. Br. at 50-52, *Ohio v. Am. Express Co.*, No. 16-1454 (U.S. Dec. 2017). There is at least a reasonable prospect this Court will disagree with the District Court.

### B. The Injunction Is Legally Flawed.

An injunction that "relie[s] on an erroneous legal premise" cannot stand. *Klein v. City of San Clemente*, 584 F.3d 1196, 1200 (9th Cir. 2009) (quotation marks omitted). The injunction here violates several substantive legal principles, and those issues are reviewed de novo. *Id.*

#### 1. The Injunction Makes The Court And A Technical Committee Central Planners For Play's Day-To-Day Operations.

If the injunction's prohibitions were as "clear[]" as Epic asserts (at 12), query why the District Court felt it necessary to sua sponte establish a technical committee. The answer is that seeking to fundamentally rewrite the Play store's relationships with all the developers, users, OEMs, carriers, and business partners in the Android ecosystem amounts to central planning. The court knew its less-than-three-page injunction offering "practical principles" rather than specifics, Dkt. 1000 at 107:10-11, left many elementary and heavily-litigated questions unresolved, many not "technical" at all—*e.g.*, criteria for what constitutes an "app distribution platform or

5

store," charges for catalog access, and frequency of metadata exports. *See* Dkt. 981 at 4, 10-12. The District Court envisioned this committee second-guessing Google's carefully developed "best practices" on topics like how to safely issue software updates and resolving "very nuts-and-bolts issues." Dkt. 1000 at 34:1-35:20, 84:20-85:23.

A court arrogating this power to itself and a "technical committee" is micromanagement of Google's product design and business model and central planning for *over 100 million non-parties*, including users, developers, OEMS, carriers, and app stores. Neither Epic nor DOJ's amicus brief identifies any precedent supporting such a stark departure from free-market principles. To our knowledge, no U.S. court has ever imposed a technical committee by judicial fiat, *cf. United States v. Microsoft*, No. 1:98-cv-01232-CKK, Dkt. 746 at 9-13 (D.D.C. Nov. 12, 2002) (consent decree), or assigned a single, self-interested competitor such an outsized role in resolving disputes affecting millions of non-parties. *See id.*; *FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1213 (9th Cir. 2004).

> **2. The Injunction Lacks A Causal Connection To Anticompetitive Conduct, Stalls Competition, And Regulates Prices.**

Epic faults Google for arguing for a categorical bar on duty-to-deal remedies, absent a finding of duty-to-deal liability. But the District Court committed multiple

6

legal errors in imposing the specific duty-to-deal remedies here, regardless of any debate over a categorical bar.

*First*, the court held that the principles that operate to limit *liability* for refusing to deal directly with competitors are irrelevant at the remedial stage. *See* Dkt. 1016 at 13-14. But the Supreme Court has held differently, recognizing in *NCAA v. Alston*, 594 U.S. 69, 102 (2021), that "[s]imilar considerations" should govern liability and remedies. Epic disclaims *Alston*'s application here without acknowledging that a principal reason duty-to-deal claims are disfavored is that courts lack expertise in "be[ing] an effective day-to-day enforcer" of "sharing obligations." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 (2004). As then-Judge Gorsuch—the author of *Alston*—explained, courts do not impose *liability* when a party declines to deal with competitors precisely because the *remedy* creates a serious risk that courts become "central planners"—exactly what happened here. *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1073 (10th Cir. 2013).

*Second*, this Court has recognized that when, as here, an injunction does more than simply restrain unlawful conduct, the law *requires* evidence of a "significant causal connection" between the violation and the relief. *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 486 (9th Cir. 2021) (quotation marks omitted). The District Court recognized that Google achieved at least some network

7

effects "legitimately." Dkt. 1016 at 11. Epic, like the District Court, cites no *evidence* that the conduct found unlawful enhanced network effects, let alone to such a degree that Google must build new products to help its competitors. Instead, Epic and DOJ as amicus appear to defend the District Court's view that it could upend any network effects *regardless* of any causal link to the challenged conduct. *See id.*; Opp. 16; DOJ Amicus Br. 10-12. That position cannot be reconciled with *Optronic* or the Supreme Court's warning that forced sharing may "unintentionally suppress procompetitive innovation." *Alston*, 594 U.S. at 102.

*Third*, Google in no way "misrepresent[ed]" the District Court's admission that the injunction will stall competition. *See* Opp. 16-17. Comparing catalog-sharing and third-party store distribution to a shoulder restraint, the District Court asserted that "restrain[ing] competition" by creating a homogenized app-store environment was an appropriate way to "overcome [Google's] network effects." Dkt. 977 at 50:3-52:23.

*Fourth*, Epic cites no case authorizing the District Court to regulate prices for the new services Google has been ordered to provide. Opp. 17-18. Nor does Epic offer any alternative reading of *Kodak*, which bars what the injunction does here: requiring Google's "reasonable fee" for security reviews be based on "actual costs." Dkt. 1017 ¶ 12; *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1225-26 (9th Cir. 1997). Antitrust law ensures that markets, not courts, set prices.

8

### 3. Epic Failed To Establish Standing For Injunctive Relief.

Epic's opposition does not refute two standing problems: Epic's failure to demonstrate redressability and Epic's lack of ongoing injury from Play store billing policies.

First, because Epic's theory that a nationwide injunction will redress its injuries depends on the speculative conduct of non-parties, it must support its theory of third-party behavior with evidence. *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024). Epic's response (at 23-24) ignores this argument, focusing instead on whether Epic's supposed injuries are *traceable* to Google—a separate aspect of standing from redressability.

Second, Epic suffers no ongoing injury-in-fact related to Play billing policies because it no longer offers apps through Play and does not offer its billing system on stores other than its own. Epic's response (at 24-26) misrepresents the record. It cites testimony about Epic's own billing option for apps distributed through *its own store*—not through Play. *See* Tr. 227:8-24.[2]

## II.  THE EQUITIES STRONGLY FAVOR A STAY.

1. Epic never contests that the injunction harms Google's competitive standing, including against Apple, or that Google likely could not reclaim that lost

---

[2] Epic's new assertion (at 25-26) about plans to launch its own store on Play does not create standing; it does not involve offering in-app payments *for apps distributed through Play*.

9

ground if the injunction is reversed. *Compare* Mot. 24-25, *with* Opp. 29-31. Google has thus made a "sufficient showing" of irreparable harm—just as Apple did when seeking to stay a far less intrusive injunction. Order, *Epic Games, Inc. v. Apple, Inc.*, No. 21-16506, 2021 WL 6755197, at *1 (9th Cir. Dec. 8, 2021).

The injunction also jeopardizes Google's brand reputation for safety and security. Mot. 21-23. Epic bizarrely faults Google for citing no evidence to support this real-world harm (at 32), when Google's evidence includes unrebutted testimony from Google's head of security and the Play store marketing chief on these points. Dkt. 1020-3; Dkt. 1020-2; *accord* Computer Security Experts Amicus Br. Ironically, it is Epic who speculates, without citation (at 32), that users may not blame Google because harmful content has occasionally appeared on Play despite Google's best efforts. That says nothing about how users will react to *increased* security risks and harms forced on them via this injunction.

Epic is likewise wrong (at 27-28) to argue the jury necessarily rejected Google's security arguments. Epic makes the same mistake as the District Court by assuming the jury made findings about aspects of the injunction such as linkouts, catalog sharing, and third-party stores when those issues were *never mentioned to the jury*, much less included on the verdict form. *See* Mot. 13; *cf. U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1145 (9th Cir.

10

2023) (court considering equitable relief errs by assuming a jury found facts it "did not necessarily find").

It is undisputed that building the infrastructure and features required by the injunction will cost Google well over a hundred million dollars and countless hours of employee time. *See* Dkt. 1020-1 ¶¶ 15, 23. That cannot be recovered if the injunction is reversed. Unrecoverable expenditures by private parties qualify as irreparable harm. *See In re Victor Techs. Sec. Litig.*, 792 F.2d 862, 864, 865 (9th Cir. 1986). Epic's citation to a case about *government agencies* does not change that longstanding precedent. Opp. 30 (citing *Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020)).

Finally, Epic's invocation of *Qualcomm* backfires. There, a stay was warranted because Qualcomm was ordered to "enter new contractual relationships and renegotiate existing ones on a large scale," just as Google has been ordered to do here, and these changes could not "be easily undone." 935 F.3d at 756. So too here.

2. The public interest strongly favors a stay. As the Computer Security Experts Brief explains (at 3-4), the injunction takes what was formerly a "trusted environment" and forces Google to introduce new risks that can "trick users into installing malware … , direct users to provide credit card and other sensitive financial and personal information, steal users' data, track users' activities" and

11

more. Small developers—who are not represented by behemoths like Epic—will also have to spend precious resources protecting their intellectual property from potentially malicious third-party stores. ACT Amicus Br. 9-11.[3]

Google has already agreed to significantly alter *all* the conduct that Epic challenged as anticompetitive through the States' settlement. *See* Mot. 28. A stay will not preclude the District Court from approving that settlement, which has been pending for nearly a year.

## CONCLUSION

For the foregoing reasons, Google meets the standard for a stay pending appeal.

If the Court denies a stay, Google respectfully requests a reasoned opinion and an extension of the compliance deadlines in ¶¶ 4-7, 9-10, and 13 until 30 days after this Court rules.[4]

---

[3] Microsoft's amicus brief says the quiet part out loud: It wants access to Play's services and users for free, starting this holiday season. Microsoft Amicus Br. 9. But *nothing* stops Microsoft from launching its own Xbox store with its own payment platform on Android *today*. Microsoft could also immediately distribute apps through Play, but wants to free-ride on Play's success instead. Microsoft's unsubstantiated, "trust us" security arguments do not seriously reckon with the injunction's actual heightened security risks to hundreds of millions of Play users. *See* Computer Security Experts Amicus Br. 3-7.

[4] For ¶¶ 11-12, the injunction set a compliance deadline of eight months from issuance of the injunction, two weeks of which elapsed prior to the District Court granting an administrative stay.

12

Dated: November 4, 2024

Katherine B. Wellington
HOGAN LOVELLS US LLP
125 High Street, Suite 2010
Boston, MA 02110
Telephone: (617) 371-1000

Brian C. Rocca
Sujal J. Shah
Michelle Park Chiu
Leigha Beckman
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

Jonathan I. Kravis
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

Respectfully submitted,

/s/ Neal Kumar Katyal

Neal Kumar Katyal
Jessica L. Ellsworth
Reedy C. Swanson
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
neal.katyal@hoganlovells.com

Glenn D. Pomerantz
Kuruvilla Olasa
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Justin P. Raphael
Dane P. Shikman
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this reply complies with applicable type-volume and length limitations of Circuit Court Rule 27-1(1)(d) and Circuit Rule 32-3 because it contains 2,798 words, excluding the items exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).

This reply complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this reply has been prepared in a proportionally spaced typeface using Microsoft Office Word for Office 365 in 14-point Times New Roman font.

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal

## INDEX OF EXHIBITS

| Exhibit | Document Description |
|---|---|
| HH | Dkt. 386 – Defendants' Answer, Defenses, and Counterclaims to Epic's Second Amended Complaint (excerpts) |
| II | 11/6/2023 Trial Transcript (Dkt. 835) (excerpts) |
| JJ | 11/30/2023 Trial Transcript (Dkt. 848) (excerpts) |
| KK | 12/11/2023 Trial Transcript (Dkt. 867) (excerpts) |
| LL | 8/14/2024 Hearing Transcript (Dkt. 1000) (excerpts) |
| MM | 10/18/2024 Hearing Transcript (Dkt. 1034) |

i

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on November 4, 2024.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal