# EXHIBIT HH

1 | Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
2 | Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
3 | Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
4 | Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
5 | Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
6 | **MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
7 | San Francisco, CA 94105
Telephone: (415) 442-1000
8 |
Richard S. Taffet, *pro hac vice*
9 | richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
10 | 101 Park Avenue
New York, NY 10178
11 | Telephone: (212) 309-6000
12 |
13 | *Counsel for Defendants Google LLC et al.*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

14

15

16 | **UNITED STATES DISTRICT COURT**

17 | **NORTHERN DISTRICT OF CALIFORNIA**

18 | **SAN FRANCISCO DIVISION**

19

20 | **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

Case No. 3:21-md-02981-JD

21

22 | This Document Relates To:

23 | *Epic Games Inc. v. Google LLC et al.*,
Case No. 3:20-cv-05671-JD

**DEFENDANTS' ANSWER, DEFENSES, AND COUNTERCLAIMS TO EPIC GAMES INC.'S SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

24

**DEMAND FOR JURY TRIAL**

25

Judge: Hon. James Donato

26

27

28

---

**RESERVATION OF DEFENSES**

Google reserves the right to assert additional defenses when it determines the particulars of Epic's claims, which are not apparent on the face of the Second Amended Complaint. Google reserves the right to amend this Answer to add, delete, or modify defenses based upon legal theories that may be or will be divulged through clarification of Epic's Second Amended Complaint, through discovery, or through further legal analysis of Epic's position in this litigation.

**JURY DEMAND**

Google demands a trial by jury on all issues so triable.

**GOOGLE'S COUNTERCLAIMS IN REPLY**

Defendants and Counter-plaintiffs Google LLC, Google Ireland Limited, Google Commerce Ltd., and Google Asia Pacific Pte. Ltd., (collectively, "Google"), on personal knowledge as to their own acts, and on information and belief as to all others based on their own and their attorneys' investigation, allege the following Counterclaims against Plaintiff and Counter-defendant Epic Games, Inc. ("Epic").

Epic, a multibillion dollar company backed by two of the world's largest video game developers, has profited immensely from the safe, secure platform provided by Google Play, a platform for which it pays a fee equivalent or less than that charged by other major platform providers. Not satisfied with those immense profits, it entered into a legal agreement with Google with which it never intended to comply, deceiving Google and concealing its true intentions to provoke a legal and public relations confrontation that continues to this day. Its actions have put its own users at risk, have harmed Google, and are deserving of relief from this Court.

## I.   JURISDICTIONAL STATEMENT

### A.   Jurisdiction

1.     The Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332 based on the diversity of citizenship between Epic and Google. The amount in controversy exceeds $75,000. The Court also has jurisdiction over Google's counterclaims pursuant to 28 U.S.C. § 1367, because each of Google's counterclaims arises out of the same factual nucleus as Epic's claims brought under 15 U.S.C. § 26 and 28 U.S.C. §§ 1331 and 1337.

1  make in-app purchases—allowing Epic to evade its contractually agreed service fee to Google for

2  those purchases.

3  **F.      Epic's Public Campaign Against Google**

4        49.     Epic sued Google on the same day that it launched its external payment system in

5  violation of the DDA, immediately after Google removed *Fortnite* from Google Play. Epic also

6  began a campaign to combat negative consumer reactions that Epic knew were coming because of

7  its conduct. For example, Epic knew that users would rightly see Epic as acting out of greed, so

8  Epic told users "[w]hen you choose to use Epic direct payments, you save up to 20% as Epic

9  passes along payment processing savings to you." Epic further told consumers that if Google

10  dropped its service fee, Epic would pass on those cost reductions to users. These statements were

11  intended to villainize and harm Google, while distracting from Epic's breach.

12  ## IV.      CLAIMS AND PRAYER FOR RELIEF

13  ### COUNT I

14  ### Breach of Contract

15        50.     Google realleges and incorporates by reference each of the allegations set forth

16  above.

17        51.     Epic entered into express and/or implied contracts with Google, including the

18  DDA. The DDA is a valid and enforceable contract.

19        52.     Google performed all of its obligations under the DDA.

20        53.     The DDA, among other things, expressly required that Epic use Google Play

21  Billing for in-app purchases in apps downloaded through Google Play and that Google be paid a

22  service fee on such in-app purchases. DDA §§ 3.4, 4.1. Google Play's Billing Policy required that

23  apps distributed through Google Play "may not lead users to a payment method other than Google

24  Play's billing system."

25        54.     Epic breached these provisions of the DDA on August 13, 2020 by activating its

26  own external payment system through a hotfix in *Fortnite* designed to bypass Google Play Billing.

27  By sidestepping the contractual provisions relating to Google Play's billing system and by failing

28

-37-

73.     Google therefore has standing to seek declaratory judgment of its rights under its contracts with Epic, including the DDA.

74.     Google seeks and is entitled to a declaratory judgment that: (a) the DDA is a valid, lawful, and enforceable contract; (b) Epic breached that agreement; and (c) Google has the contractual right under the DDA to remove *Fortnite* from Google Play and terminate Epic as a registered Google Developer due to its breach.

**V.     JURY DEMAND**

75.     Google demands a trial by jury on all issues so triable.

**VI.     PRAYER**

Wherefore, Counterclaimant Google respectfully requests that the Court:

A.     Decree that Epic is liable for breach of its contractual obligations under the DDA;

B.     Decree that Epic is liable for breach of its implied covenant of good faith and fair dealing;

C.     Decree that Epic was unjustly enriched;

D.     Award Google compensatory damages, punitive damages, attorney's fees, and interest;

E.     Award restitution and disgorgement of all earnings, profits, compensation, benefits, and other ill-gotten gains obtained by Epic as a result of its conduct;

F.     Enter a permanent injunction enjoining Epic, and all persons and entities in active concert or participation with Epic, from facilitating, assisting, or participating in (a) the continued operation of Epic's unauthorized external payment mechanism in its apps, including *Fortnite*; (b) the introduction of any further unauthorized external payment mechanisms into any apps, including *Fortnite*, on Google Play; and (c) the removal of Epic's payment system as an available

DEFENDANTS' ANSWER TO EPIC'S SECOND AMENDED COMPLAINT AND COUNTERCLAIMS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

# EXHIBIT II

**Volume 2**

**Pages 117 - 322**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION, | ) ) ) **NO. 21-md-02981-JD** ) |
| _____ THIS DOCUMENT RELATES TO: | ) ) |
| EPIC GAMES, INC., | ) ) |
| Plaintiff, | ) ) |
| VS. | ) **NO. 3:20-cv-05671-JD** ) |
| GOOGLE, LLC., et al., | ) ) |
| Defendants. _____ | ) ) ) |

San Francisco, California
Monday, November 6, 2023

**TRANSCRIPT OF PROCEEDINGS**

**(Pages 120-129 placed under seal by Order of the Court and redacted.)**

STENOGRAPHICALLY REPORTED BY:

Kelly Shainline, CSR 13476, RPR, CRR
Official United States Reporter

ALLISON - DIRECT / EVEN

1  promotions or events like a season pass.  They could be things
2  we call consumables, which might enhance your gameplay, and it
3  could be for add-on content.  It could be for anything that you
4  would transact from within that game application.
5  Q.  Do other games or other developers that sell games through
6  the Epic Game Store also offer in-app purchases?
7  A.  Yes.
8  Q.  And what payment solution may these third-party developers
9  use to handle in-app purchases within their own games?
10 A.  They have the option to use our payment solution, Epic
11 Direct Pay, or they can bring their own if they've set their
12 game up to do so.
13 Q.  And what is -- what does Epic charge developers in
14 connection with handling in-app purchases?
15 A.  Is that through Epic Direct Pay or --
16 Q.  Well, let's start with through Epic Direct Pay.  What does
17 Epic charge?
18 A.  12 percent.
19 Q.  And what does Epic charge if the developer chose another
20 payment solution?
21 A.  Zero.
22 Q.  Which payment solution do developers on the Epic Game
23 Store typically choose to use?
24 A.  Typically it's Epic Direct Pay.
25 Q.  And does the Epic Game Store distribute any games that are

ALLISON - DIRECT / EVEN

1  free to download -- freemium, what the jury has heard about

2  this morning -- and then offer in-app purchases?

3  A.   We do.

4  Q.   And how does Epic Game Store monetize freemium games if

5  the developer chooses to use another payment system other than

6  Epic Direct Pay?

7  A.   We don't.

8  Q.   Do you think it's unfair to Epic when a developer chooses

9  to make its application or game free on the Epic Game Store yet

10  Epic does not receive any payment?

11  A.   No.

12  Q.   Why not?

13  A.   Well, the revenue is one thing, but we are running by

14  design a low-margin business on the third-party side.  What is

15  really beneficial to everybody in the ecosystem, including

16  Epic, is traffic.  So games of scale who come and bring their

17  own payment solution are bringing pretty substantial monthly

18  active users and traffic that helps every developer in our

19  ecosystem, including Epic.

20  Q.   Now, you mentioned that developers have a choice.  Has

21  Epic always allowed developers this choice between using Epic

22  Direct Pay or another payment platform for their in-app

23  purchases?

24  A.   Not at first, we did not.

25  Q.   And why did Epic decide to change its policy on this?

**PROCEEDINGS**

1                 THE COURT:  Okay.  I'll see you in the morning.

2             MR. BORNSTEIN:  Thank you, Your Honor.

3             THE CLERK:  Court's in recess.

4                 (Proceedings adjourned at 3:16 p.m.)

5                         ---oOo---

6

7

8                 <u>CERTIFICATE OF REPORTER</u>

9         I certify that the foregoing is a correct transcript

10   from the record of proceedings in the above-entitled matter.

11

12   DATE:   Monday, November 6, 2023

13

14

15

16   _____

17       Kelly Shainline, CSR No. 13476, RPR, CRR
                 U.S. Court Reporter

18

19

20

21

22

23

24

25

# EXHIBIT JJ

Volume 15

Pages 2855 - 3065

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

IN RE GOOGLE PLAY STORE          )
ANTITRUST LITIGATION,            )
                                 )  **NO. 21-md-02981-JD**
_____  )
THIS DOCUMENT RELATES TO:        )
                                 )
EPIC GAMES, INC.,                )
                                 )
          Plaintiff,             )
                                 )
  VS.                            )  **NO. 3:20-cv-05671-JD**
                                 )
GOOGLE, LLC., et al.,            )
                                 )
          Defendants.            )
_____  )

San Francisco, California

Thursday, November 30, 2023

**TRANSCRIPT OF PROCEEDINGS**

STENOGRAPHICALLY REPORTED BY:

Kelly Shainline, CSR 13476, RPR, CRR
Official United States Reporter

PROCEEDINGS

1    colleague.

2         **THE COURT:**  Well, I'm not getting into -- these are

3    macro issues about why do we need them.  Whoever wants to do it

4    is fine, but we're not -- I'm not line editing.

5         Let me start with the contract claims.  Okay?  So to my

6    recollection, Epic was open and very public about not paying

7    Google Bit Play's fees.  I just don't see -- in fact, one of

8    the witnesses here today said, "Yes, we breached the contract."

9         Why do we need to have all these breach of contract -- I

10   mean, you can own it.  We can do damages.  All right?  We don't

11   have to ask the jury to go through the rather technical

12   exercise of this point of saying, "Well, you heard the Epic

13   fellow say 'We breached the contract.'  Do you agree?"  We can

14   get rid of all that.

15        I am persuaded that the illegality defense is viable, but

16   it's for me.  It's an issue for the Court to decide.  All

17   right?

18        So if the jury decides that there has been a Section 1 or

19   Section 2 violation, I will then decide whether it -- was it

20   the DDA?  Is that the -- okay -- the DDA is void or

21   unenforceable because it violates the antitrust laws.

22        You will retain that argument; but from what I've seen --

23   you can tell me if you disagree -- the illegality defense is

24   equitable and it's a question for the Court, and I think

25   there's pretty good case law on that.  So you wouldn't lose it.

**PROCEEDINGS**

1    You would be in the position where Google would put their

2  damages case in.  You get a number, and that's it on contracts.

3  Okay?

4    That also would take care, I think, of the unclean hands

5  defense, which doesn't make -- and maybe unjust enrichment, but

6  I want to get to that one separately.

7    All right.  So here's the proposition:  Let's just agree

8  that you can put in a stipulation that -- you can -- let me

9  step back.  It's been a long day.

10    We could stipulate that they breached the contract because

11  whatever reason.  If you want to say something in there because

12  they disagree with it, you can do that.  The only exercise for

13  the jury is to determine how much, if anything, that breach is

14  worth.

15    And then you will do with me all of the postverdict

16  exercises on whether there's an unclean hands defense to the

17  enforcement of the contract or particularly unjust enrichment,

18  whether the contract is illegal and unenforceable and so on.

19    How does that sound?

20    **MR. EVEN:**  Your Honor, so I think if you are telling

21  me that you are taking the defense, then I don't think we have

22  any interest in these instructions as Your Honor says.  We are

23  not arguing here that the conduct was not in breach if the

24  contract is valid.

25    **THE COURT:**  That's what I heard.

1

2

3                    **CERTIFICATE OF REPORTER**

4          I certify that the foregoing is a correct transcript

5   from the record of proceedings in the above-entitled matter.

6

7   DATE:    Thursday, November 30, 2023

8

9

10

11   _____

12          Kelly Shainline, CSR No. 13476, RPR, CRR
                    U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT KK

Volume 17

Pages 3294 - 3442

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

IN RE GOOGLE PLAY STORE        )
ANTITRUST LITIGATION,          )
                               )   **NO. 21-md-02981-JD**
_____)
THIS DOCUMENT RELATES TO:      )
                               )
EPIC GAMES, INC.,              )
                               )
          Plaintiff,           )
                               )
  VS.                          )   **NO. 3:20-cv-05671-JD**
                               )
GOOGLE, LLC., et al.,          )
                               )
          Defendants.          )
_____)

San Francisco, California

Monday, December 11, 2023

**TRANSCRIPT OF PROCEEDINGS**

STENOGRAPHICALLY REPORTED BY:

Kelly Shainline, CSR 13476, RPR, CRR
Official United States Reporter

**JURY INSTRUCTIONS**

1    You may not find that a company willfully acquired or

2   maintained monopoly power through anticompetitive means if it

3   has acquired or maintained that power solely through the

4   exercise of superior foresight and skill or because of natural

5   advantages, such as unique geographic access to raw materials

6   or markets or because of economic or technological efficiency,

7   including efficiency results from scientific research, or by

8   obtaining a lawful patent or patents, or because changes in

9   cost or consumer preferences have driven out all but one

10   supplier.

11    In summary, you must first determine whether Epic has

12   proven that Google's conduct has caused substantial harm to

13   competition in a relevant market.  If Epic has done so, you

14   must then determine whether Google has justified its conduct by

15   proving that its conduct was reasonably necessary to achieve

16   competitive benefits for consumers in that relevant market.

17    However, if Epic has proven that Google could have readily

18   achieved the same benefits using reasonably available

19   alternative means that would have created substantially less

20   harm to competition, then those benefits cannot justify

21   Google's conduct.  In other words, if you find that Google has

22   proven a pro competitive rationale, then you must determine if

23   Epic has met its burden to prove the existence of a

24   substantially less restrictive alternative to achieve Google's

25   pro competitive rationale.

**JURY INSTRUCTIONS**

1    Now, if you find that a challenged restraint resulted in
2    competitive benefits in a relevant market that were not
3    achievable through substantially less restrictive means, then
4    you must balance those competitive benefits against the
5    competitive harm resulting from the same restraint.

6    If the competitive harm substantially outweighs the
7    competitive benefits, then the challenged restraint is
8    unreasonable.

9    If the competitive harm does not substantially outweigh
10    the competitive benefits, then the challenged restraint is not
11    unreasonable.

12    In conducting this analysis, you must consider the
13    benefits and harm to competition and consumers in the market
14    not just to a single competitor or a group of competitors.

15    If you have found a market that is two-sided, you must
16    balance the harms and benefits on both sides of the two-sided
17    market as a whole.

18    Epic bears the burden of proving by a preponderance of the
19    evidence that the anticompetitive effect of the conduct
20    substantially outweighs its benefits.

21    This will be the last claim.  Epic also claims that Google
22    engaged in an unlawful tying arrangement.  A tying arrangement
23    is one in which the seller will sell one product or service,
24    referred to as the tying product, only on the condition that
25    the buyer also purchase a separate product or service, referred

1

2

3              **<u>CERTIFICATE OF REPORTER</u>**

4          I certify that the foregoing is a correct transcript

5  from the record of proceedings in the above-entitled matter.

6

7  DATE:   Monday, December 11, 2023

8

9

10

11                     _Kelly Shainline_

12          Kelly Shainline, CSR No. 13476, RPR, CRR
                  U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT LL

**Pages 1 - 155**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION, ) ) ) ) | **NO. 21-md-02981-JD** |
| THIS DOCUMENT RELATES TO: ) ) EPIC GAMES, INC., ) )       Plaintiff, ) )   VS. ) ) GOOGLE, LLC., et al., ) )       Defendants. ) ) | **NO. 3:20-cv-05671-JD** |

San Francisco, California

Wednesday, August 14, 2024

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

STENOGRAPHICALLY REPORTED BY:
Kelly Shainline, CSR 13476, RPR, CRR
Official United States Reporter

1    MR. BACCETTI:  This like we have, there's no question

2  here on feasibility.  We're not disputing that this can be

3  implemented.  The point is years of experience releasing

4  software and, indeed, we have been fortunate to not have

5  serious issues that the software is down and so on.  That's not

6  a coincidence.  That comes from process of well-known, like,

7  book of, like, best practices that we follow, and that takes

8  time.  So that takes, for example, several months to test, to

9  see, and so on.  So it doesn't happen just because Google

10  engineers are bright.  There's a lot of work to make that

11  happen.

12    And I just want to make super clear as well that we --

13  this is coming from inside Google.  We know these processes and

14  we know how much time it takes, and that's not something that

15  is publicly available outside and I think it's difficult to

16  make assumptions like that.

17    THE COURT:  I understand what you're saying and I get

18  it, but I'm also a little skeptical of the "Take my word for it

19  because only I know."  We can't do that.  Okay?

20    MR. BACCETTI:  Of course.

21    THE COURT:  I mean, look, this is -- I'm not in any

22  way suggesting ill-motives or anything else on this particular

23  topic, but, you know, every person in this situation on

24  Google's side is going to say, you know, "Only I know all the

25  work it's going to take and nobody else does and take my word

1    for it, it's going to take two years."  I can't do that.

2        I appreciate the fact that there is an imbalance of

3    information.  I understand that.  And Professor Ernst and his

4    colleagues have not had an opportunity to actually do anything

5    on the level that you know.  We're going to probably end up

6    fixing that with this technical committee to some extent.  It's

7    not going to micromanage Google.  It's not going to run

8    Google's business or anything like that, but it will be there

9    to solve these areas of disagreement.

10        But, you know, as a matter of drafting the injunction

11   saying, "You know, you're just going to have to trust me,

12   Judge, because for reasons I can't share with you right now,

13   it's going to be a lot of work," I can't do that.  So if you

14   can put metrics on it, that helps me.

15        I fully appreciate nobody wants to throw out software

16   that's going to crash phones and Play Stores and make user

17   lives miserable.  I get that.  And you will have the space to

18   be safe, to be responsible, put out a good product.  There's no

19   question that that's going to happen, but whether it takes 12

20   to 16 months or 3 to 6, that's the issue.

21        Okay.  We're going to go into developer choice, which is

22   where I stopped you at that point.

23            **PROFESSOR ERNST:**  Great.  So Google proposes that by

24   default, developers would not receive the benefits of being

25   listed on third-party app stores.  They would need to

1    is just that I proposed in my statement two different types of

2    designs for how many taps.  I proposed a one-tap mechanism and

3    a two-tap mechanism.

4         **THE COURT:**  I think that's more granular than an

5    injunction needs.

6         **PROFESSOR ERNST:**  Great.

7         **THE COURT:**  Remember, I'm not here to tell people how

8    to tap their phones.  Okay?  That's going to be up to the

9    compliance with the injunction.

10        **PROFESSOR ERNST:**  I have nothing more, Your Honor.

11        **THE COURT:**  Okay.  I think we have covered all of the

12   tech issues that are germane to the injunction.

13      Anything else plaintiffs?  Dr. Mickens?  Professor Ernst?

14        **PROFESSOR ERNST:**  No, Your Honor.

15        **PROFESSOR MICKENS:**  No, Your Honor.

16        **THE COURT:**  Okay.  Google, anything else?  Any closing

17   comments?

18        **MR. KLEIDERMACHER:**  No, Your Honor.

19        **THE COURT:**  Good.  Okay.

20      All right.  Let's get into our attorney presentations on

21   remedy.

22      Now, before I do that, though, I am going to institute

23   a -- or I'm going to create a commission, a committee.  Not

24   commission.  Committee.

25      Now, here's how this is going to work:  This is modeled on

1   other antitrust cases and I think it's an effective approach.

2   Each side will have one person, sort of a party person like you

3   were doing a three-person arbitration, and then those two

4   people will pick the third.  All right?  So you'll have someone

5   who is jointly selected by the two representatives on the

6   committee.

7       I would prefer counsel to have someone I have already

8   heard from.  I'm not going to necessarily tie your hands.  But,

9   for example, I would be interested in having someone like

10  Dr. Mickens or Professor Ernst on the committee.  I'm going to

11  leave it up to you, but my preference would be someone I've

12  heard from.  And then, Google, somebody here that I've already

13  heard from.  It makes it a lot easier for me to manage this

14  committee.

15      And then the person that they pick will be an industry

16  person who does software and apps, somebody who's just

17  generally knowledgeable about the field.  All right?

18      And what this commission will do -- committee, not

19  commission -- committee is going to, you know, help work out

20  timeline issues and some of these very nuts-and-bolts issues

21  about what should the API look like and things that ought to be

22  delegated, at least in the first instance, to experts in the

23  field.

24      I will, of course, resolve all disputes that the committee

25  cannot resolve, but I think it's going to be helpful to have

```
 1   this.

 2        And it will also monitor compliance.  It will be charged

 3   with ensuring that Google is honoring the terms of the

 4   injunction.  I have no reason to believe that it won't, but

 5   this is just a safeguard to make sure everything is on the up

 6   and up.  Okay?  So it's going to have kind of a dual function:

 7   Problem solving and compliance monitoring.

 8        Now, you-all will split the bill for that.  You'll will

 9   pay whatever the customary rates are of the people who are in

10   50/50 shares, whoever is on the committee, and there will also

11   be probably 90-day status reports will be in the form of we'll

12   call them compliance reports, and then other things can be

13   raised in the context of that as well.

14        Okay.  So that's how that's going to work.  Before

15   everybody left, I wanted to share the fact that having people

16   I've seen in action will be useful to me.

17        Okay.  Our experts and declarants and witnesses can

18   retreat to the gallery, and we'll hear closing comments.

19        MR. POMERANTZ:  Your Honor, can the witnesses leave if

20   they so desire?

21        THE COURT:  Yes, they're perfectly free to leave.

22        And let's also reposition the cameras so they're on you

23   two as speakers.

24        MR. BORNSTEIN:  Your Honor, if I may, before I get

25   into the argument, there is one point relating to the hot tub
```

1    well, that puts the burden on all of us to be as clear as we

2    can be, but it certainly doesn't militate in favor of not

3    having a remedy at all, which is that the way Google talks

4    about it.

5            **THE COURT:** Of course.  Look, the injunction has to be

6    plain so Google knows what the rules of the road are, but it's

7    not going to be so detailed that I anticipate or attempt to

8    anticipate every possible thing that might happen and have a

9    remedy for it.  We're not doing that.

10        Look, the injunction is going to be about three pages

11    long.  Okay?  It's practical principles.  You come back to me

12    over the time period, which I do want to ask you about next,

13    when there are issues.

14        Now, here's what I'm thinking.  There must be a cap.  If I

15    go in the direction that you have urged and I have been

16    thinking about, there has to be some cap on the time period

17    that all this will be happening.

18        Now, Dr. Bernheim was admirably forthright in saying

19    six years was just a number and it's a judgment call and he's,

20    of course, right.  I do not believe six years is the right

21    number.  I think that's just too long.

22        Now, I don't know what the number would be below that.

23    I'm still thinking about it, and -- but what's your sense of

24    what a good number is?  I'll just give you some touch points.

25    Microsoft was five years.  An Intel/FTC decree was five years.

1

2

3                      **CERTIFICATE OF REPORTER**

4            I certify that the foregoing is a correct transcript

5 from the record of proceedings in the above-entitled matter.

6

7 DATE:    Wednesday, August 14, 2024

8

9

10

11                                   _____

12              Kelly Shainline, CSR No. 13476, RPR, CRR

                  U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT MM

                                              Pages 1 - 11

                           UNITED STATES DISTRICT COURT

                          NORTHERN DISTRICT OF CALIFORNIA

                       BEFORE THE HONORABLE JAMES DONATO, JUDGE


IN RE GOOGLE PLAY STORE          )
ANTITRUST LITIGATION             )
                                 )  **NO. 21-md-02981-JD**
_____  )
                                 )
THIS DOCUMENT RELATES TO:        )
                                 )
EPIC GAMES, INC.,                )
                                 )
            Plaintiff,           )
                                 )
   VS.                           )  **NO. 3:20-cv-05671-JD**
                                 )
GOOGLE LLC, et al.,              )
                                 )
            Defendants.          )
_____  )


                                    San Francisco, California
                                    Friday, October 18, 2024


                       **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:


For Plaintiff:
                         CRAVATH, SWAINE & MOORE LLP
                         825 Eighth Avenue
                         New York, New York 10019
                    BY:  **GARY BORNSTEIN, ATTORNEY AT LAW**


              **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

STENOGRAPHICALLY REPORTED BY:

Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
CSR No. 7445, Official United States Reporter

```
 1    APPEARANCES:  (CONTINUED)

 2    For Defendant Google LLC:
                       HOGAN LOVELLS US LLP
 3                     Columbia Square
                       555 Thirteenth Street, NW
 4                     Washington, D.C. 20004
               BY:  JESSICA L. ELLSWORTH, ATTORNEY AT LAW
 5

 6                     MUNGER, TOLLES & OLSON LLP
                       560 Mission Street, 27th Floor
 7                     San Francisco, California 94105
               BY:  JUSTIN P. RAPHAEL, ATTORNEY AT LAW
 8

 9                     MORGAN, LEWIS & BOCKIUS LLP
                       One Market - Spear Street Tower
10                     San Francisco, California 94105
               BY:  BRIAN C. ROCCA, ATTORNEY AT LAW
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

|  |  |
|---|---|
| 1 | **Friday - October 18, 2024**                              **10:02 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | **THE CLERK:**  Calling Civil 20-5671, Epic Games, Inc. |
| 5 | vs. Google LLC and Multidistrict Litigation 21-2981, In Re |
| 6 | Google Play Store Antitrust Litigation. |
| 7 | Counsel? |
| 8 | **MR. BORNSTEIN:**  Good morning, Your Honor.  Gary |
| 9 | Bornstein for plaintiff, Epic Games. |
| 10 | **MS. ELLSWORTH:**  Good morning, Your Honor.  Jessica |
| 11 | Ellsworth for Google. |
| 12 | **THE COURT:**  Okay.  We're going to take up this morning |
| 13 | the request for what I'll call a full stay pending the duration |
| 14 | of the appeal and what I'll call a temporary stay till |
| 15 | the Court of Appeals has an opportunity to act on the many |
| 16 | motions that Google has filed. |
| 17 | So I do not need -- I have read the briefs.  I obviously |
| 18 | know the record inside and out.  I do not need necessarily to |
| 19 | hear anything more from you.  I certainly don't want you just |
| 20 | to repeat what's in the briefs.  But if there is anything else |
| 21 | you want me to add, something new, fresh, and interesting, I'm |
| 22 | happy to hear it.  Then I'm going to give you my oral |
| 23 | disposition. |
| 24 | Let me start with plaintiff. |
| 25 | **MR. BORNSTEIN:**  Your Honor, I have -- if we're talking |

1   about the administrative stay, the little stay?

2           **THE COURT:**  The temporary stay.

3           **MR. BORNSTEIN:**  Yes.  I have nothing to add on that.

4   Your Honor has seen our papers, is aware of the Ninth Circuit

5   papers.  And unless Your Honor has questions, I have nothing

6   more on that.

7           **THE COURT:**  Okay.  Defendant, Google.

8           **MS. ELLSWORTH:**  Certainly, Your Honor.

9       We think the temporary stay that we've asked for in this

10  case will enable this Court and the Ninth Circuit, if

11  necessary, to address whether a stay pending appeal is

12  warranted, given the substantial changes that the injunction

13  envisions for Play and for the Android Ecosystem, the hundred

14  million users of that --

15          **THE COURT:**  Remember I said don't -- anything new,

16  fresh, and exciting?  I know all this already.  I've seen it in

17  the papers.  Anything new and fresh?

18          **MS. ELLSWORTH:**  No, Your Honor.

19          **THE COURT:**  It's okay just to say submitted.

20          **MS. ELLSWORTH:**  It's --

21          **THE COURT:**  All right.  Let me just start with the

22  stay pending the resolution of the appeal from now until

23  whenever the appeal gets done.  That is denied.

24      The request for that long-term stay, what I've been

25  calling the full stay, does not satisfy the factors for a stay

1   that are stated in *Nken*, N-k-e-n, *v. Holder*, 556 U.S. 418 on

2   page 434, 2009 case.

3       I'm just going to hit two, I think, of the most important

4   ones.  They're all important, but particularly with respect to

5   the merits, *Nken* states that the party seeking a stay -- in

6   this case, Google -- needs to make a, quote, strong showing,

7   closed quote, of likelihood of success on the merits.

8       That has not at all been demonstrated here.  I spent

9   considerable effort and detail in the order denying Google's

10  request for judgment as a matter of law and a new trial

11  articulating why the merits were not in Google's favor.

12      First and foremost, the verdict in this case was amply

13  supported by a mountain of evidence about Google's

14  anticompetitive conduct in the relevant product markets; and at

15  the end of the day, that mountain of evidence, combined with a

16  very straightforward application of well-established antitrust

17  principles, rendered a verdict that was, in my view, soundly

18  supported by the record in this case.

19      Now, Google has circled back in its stay papers to the

20  idea of competition with Apple.  This, of course, has been a

21  major theme from Day One of this case.  And I discuss again in

22  detail, in the order denying the new trial motion and judgment

23  as a matter of law motion that Google brought, why that is not

24  at all inconsistent with the antitrust verdicts of

25  monopolization by Google of the relevant Android markets that

6

1    were at issue in this case.

2        Now, it's plain as day Google would prefer a world where

3    there's only one competitor that it has to face, Apple, but

4    that is not a result or a world that is contemplated by our

5    federal antitrust laws.

6        So there are other reasons in the JMOL and new trial

7    motion, but really, there's been no demonstration of any

8    likelihood of success on the merits, let alone a strong showing

9    of likelihood of success as *Nken* requires.

10        Now, with respect to the public interest, the same reasons

11    indicate that staying the injunction through appeal would not

12    serve the public interest.  Google has been found to be a

13    monopolist in two key Android-related relevant markets.  A much

14    better argument can be made that the public interest is best

15    served by opening those markets up today to competition, as our

16    antitrust laws envision, certainly not continuing what the jury

17    found to be monopolistic conduct in those relevant markets.

18        I have doubts about irreparable injury.  Google makes some

19    points about how expensive things will be.  That has to be

20    taken into account in the context of who Google is as a

21    corporation.  I don't want to be glib about it, but the

22    expenses that Google suggested it might incur appear to be a

23    drop in the bucket compared to the profits it reaps annually

24    from Play Store revenue and from Google Billing Systems

25    revenue.

1     But I don't need to dwell on that because I think the
2  first two are enough:  lack of public interest in favor of a
3  stay and lack of any convincing evidence, let alone strong
4  evidence, that Google is going to prevail on the merits.
5     So that's denied in terms of the life of the appeal.
6     However, I will grant a stay to allow the Ninth Circuit to
7  consider the papers that Google has filed.  And let me be
8  clear.  This is not something I approve of.  I don't think any
9  judge would.  Google has filed so-called emergency motions in
10 multiple courts, demanding that judges act by Google's
11 deadlines and basically projecting a my-way-or-the-highway
12 attitude.
13    Now, I will leave it up to you to reflect on whether
14 that's a good way of practicing.  But in any event, mainly as a
15 gesture of comity to a sister court, I'm not going to impose
16 any kind of party-related demands, and I'm going to give the
17 Ninth Circuit all the time it wants to take.  This sounds like
18 an act of generosity.  It's not.  But they can take all the
19 time they want to decide the stay papers without feeling
20 pressured by Google or any other party.
21    So I will grant a stay pending the Ninth Circuit's
22 disposition of the request that Google has filed before that
23 court.
24    It would not at all be surprising if the case were stayed
25 for the life of appeal.  That appears to be the MO in our

1  Circuit.  But that's for somebody else to decide, not for me.

2      But in any event, I do think, as comity and courtesy

3  demand, that my sister court have an opportunity to take a look

4  at it without feeling pressure.  So that will be granted.

5      So that's the disposition.

6      Now, I do have one question for both of you.  What do you

7  want to do about judgment and attorney's fees?

8          **MR. BORNSTEIN:**  I can take that first --

9          **THE COURT:**  Yes.

10         **MR. BORNSTEIN:**  -- Your Honor.

11         **THE COURT:**  You're the claimant for the fees.

12         **MR. BORNSTEIN:**  Yes.

13     So we have initiated those discussions with Google.  We've

14  proposed a briefing schedule for that.  My hope is, during the

15  course of putting together the materials, we can also have some

16  conversations that would spare Your Honor the need to address

17  it and we can resolve it consensually.  But we have proposed a

18  schedule to get the briefs in to the Court.

19     Since judgment hasn't been entered, my understanding at

20  least is that our deadline has not yet begun to run; and so,

21  hopefully, we can work something out on that for a schedule.

22  There's obviously --

23         **THE COURT:**  Is there going to be a big disagreement?

24         **MR. BORNSTEIN:**  I don't know yet, Your Honor.  We

25  haven't actually had a substantive conversation about it with

 1   Google.  We've just started the discussion about a briefing

 2   schedule proposal.

 3           **THE COURT:**  Okay.

 4           **MR. BORNSTEIN:**  But as Your Honor is aware, there was

 5   a lot of work that was done in this matter.  My hope is that

 6   Google recognizes that and we're able to come to a relatively

 7   swift agreement, but that has not been historically something

 8   we've seen in this matter.  So hope springs eternal, but we'll

 9   see, Your Honor.

10           **THE COURT:**  All right.  Let me share this with you.  I

11   did this in my other antitrust MDL which resulted in almost,

12   I think, $800 million in verdicts and settlements.  I just --

13   it was a five-year -- no, that was almost an eight-year case.

14   It was a mountain of attorney's fees records.  I'm not able to

15   go through that.

16       So I have an accountant who I relied on in that case.  She

17   was nominated by both parties, did a very good job.  And she

18   essentially reviewed whatever the conflict points are,

19   duplicative billing, these expenses are too high, whatever else

20   you may be discussing.

21       If there's anything huge, I would do it, but she did all

22   kind of the nuts and bolts, and it worked out very well.  So I

23   may end up using her again here.  I'll share that with you if

24   we need -- obviously, if we need to get to that point.  Okay?

25   But try hard to work it out.

1        **MR. BORNSTEIN:**  We would love nothing more,

2   Your Honor.

3            **THE COURT:**  Okay.  All right.  Anything else, Google?

4        **MR. ROCCA:**  Nothing, Your Honor.

5            **THE COURT:**  Okay.  Thanks for coming in.

6        **MR. BORNSTEIN:**  Your Honor, may I ask one question --

7            **THE COURT:**  Yes, of course.

8        **MR. BORNSTEIN:**  -- just for clarification, Your Honor?

9            **THE COURT:**  Yes.

10       **MR. BORNSTEIN:**  I heard Your Honor say that you were

11  granting the little stay.

12           **THE COURT:**  What I'm calling the temporary stay.

13       **MR. BORNSTEIN:**  Yes.  And I will refrain from

14  rearguing the point.

15      I just wanted to ask for clarity about what the duration

16  of that stay Your Honor was intending.

17           **THE COURT:**  Until the Ninth Circuit decides the same

18  motions that Google has filed in that court that they filed

19  here --

20       **MR. BORNSTEIN:**  Okay.

21       **THE COURT:**  -- with respect to what I'm calling the

22  full stay.

23       **MR. BORNSTEIN:**  All right.  So Google had requested in

24  its papers to Your Honor to have however long it takes the

25  Ninth Circuit to decide plus 30 days.

1    **THE COURT:**  I'm not going to do that.  It'll be up to

2 the Circuit to decide.  Once they make that decision, it's

3 going to be their case, and they can do whatever they want at

4 that point.

5    But I'm just not going to allow Google to set these

6 deadlines for busy judges that it purports to set and give my

7 colleagues an opportunity to breathe.  Okay?

8    **MR. BORNSTEIN:**  Very good.

9    **THE COURT:**  Okay.  Good.  Thank you.

10   **MR. BORNSTEIN:**  Thank you, Your Honor.

11   **THE CLERK:**  All rise.  Court is in recess.

12   (Proceedings adjourned at 10:13 a.m.)

13                    ---oOo---

14

15             **CERTIFICATE OF REPORTER**

16    I certify that the foregoing is a correct transcript

17 from the record of proceedings in the above-entitled matter.

18

19 DATE:  Friday, October 18, 2024

20

21             *Ana Dub*

22 _____

23       Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG

24       CSR No. 7445, Official United States Reporter

25