Case Nos. 24-6256, 24-6274

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

### EPIC GAMES, INC.

Plaintiff-Appellee

v.

### GOOGLE LLC, et al.

Defendants-Appellants

---

On Appeal from the United States District Court
for the Northern District of California
Nos. 3:20-cv-05671-JD, 3:21-md-02981-JD
Hon. James Donato, United States District Judge

---

### AMICUS BRIEF AND
### MOTION FOR LEAVE TO FILE AMICUS BRIEF
### BY THE CIVIL JUSTICE ASSOCIATION OF CALIFORNIA
### IN SUPPORT OF DEFENDANTS-APPELLANTS,
### URGING REVERSAL

---

Calvin House
GUTIERREZ, PRECIADO & HOUSE, LLP
3020 E. Colorado Blvd.
Pasadena, CA 91107
Telephone: 626-449-2300
Fax: 626-449-2330
calvin.house@gphlawyers.com

Attorneys for Amicus Curiae
Civil Justice Association of California

## Motion for Leave to File Amicus Curiae Brief

The Civil Justice Association of California (CJAC) seeks leave pursuant to Federal Rule of Appellate Procedure 29 to file the attached amicus curiae brief.

*CJAC's interest*. CJAC is a nonprofit organization whose members are businesses from a broad cross-section of industries. Our principal purpose is to educate the public about ways to assure that civil liability laws are fair, efficient, certain, and uniform. Toward that end, CJAC regularly appears as amicus curiae in cases of interest to its members, including cases involving the propriety and business impact of nationwide injunctions that regulate business conduct, as here.

*Why an amicus brief is desirable*. The sweeping, nationwide injunction issued by the District Court will have wide-ranging effects on businesses other than the two litigants. CJAC's brief will bring to the Court's attention the deleterious effects the injunction may have on those not parties to the lawsuit. In addition, CJAC's brief will address the dangers posed by using the vehicle of a private, single

plaintiff antitrust lawsuit to regulate a marketplace involving multiple competitors and millions of consumers.

*Attempt to obtain consent.* As required by Circuit Rule 29-3, CJAC's counsel asked counsel for both sides to consent to the filing of this amicus brief. Counsel for the Google parties consented. Counsel for Epic Games, Inc. responded: "Epic has advised all prospective amici in this matter that it will consent to the filing of an amicus brief, on the condition that the amicus discloses the amount of any funding it has received from a party or amicus or its affiliates in the past 12 months. If your client is not willing to make that disclosure, then Epic will take no position one way or the other on its request for leave to file." Because neither the Federal Rules of Appellate Procedure nor this Court's Circuit Rules require such a disclosure, CJAC is seeking leave from the Court to file its brief.

Dated: December 4, 2024

Respectfully submitted,

GUTIERREZ, PRECIADO & HOUSE, LLP

s/ Calvin House

3

# Amicus Curiae Brief

## A.    Table of Contents

Motion for Leave to File Amicus Curiae Brief ....................................2

Amicus Curiae Brief ......................................................................... 4
   A.  Table of Contents .................................................................. 4
   B.  Table of Authorities ............................................................. 5
   C.  Identity of the Amicus Curiae .................................................. 7
   D.  Authorship of the Brief ........................................................ 8
   E.  Argument ........................................................................... 8
     i.   The District Court entered a nationwide injunction without paying any attention to the interests of the thousands of app developers and millions of users who would be affected. ................................9
    ii.   The Court should instruct the District Court to limit injunctive relief to what is necessary to remedy any actual injury to the plaintiff. .............................15
   F.  Certificate of Compliance under Rule 32(g)(1)..........................18

## B.   Table of Authorities

## Cases

*Ass'n of Am. Physicians & Surgs. v. United States FDA*,
    13 F.4th 531 (6th Cir. 2021)..................................................... 11

*Braidwood Mgmt. v. Becerra*,
    104 F.4th 930 (5th Cir. 2024)................................................... 11

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ............................................................... 15

*Control Data Corp. v. Int'l Bus. Machs. Corp.*,
    306 F. Supp. 839 (D. Minn. 1969) ........................................... 13

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ............................................................... 15

*Department of Homeland Security v. New York*,
    140 S.Ct. 599 (2020) .............................................................. 11

*E. Bay Sanctuary Covenant v. Garland*,
    994 F.3d 962 (9th Cir. 2021) .............................................12, 13

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ............................................................... 10

*Gill v. Whitford*,
    585 U.S. 48 (2018) ................................................................. 15

*Labrador v. Poe*,
    144 S.Ct. 921 (2024) .............................................................. 11

*Rhode Island v. Massachusetts*,
    37 U.S. (12 Pet.) 657 (1838)................................................... 16

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ............................................................... 10

*Trump v. Int'l Refugee Assistance Project*,
    582 U.S. 571 (2017) ............................................................... 10

*United States v. American Tel. & Tel. Co.*,
   461 F.Supp. 1314, 1333 (D.C. Dist. 1978) .................................. 9

*United States v. Microsoft Corp.*,
   56 F.3d 1448 (D.C. Cir. 1995) .................................................... 14

*United States v. National Broadcasting Co., Inc.*,
   65 F.R.D. 415, 419 (C.D. Cal. 1975) ......................................... 9

*United States v. Texas*,
   599 U.S. 670, 694 (2023) ......................................................... 11

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................. 15

*Williams Sports Rentals, Inc. v. Willis*,
   90 F.4th 1032 (9th Cir. 2024) ................................................... 16

*Wolf v. Innovation Law Lab*,
   140 S.Ct. 1564 (2020) .............................................................. 12

*Zepeda v. INS*,
   753 F.2d 719 (9th Cir. 1983) .................................................... 16

**Rules**

Circuit Rule 29-3 ............................................................................ 3

Fed. R. App. Proc. 29 ..................................................................... 2

Fed. R. Civ. Proc. 23 ..................................................................... 12

## C.    Identity of the Amicus Curiae

Founded in 1979, the Civil Justice Association of California (CJAC) is dedicated to improving the civil liability system as it affects California businesses, in the legislature, the regulatory arena, and the courts. CJAC's membership base consists of businesses and associations from a broad cross-section of California industries.

An important part of CJAC's work is identifying cases in the appellate courts that may affect those not directly involved in the appeal. Through the filing of amicus curiae briefs such as this one, CJAC seeks to bring the concerns of the business community to the attention of the appellate courts. CJAC hopes that, by providing a broader perspective on the issues being decided, it will assist those courts in arriving at sound decisions in the best interests of all those who may be affected.

CJAC has identified this case as one that warrants filing an amicus curiae brief because of the nature of the injunction that the District Court awarded. That injunction orders changes to the business environment that will have effects that reach far beyond the litigants. Because that injunction was awarded in a single-plaintiff

lawsuit, none of the protections for the public interest that would accompany class action litigation or a lawsuit by the United States applied. Instead, the District Court adopted a remedy urged by a single self-interested competitor. With this brief, CJAC urges the Court to reverse the District Court's decision, and, if it does not overturn the liability finding, to direct entry of relief narrowly tailored to address any harm that Epic can prove it suffered.

**D.    Authorship of the Brief**

Calvin House, CJAC's counsel, authored the entire brief. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than CJAC and its members contributed money that was intended to fund preparing or submitting the brief.

**E.    Argument**

Injunctions that restructure business relationships the way that the District Court's order does in this case are problematic. The order was not rendered in a class action, which would have provided an opportunity for all those affected to provide input on the appropriate remedy and would have required the District Court to determine what was in the best interest of the class. The order was

8

not entered in a civil lawsuit brought by the United States, which would have been "acting on behalf of its citizens." *United States v. National Broadcasting Co., Inc.*, 65 F.R.D. 415, 419 (C.D. Cal. 1975). Civil enforcement proceedings have traditionally been brought by the United States "presumably because the antitrust laws are of quasi-constitutional breadth and significance, and constitute a means for protecting the economic interests of the citizens of this country, not infrequently on a national scale." *United States v. American Tel. & Tel. Co.*, 461 F.Supp. 1314, 1333 (D.C. Dist. 1978).

Instead, a private party with its own ax to grind, but no stake in much of the relief that the District Court granted, convinced the District Court to require Google to change the way it does business with other app developers and users, without any meaningful input from those developers and users.

### i. *The District Court entered a nationwide injunction without paying any attention to the interests of the thousands of app developers and millions of users who would be affected.*

The injunction that the District Court issued will affect app developers and users across the United States. Justices of the Supreme Court have warned against the dangers of nationwide

9

injunctions, when issued at the instance of a single party, in the absence of the searching analysis of all affected interests that would accompany the issuance of an injunction in a representative action.

In 2018, Justice Thomas was "skeptical that district courts have the authority to enter universal injunctions. These injunctions did not emerge until a century and a half after the founding. And they appear to be inconsistent with longstanding limits on equitable relief and the power of Article III courts." *Trump v. Hawaii*, 585 U.S. 667, 713 (2018).[1] Last year, he said that, "[b]y providing relief beyond the parties to the case, this remedy [a universal injunction] is 'legally and historically dubious.'" *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 402 (2024).

In 2020, Justice Gorsuch wrote that "[u]niversal injunctions have little basis in traditional equitable practice. . .. Their use has proliferated only in very recent years. [Citation omitted] And they

---

[1] See also *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 585 (2017) (Thomas, J., concurring in part and dissenting in part) (suggesting that it is unreasonable to leave a preliminary nationwide injunction in place when "[n]o class has been certified, and neither party asks for the scope of relief" to extend to an "unidentified, unnamed group").

hardly seem an innovation we should rush to embrace. By their nature, universal injunctions tend to force judges into making rushed, high-stakes, low-information decisions." *Department of Homeland Security v. New York*, 140 S.Ct. 599, 600 (2020) Just last year, he opined that "[m]atters have not improved with time." *United States v. Texas*, 599 U.S. 670, 694 (2023). "[I]n recent years a number of lower courts have asserted the authority to issue decrees that purport to define the rights and duties of sometimes millions of people who are not parties before them." *Ibid.*[2]

Judges in the lower federal courts, including this one, have taken note. *Braidwood Mgmt. v. Becerra*, 104 F.4th 930, 954 (5th Cir. 2024) ("it does not fall into one of the narrow categories that we have previously identified as particularly appropriate for universal injunctive relief"); *Ass'n of Am. Physicians & Surgs. v. United States FDA*, 13 F.4th 531, 541 (6th Cir. 2021) ("But Justices (and

---

[2] See also *Labrador v. Poe*, 144 S.Ct. 921, 927 (2024) ("As in so many other recent cases, the district court's universal injunction effectively transformed a limited dispute between a small number of parties focused on one feature of a law into a far more consequential referendum on the law's every provision as applied to anyone.") (Gorsuch, J., concurring).

commentators) have started to question the constitutionality of these types of broad defendant-focused injunctions"). "The Supreme Court has stayed the universal injunction that we affirmed in that case, which should perhaps give us pause about extending the decision to affirm a universal injunction here. *Wolf v. Innovation Law Lab*, 140 S.Ct. 1564 (2020)." *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 993 (9th Cir. 2021) (Miller, J., dissenting).

There are other forums more suitable to addressing the legality of the sweeping business changes ordered by the District Court, forums where the interests of the other app developers, users and the general public would have to be considered.

For example, when antitrust claims are asserted in a class action, there are procedures to ensure adequate consideration of other interests. Parties may not pursue claims on behalf of class members unless the District Court determines that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a)(4). Reasonable efforts must be made to provide notice to those with an interest in the case, the members of the proposed class. Fed. R. Civ. Proc. 23(c)(2). No settlement can be approved unless the

District Court finds that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

"But when the criteria of Rule 23 are not satisfied, granting class-wide relief anyway sidesteps that rule and its requirement that the district court conduct a 'rigorous analysis' before certifying a class." *E. Bay Sanctuary Covenant*, *supra*, 994 F.3d at 991-92 (9th Cir. 2021) (Miller, J., dissenting).

If the United States institutes an antitrust action, "[t]he Attorney General is the representative of the public interest in antitrust cases brought by the government" *Control Data Corp. v. Int'l Bus. Machs. Corp.*, 306 F. Supp. 839, 845 (D. Minn. 1969). If the government negotiates a consent decree, the Tunney Act requires the District Court to inquire into "the purpose, meaning, and efficacy of the decree. If the decree is ambiguous, or the district judge can foresee difficulties in implementation, we would expect the court to insist that these matters be attended to. And, certainly, if third parties contend that they would be positively injured by the decree, a district judge might well hesitate before assuming that the decree is appropriate." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1462

13

(D.C. Cir. 1995). Because a consent decree "might well do unexpected harm to persons other than those 'alleging specific injury from the violations set forth in the complaint,'" the District Court "might ponder those sort of concerns in determining whether to enter the judgment." 56 F.3d at 1459.

The District Court's insistence on a broad injunction is particularly inappropriate in this case because Google *was* the subject of representative actions, which resulted in settlements with a developer class and a consumer class, and with all fifty States, the District of Columbia and two territories. 4-ER-865, 915. The settlement with the States was designed to expand developer and consumer choice while protecting user privacy and safety. 3-ER-691; 3-ER-697-699. Although the settlement with the States was submitted for approval to the same trial judge who issued the injunction requested by Epic, he refused to entertain any discussion about it and plunged ahead with the relief urged by one private party. 1-ER-7-23; 2-ER-338-339, 363. The District Court should have heeded Justice Gorsuch's caution about issuing an injunction at Epic's urging that "purport[s] to define the rights and duties of

14

sometimes millions of people who are not parties before them." 599 U.S. at 694.

### ii. The Court should instruct the District Court to limit injunctive relief to what is necessary to remedy any actual injury to the plaintiff.

The power of the United States District Courts is limited under Article III. It "exists only to redress or otherwise to protect against injury to the complaining party." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Based on that principle, an injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). The remedy awarded to a plaintiff "must be 'limited to the inadequacy that produced [his] injury in fact.'" *Gill v. Whitford*, 585 U.S. 48, 66 (2018).

A plaintiff's remedy must be tailored to redress the plaintiff's particular injury. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). See also *Gill*, 585 U.S. 48, 72 (vacating statewide injunction because "[t]he Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it").

15

This Court has recognized this limiting principle. "We have long understood that our role is to 'render a judgment or decree upon the rights of the litigant[s].' *Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) 657, 718 (1838). We 'may not attempt to determine the rights of persons not before the court,' nor may we redress their potential injuries. *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)." *Williams Sports Rentals, Inc. v. Willis*, 90 F.4th 1032, 1041 (9th Cir. 2024).

The District Court's injunction would regulate Google's interactions with over half a million developers, original equipment manufacturers, mobile carriers, and Android app stores, but none of them are parties to the action. There was no evidence that Epic would suffer concrete future injury that such a broad-reaching injunction would prevent. Therefore, the District Court did not have

the power to enter such an injunction. It should have limited the relief it awarded to conduct that had a direct, concrete effect on Epic.

Dated: December 4, 2024

Respectfully submitted,

GUTIERREZ, PRECIADO & HOUSE, LLP

s/ Calvin House

**F.     Certificate of Compliance under Rule 32(g)(1)**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because

☒ this brief contains 2,895 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains __ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App P. 32(a)(6) because:

☒ This brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Century Schoolbook font, *or*

☐ This brief has been prepared in a monospaced typeface using __ with __.

s/ <u>Calvin House</u>

Attorney for Amicus Curiae
Civil Justice Association of California

Dated: December 4, 2024