Nos. 24-6256, 24-6274

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

EPIC GAMES, INC.,

*Plaintiff- Appellee*,

*v.*

GOOGLE LLC, *et al.*,

*Defendants-Appellants,*

_____

On Appeal from the United States District Court
for the Northern District of California (Hon. James Donato)
Nos. 3:20-cv-05671-JD, 3:21-md-02981-JD

_____

**BRIEF OF ROBLOX CORPORATION AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS/APPELLANTS GOOGLE LLC**

_____

Marc R. Lewis
Rina Plotkin
LEWIS & LLEWELLYN LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 800-0590

December 4, 2024

*Attorneys for Amicus Curiae
Roblox Corporation*

## **RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, Roblox Corporation states that it does not have a parent corporation and that no publicly held corporation holds 10% or more of its stock.

Dated:  December 4, 2024                Respectfully submitted,

                                        /s/  *Marc R. Lewis*
                                            Marc R. Lewis
                                            Rina Plotkin
                                            LEWIS & LLEWELLYN LLP
                                            601 Montgomery Street, Suite 2000
                                            San Francisco, California 94111
                                            Telephone: (415) 800-0590

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES ................................................................................. iii

INTEREST OF AMICUS CURIAE ........................................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 2

ARGUMENT ........................................................................................................... 4

CONCLUSION ........................................................................................................ 8

CERTIFICATE OF COMPLIANCE .................................................................... 10

# TABLE OF AUTHORITIES

**FEDERAL RULES**

Federal Rules of Appellate Procedure Rule 29(a)(4)(E) ..........................................1

**OTHER AUTHORITIES**

Android Security & Privacy Team, *Combating Potentially Harmful Applications with Machine Learning at Google: Datasets and Models*, Android Developers Blog (Nov. 15, 2018) ........................................................................5

Google, *Enhanced Google Play Protect real-time scanning for app installs*, Google Security Blog (Oct. 18, 2023) ................................................................4

Google, *How we fought bad apps and bad actors in 2023*, Google Security Blog (Apr. 29, 2024) ..........................................................................................5

Google, *Impersonation*, Google Support, ...............................................................7

Google, *Intellectual Property*, Google Support, ......................................................7

GSMA, *The State of Mobile Internet Connectivity: Key findings 2024* (Oct. 2024) ....................................................................................................................4

Kotzias, P., Caballero, J., and Bilge, L. *How Did That Get In My Phone? Unwanted App Distribution on Android Devices*, Institute of Electrical and Electronics Engineers (May 2021) .......................................................................6

Rideout, V., Peebles, A., Mann, S., & Robb, M. B., *The Common Sense Census: Media Use by Tweens and Teens, 2021*, Common Sense Media (2022) ...........4

Roblox Corporation, Form 10-Q (filed October 31, 2024) ......................................1

SOCRadar, *The Dangers of Third-Party App Stores: Risk and Precautions*, SOCRadar (Mar. 8, 2024) ...................................................................................7

## INTEREST OF AMICUS CURIAE[1]

Roblox Corporation—and more specifically its users—have a direct interest in this appeal. Roblox's experience is that there are important safety and security benefits to users of a platform when that platform is able to set standards for, review, and approve software enhancements, user-generated content, or apps that appear on its platform.

Roblox Corporation created and runs the popular online experience platform called Roblox. The Roblox platform provides tools for anyone to create 3D experiences (like a simulated theme park or playing as a superhero) and connects millions of users with those experiences each day. Nearly 90 million users per day create and/or enjoy immersive experiences on Roblox.[2] Roblox is also—though not only—an app. Users can access Roblox on a wide range of devices through the Roblox Client, including on Android devices through Google's Play Store, iOS devices through Apple's App Store, PCs, Macs, gaming consoles, and virtual reality

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), no party's counsel has authored this brief in whole or in part, or contributed money to fund its preparation or submission, and no person other than amicus or its counsel contributed money intended to fund this brief's preparation or submission. Additionally, the parties have consented to the filing of this brief.

[2] Based on Daily Active Users as of Q3 2024. *See* Roblox Corporation, Form 10-Q (filed October 31, 2024) at 31, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1315098/000131509824000250/rblx-20240930.htm (last accessed Dec. 4, 2024).

1

devices. Roblox is thus a "developer" for purposes of this appeal. In other words, for each platform on which Roblox can be experienced, Roblox operates like any other developer, subject to the terms set by each platform.

Roblox can attest to the benefits that its users have experienced vis-à-vis Google's approach to the Play Store: Many Roblox users are minors, so safety and security are of paramount concern. Google's process for review and approval of apps available on the Play Store enhances user safety and security, and provides those apps greater legitimacy in the eyes of users (especially parents of minor users). Google further protects users by restricting links within apps that lead users outside of the Play Store's secure environment, and by allowing parents to select their level of control over their children's authority to make in-app purchases. These are important benefits that all apps, including Roblox's, enjoy by choosing to be available on the Play Store.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court's permanent injunction compels Google to abandon critical security measures that shield over one hundred million Android users—including minors—from scams, fraud, and malware. By ordering Google to open its platform to third-party app stores, requiring it to share Google Play's entire catalog of apps with any app store, and removing its ability to restrict links that take users out of the

Play Store environment, the ruling creates security vulnerabilities for bad actors to exploit.

Roblox has a unique perspective on this issue, because it is both a developer with a popular app (distributed through the Play Store, among other channels) and a platform where hundreds of millions of users create and enjoy experiences and where Roblox strives to create a safe and secure environment that enables and encourages creativity and civility.

As a developer, Roblox has experienced growth and success by distributing the Roblox App through the Play Store. Roblox is also intimately familiar with the crucial role that platforms play in preserving the safety, security, and privacy of users, and the particular benefit that users experience when their fundamental concerns are addressed. Many Roblox users are minors, so privacy and safety concerns are paramount for Roblox and central to its appeal to users and their parents. Roblox believes that the Play Store as it currently operates offers privacy and safety benefits that would be undermined if the district court's Order and permanent injunction are affirmed.

3

**ARGUMENT**

Over half of the world's population uses a smartphone.[3] 43% of American children aged 8–12 own a smartphone, as do 88% of American children aged 13–18.[4] Most of that smartphone usage is through apps. Considering how much of our—and our children's—lives take place on smartphones and specifically on apps, digital security is crucial.

For Roblox, with nearly 90 million users every day (about 39% of which are users under 13), safety and security are critical. Indeed, they are the most important factors in any decision relating to platform structure and policy. And of course, the same is true for many consumers, particularly parents, in selecting platforms for themselves or their children.

Google Play Protect scans 125 billion apps daily—that is, it processes over 87 million potential threats per minute—to protect users from malware and unwanted software.[5] In 2023 alone, Google Play Protect prevented over two million policy-

---

[3] GSMA, *The State of Mobile Internet Connectivity: Key findings 2024* (Oct. 2024) at 2, https://www.gsma.com/r/wp-content/uploads/2024/10/The-State-of-Mobile-Internet-Connectivity-Report-Key-Findings-2024.pdf (last accessed Dec. 3, 2024).

[4] Rideout, V., Peebles, A., Mann, S., & Robb, M. B., *The Common Sense Census: Media Use by Tweens and Teens, 2021*, Common Sense Media (2022), at 22, https://www.commonsensemedia.org/sites/default/files/research/ report/8-18-census-integrated-report-final-web_0.pdf?utm_source=substack&utm_ medium=email (last accessed Dec. 3, 2024).

[5] Google, *Enhanced Google Play Protect real-time scanning for app installs*, Google Security Blog (Oct. 18, 2023),

violating apps from appearing on the Play Store, compelled hundreds of thousands of app developers to enhance security before disseminating their products to Android users, and detected over five million malicious applications outside the Play Store.[6] And before an app can be published on the Play Store, Google conducts human and machine-based tests for privacy issues, content policy compliance, and malware violations.[7] *See* 5-ER-1130–50. Google also prohibits app developers from including external links to download applications, on account of such links often ending up as phishing scams or malware.

Most third-party app stores do not invest nearly as many resources as Google does into user protection—and users of those stores suffer as a result. A 2020 study found that third-party app stores available on Android devices present five times as much risk compared to the Play Store, with users of some of the most-used

---

https://security.googleblog.com/2023/10/enhanced-google-play-protect-real-time.html (last accessed Dec. 3, 2024).

[6] Google, *How we fought bad apps and bad actors in 2023*, Google Security Blog (Apr. 29, 2024), https://security.googleblog.com/2024/04/how-we-fought-bad-apps-and-bad-actors-in-2023.html (last accessed Dec. 3, 2024).

[7] Android Security & Privacy Team, *Combating Potentially Harmful Applications with Machine Learning at Google: Datasets and Models*, Android Developers Blog (Nov. 15, 2018), https://android-developers.googleblog.com/2018/11/combating-potentially-harmful.html (last accessed Dec. 3, 2024) (explaining how Google employs deep learning to detect malicious functionality hidden within an app's code).

5

alternative app stores facing an up to 19 times higher probability of having malware and unwanted apps installed on their phone.[8]

The district court's injunction ignores these facts and all but forces Google to eliminate the preventative security measures that make the Play Store the safest option for Android users. Compelling Google to permit developers to promote links to external sites within their apps does not serve a competitive purpose and only increases the risk that users will be taken outside of Google's secure environment and scammed or have malware unintentionally installed on their device. 1-ER-4. This risk is especially salient for minors, who are already more vulnerable to deceptive links and fraudulent applications.

The district court's injunction will allow bad actors to harm consumers. If, as the district court ordered, the Play Store distributes third-party app stores, users may download and use those stores, trusting that they are safe because they are available on the Play Store. But Google will be unable to vet those stores with the same rigor as it applies to vetting apps. *See* 2-ER-211. And because Google will have to share its catalog with those third-party stores, those stores will appear legitimate to consumers—whether they are carrying hidden malware or not.

---

[8] Kotzias, P., Caballero, J., and Bilge, L. *How Did That Get In My Phone? Unwanted App Distribution on Android Devices*, Institute of Electrical and Electronics Engineers (May 2021), https://ieeexplore.ieee.org/document/9519429 (last accessed Dec. 3, 2024).

These proposed remedies will undoubtedly lead to the proliferation of third-party app stores, which in turn raises the risk of Roblox's users falling victim to impersonator apps. While the Play Store vets potential apps to ensure that they do not impersonate any other apps[9] or infringe on others' intellectual property,[10] Roblox has no guarantees that third-party app stores—even well-meaning ones—will expend resources to do the same. Indeed, the third-party app stores currently on the market have "relaxed app submission and review policies."[11] As an example of how these lax policies harm consumers, in 2022, there was a set of Android apps that appeared to be benign file managers but were found to be infecting users with a banking trojan; the Play Store removed these apps as soon as this was uncovered, but at least one of these malware apps is still—two years later—available on multiple third-party app stores.[12]

---

[9] Google, *Impersonation*, Google Support, https://support.google.com/googleplay/android-developer/answer/9888374?hl=en (last accessed Dec. 3, 2024).

[10] Google, *Intellectual Property*, Google Support, https://support.google.com/googleplay/android-developer/answer/9888072?hl=en (last accessed Dec. 3, 2024).

[11] SOCRadar, *The Dangers of Third-Party App Stores: Risk and Precautions*, SOCRadar (Mar. 8, 2024), https://socradar.io/the-dangers-of-third-party-app-stores-risks-and-precautions/ (last accessed on Dec. 3, 2024).

[12] *Id.*

Bad actors will be able to leverage this lack of oversight on third-party app stores to disseminate counterfeit versions of Roblox, which will mislead Roblox's users and damage Roblox's reputation. Roblox's child consumers are especially susceptible to downloading an application that looks just like Roblox, but in actuality contains malware, inappropriate content, or fraudulent in-app offerings. Parents of Roblox's users that are deceived by these counterfeit apps will associate such negative experiences with Roblox's brand, leading to a loss of trust in Roblox that Roblox has earned over the past two decades. And the more third-party app stores there are that Google is required to list on the Play Store, the greater the risk to Roblox's users and Roblox's brand.

In sum, the Play Store provides real benefits to security and privacy within the Android ecosystem and to Roblox's users. No platform is going to be perfect in its efforts to rid an ecosystem of bad actors, but it is Roblox's experience that real results are obtained where there is an enhanced focus on safety and security. Here, however, the district court's Order impairs Google's ability to focus on safety and security and takes away some of the sharpest arrows in its quiver.

## **CONCLUSION**

The district court's proposed remedies threaten to undercut the security measures that safeguard Android users, especially minors, from online threats. Roblox respectfully urges the Court to consider the far-reaching implications of the

8

district court's Order on user safety and security, and to vacate the permanent injunction.

Dated: December 4, 2024        Respectfully submitted,

/s/ *Marc R. Lewis*
    Marc R. Lewis
    Rina Plotkin
    LEWIS & LLEWELLYN LLP
    601 Montgomery Street, Suite 2000
    San Francisco, CA 94111
    Telephone: (415) 800-0590

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s) 24-6256 & 24-6274**

I am an attorney for Roblox Corporation.

**This brief contains 1,776 words**, excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ X ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ *Marc R. Lewis*             **Date** December 4, 2024

## CERTIFICATE OF SERVICE

I certify that on December 4, 2024, I electronically filed the foregoing amicus curiae brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: December 4, 2024      */s/ Marc R. Lewis*
                                                   Marc R. Lewis
                                                   *Attorney for* Amicus Curiae *Roblox Corporation*