Case Nos. 24-6256, 24-6274

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

*EPIC GAMES, INC.,*

*Plaintiff-Appellee,*

v.

**GOOGLE LLC**, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
Nos. 3:20-cv-05671-JD, 3:21-md-02981-JD
Hon. James Donato, United States District Judge

## BRIEF OF *AMICUS CURIAE* STACO LINK CO., LTD. IN SUPPORT OF PLAINTIFF-APPELLEE

Christopher L. Lebsock (CA SBN 184546)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
clebsock@hausfeld.com

YoungKi Rhee (AZ SBN 021994)
WE THE PEOPLE LAW GROUP
6F. Chinyang Bldg.
47 Kyonggidae-ro Seodaemun-gu,
Seoul, South Korea 03752
Telephone: +82-2-2285-0062
ykrhee@wethepeople.co.kr

*Counsel for Amicus Curiae*

## DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, STACO LINK Co., Ltd. states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

Dated:      January 7, 2025

/s/ *Christopher L. Lebsock*
Christopher L. Lebsock (SBN 184546)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
clebsock@hausfeld.com

i

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................................ i
TABLE OF CONTENTS ....................................................................................... ii
TABLE OF AUTHORITIES ................................................................................ iii
I.   INTEREST OF *AMICUS CURIAE* ............................................................... 1
II.  INTRODUCTION .......................................................................................... 2
III. ARGUMENT .................................................................................................. 5
IV.  CONCLUSION ............................................................................................... 9
CERTIFICATE OF COMPLIANCE ..................................................................... 11
CERTIFICATE OF SERVICE ............................................................................... 12

# TABLE OF AUTHORITIES
**Cases**                                                                                           Page(s)

*E. & J. Gallo Winery v. Andina Licores S.A.*,
   446 F.3d 984 (9th Cir. 2006) ...................................................................................8

*In re Google Play Store Antitrust Litig.*,
   No. 21-md-02981-JD (N.D. Cal.) ..........................................................................passim

*Info. Sys. Audit & Control Ass'n, Inc. v. DQS Certification India Pvt. Ltd.*,
   No. 22-cv-00061, 2023 WL 7052351 (N.D. Ill. Oct. 26, 2023) ..........................8

*Mujica v. AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014) ...................................................................................7

*Nat'l Soc'y of Pro. Eng'rs v. United States*,
   435 U.S. 679 (1978) .................................................................................................4

*Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*,
   737 F. Supp. 1515 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992) ...................................................................................................................9

*Republic of the Philippines v. Marcos*,
   862 F.2d 1355 (9th Cir.1988) (en banc) .................................................................8

*Steele v. Bulova Watch Co.*,
   344 U.S. 280 (1952) .................................................................................................9

**Korean Court Decisions**

Korean Supreme Court decision 2020da238424, October 15, 2020 .........................6
Korean Supreme Court decision 2017da219232, April 13, 2023 .............................6
Seoul Central District Court decision 2018gahab506082, September 18, 2019 .......6
Seoul Central District Court decision 2019gadan5162753, October 20, 2020 .........6

**Rules**

Ninth Circuit Rule 29-2(a) ........................................................................................2
Fed. R. App. P. 29(a)(4)(E) .......................................................................................2
Fed. R. App. P. 29(a)(5) ...........................................................................................11
Fed. R. App. P. 32(a)(6) ...........................................................................................11
Fed. R. App. P. 32(a)(7)(B) .....................................................................................11
Fed. R. App. P. 32(f) ................................................................................................11
Fed. R. App. R. 32(a)(5) ..........................................................................................11

Fed. R. Civ. P. 44.1 ................................................................................................8

**Other Authorities**

*Google Play Developer Distribution Agreement*, Google, (Feb. 5, 2024),
https://play.google/developer-distribution-agreement.html ......................................6

## I. INTEREST OF *AMICUS CURIAE*

STACO LINK Co., Ltd. ("STACO") is a Korean-domiciled app developer with its principal place of business in Anyang, Korea. STACO develops Android game apps that it offers for distribution on the Google Play Store. Though its apps are free to download, they do offer in-app purchases. STACO's apps have been downloaded by consumers in the United States and around the world, and, thus, the district court's injunction directly affects STACO.[1]

STACO, and several dozen foreign-domiciled app developers that distribute mobile content on the Google Play Store, all of whom are represented by amicus' counsel, may, or will, bring claims against Google, LLC ("Google") arising out of the same, or substantially similar conduct that animated Epic Games, Inc.'s ("Epic") claims against Google.

Pursuant to the Google Play Developer Distribution Agreement ("DDA"), which Google imposes on all of its app developers, including STACO, antitrust claims against Google can only be brought within the geographic confines of the

---

[1] The Ninth Circuit has expedited review of the appeal in this matter. In doing so, however, it required amicus support in favor of affirming the district court's decision to be filed by January 7, 2025. *See* No. 24-6274 at ECF No. 18. As a result, preparation of amicus briefs (and client review) occurred during the 2024 end of year holiday season, a fact that has materially limited counsel's ability to have its dozens of clients' views on this appeal heard by this Court. Under these circumstances, STACO's views must serve as a proxy for dozens of other foreign-domiciled app developers.

1

Northern District of California. As such, STACO, on behalf of itself and other foreign-domiciled app developers, submits this amicus brief in support of the district court's injunction against Google on the grounds that the injunction contains terms that benefit all developers that seek to generate revenue from their content within the territorial confines of the United States.

Additionally, STACO, as a foreign-domiciled app developer, has an interest in ensuring that certain conclusions by the district court concerning the geographic limits of its injunction are cabined to the specific facts and arguments raised by the parties below.

Pursuant to Federal Rule of Appellate Procedure 29(a) and Ninth Circuit Rule 29-2(a), *amicus curiae* has obtained consent from Epic and Google to file this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus curiae* additionally states that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

## II. INTRODUCTION

*Amicus curiae* fully supports the district court's injunction, which is designed to increase competition for app distribution. As the jury found, and as reiterated by the district court, Google has imposed anticompetitive restrictions on the ability of would-be competitors—big and small—to stifle competition in the

2

Android App Distribution Market and the Android In-App Billing Services Market. *See, e.g.*, *In re Google Play Store Antitrust Litig.*, No. 21-md-02981-JD (N.D. Cal. Dec. 11, 2023), ECF No. 866. That anticompetitive conduct has injured competition, consumers, and app developers alike, and it has allowed Google to reap an unjustified 30% commission on digital services transactions occurring within Google Play.

Because Google's anticompetitive conduct has shown itself to be a durable barrier to competition, the district court focused its injunction on measures designed to unwind it. As the district court explained, "the Supreme Court has emphasized [that] injunctive relief under Section 16 is meant to restore economic freedom in the relevant markets and break the shackles of anticompetitive conduct." *See, e.g.*, *In re Google Play Store Antitrust Litig.*, No. 21-md-02981-JD (N.D. Cal. Oct. 7, 2024), ECF No. 1016, at p. 5:15–17. Based on *amicus curiae's* direct participation in the relevant markets (as determined by the jury), the tools employed by the district court to accomplish this task, including Google's obligation to provide catalog access to third-party app stores, subject to app developers' right to opt out of "any particular third-party Android app store", are appropriate and necessary to promote competition in markets that have long been dominated by Google. *See, e.g.*, *In re Google Play Store Antitrust Litig.*, No. 21-

3

md-02981-JD (N.D. Cal. Oct. 7, 2024), ECF No. 1017 ("Permanent Injunction"), at p. 3:2–3.

This opt out right for app developers, coupled with *consumers'* right to choose for themselves how much they actually value security and privacy (relative to how much they value service, choice, and price, etc.) when they choose to interface with one app store or another, greatly undermines vague concerns about "potential security and technical risks involved in making third-party apps available, including rival app stores." *See, e.g.*, *In re Google Play Store Antitrust Litig.*, No. 21-md-02981-JD (N.D. Cal. Oct. 7, 2024), ECF No. 1016, at p. 12:25–26. A fundamental principle underpinning antitrust economics is that market participants should have freedom to choose the bundle of services that they desire, including the level of security they prefer, when they transact with each other. *See, e.g.*, *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 695 (1978) ("competition is the best method of allocating resources in a free market [that] recognizes that all elements of a bargain—quality, service, safety, and durability—and not just the immediate cost, are favorably affected by the free opportunity to select among alternative offers").

Freedom of choice by both app developers and consumers is the hallmark of a well-functioning, open marketplace, and the district court's effort to undermine Google's restraints of the relevant markets has nothing to do with centralized

4

planning, as some amicus blithely complain. Indeed, the record in this case is replete with failures by Amazon—an entity that is trusted by hundreds of millions of consumers in the United States—to crack Google's dominance in the relevant markets. Under these circumstances, a robust injunction designed to jumpstart competition is necessary and proper, and the one at issue in this case was well-within the district court's discretion to issue.

*Amicus curiae's* support of the district court's injunction, however, comes with the caveat that this Court's affirmance of that injunction should recognize that it is limited to the facts and arguments presented below concerning the appropriate geographic scope of the injunction. This Court should not inadvertently opine on a district court's authority to issue injunctions under any applicable law—foreign or domestic—that may affect foreign-domiciled app developers' actual or potential claims against Google unless and until that issue is squarely presented on appeal.

### III.   ARGUMENT

Google's DDA, which applies to all developers that seek to distribute content through Google Play, provides as follows:

> All claims arising out of or relating to this Agreement or Your relationship with Google under this Agreement will be governed by the laws of the State of California, excluding California's conflict of laws provisions. You and Google further agree to submit to the exclusive jurisdiction of the federal or state courts located within the county of Santa Clara, California to resolve any legal matter arising from or relating to this Agreement or Your relationship with Google under this

5

Agreement, except that You agree that Google will be allowed to apply for injunctive relief in any jurisdiction.

*See Google Play Developer Distribution Agreement*, Google, (Feb. 5, 2024), https://play.google/developer-distribution-agreement.html. As such, if *any* app developer, including a foreign-domiciled app developer, wishes to bring *any* claim against Google, the DDA specifies that such claims must be brought within the confines of the Northern District of California.

Google does not treat this contractual provision lightly. When Google was sued in Korea by entities subject to the DDA, Google successfully argued that Korean courts could not properly resolve such claims since the parties agreed to resolve their disputes in California. *See, e.g.*, Seoul Central District Court decision 2018gahab506082, September 18, 2019; Korean Supreme Court decision 2020da238424, October 15, 2020; Seoul Central District Court decision 2019gadan5162753, October 20, 2020; Korean Supreme Court decision 2017da219232, April 13, 2023. As a result, foreign courts in at least one important jurisdiction have clearly demonstrated an expectation that a district court within the Northern District of California will resolve disputes involving Google.[2]

In this case, the district court's "Order Re UCL Claim and Injunctive Relief", *In re Google Play Store Antitrust Litig.*, No. 21-md-02981-JD (N.D. Cal.

---

[2] Counsel understands that Japanese courts have similarly refused jurisdiction over claims against Google based on the terms of the DDA.

6

Oct. 7, 2024), ECF No. 1016, sets forth the court's rationale for limiting the geographic scope of the injunction to the United States:

> The initial question for the injunction is where it will apply geographically. The jury found a relevant geographic market of worldwide except for China for both of the product markets, which was a conclusion that was amply supported by the evidence at trial. *See* JMOL Order at 14-15. Even so, the permanent injunction is limited to the United States. This is due mainly to principles of comity and deference to the rights of other countries to address anticompetitive conduct under their own laws and regulations. The record indicates that enforcement agencies around the world are investigating Google's conduct with respect to the Play Store. *See, e.g.*, Dkt. No. 700 at 3 (granting Google's motion in limine to "exclude evidence or argument re foreign proceedings and investigations"), Dkt. No. 644-2 at ECF pp. 61-68 (discussing foreign investigations and regulatory reports), *see also* Dkt. No. 958 (Google's Objections) at 87-89 (describing extensive legal, investigative, regulatory, and other informal proceedings underway in foreign jurisdictions). It is neither the right nor the duty of a United States court to preempt the enforcement powers of other nations by imposing an injunction that would operate within their borders. Consequently, the Court elects, as a prudential matter, not to interfere in the administration of antitrust laws outside the United States. *See Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) ("International comity is a doctrine of prudential abstention, one that 'counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law.'") (citation omitted).

*Id.* at p. 7-8.

The district court did not reference the DDA, or its terms, in its order. Nor did it appear to have considered the actual or potential impact of its order on foreign-domiciled app developers.

7

The Ninth Circuit has long held that forum selection and choice of law clauses are presumed valid, and that U.S. courts are perfectly capable of applying the law of foreign nations. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006) ("*E & J Gallo*") ("it is not clear that Andina has claims under Ecuadorian law, as the contract contains a choice-of-law clause in favor of California. Second, to the degree that Ecuadorian law does apply, federal courts are capable of applying it to Andina's claims"); Fed. R. Civ. P. 44.1; *see also Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1361 (9th Cir.1988) (en banc) (holding that "questions of foreign law are not beyond the capacity of our courts").

Where parties to a dispute have agreed to designate a forum and the law to resolve their claims, "concerns of international comity generally subside". *Info. Sys. Audit & Control Ass'n, Inc. v. DQS Certification India Pvt. Ltd.*, No. 22-cv-00061, 2023 WL 7052351, at *2 (N.D. Ill. Oct. 26, 2023) (citing *E & J Gallo*, 446 F.3d at 994). As this Court previously noted, "where private parties have previously agreed to litigate their disputes in a certain forum, one party's filing first in a different forum would not implicate comity at all." *E & J Gallo*, 446 F.3d at 994.

Google is headquartered in this country, and it is clearly subject to the jurisdiction of district courts within this Circuit. Under these circumstances, the

8

United States Supreme Court has long held that "the District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction." *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 285–89 (1952) (finding that a district court has power to grant an injunction against a U.S. resident's conduct outside of the United States in relation to an unfair competition violation); *see also Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1515, 1521 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992) (finding it appropriate to issue a mandatory injunction against the defendant's conduct in Mexico).

Of course, a district court may wish to consider any decisions by antitrust regulators around the world when crafting the specific geographic scope of any injunction that it might issue to foreign-domiciled app developers, but the mere fact that global antitrust regulators may act—or not—pursuant to their ongoing investigations, does not automatically lead to a conclusion that a district court should refuse to issue some form of an extraterritorial injunction pursuant to an appropriate showing under U.S. and/or foreign law.

IV. **CONCLUSION**

For the foregoing reasons, *amicus curiae,* on behalf of itself and dozens of other foreign-domiciled app developers—and on behalf of free competition in the market, more generally—respectfully requests that this Court affirm, in full, the

9

district court's order, with the caveat that different facts and arguments made by foreign-domiciled app developers in subsequent litigation may warrant an injunction whose scope is not necessarily confined to the territory of the United States. Complex issues concerning the extraterritorial scope of an injunction sought by a foreign-domiciled party from a United States District Court as a result of a forum selection/choice of law clause should be left for resolution when, and if, the issue is properly developed in a district court proceeding and then brought to this Court for review.

Dated:   January 7, 2025                         Respectfully submitted,

/s/ *Christopher L. Lebsock*
Christopher L. Lebsock (SBN 184546)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
clebsock@hausfeld.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limit and type-volume limitations of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,707 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. R. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: January 7, 2025

/s/ *Christopher L. Lebsock*
Christopher L. Lebsock (SBN 184546)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
clebsock@hausfeld.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: January 7, 2025

/s/ *Christopher L. Lebsock*
Christopher L. Lebsock (SBN 184546)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
clebsock@hausfeld.com