Nos. 24-6256 & 24-6274

# In The United States Court of Appeals for the Ninth Circuit

EPIC GAMES, INC.,
*Plaintiff-Appellee,*

v.

GOOGLE LLC, et al.,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
Nos. 3:20-cv-05671-JD; 3:21-md-02981-JD

**BRIEF FOR AMERICAN ECONOMIC LIBERTIES PROJECT AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE EPIC GAMES, INC.**

Lee A. Hepner
Laurel Kilgour
AMERICAN ECONOMIC LIBERTIES PROJECT
2001 Pennsylvania Avenue NW, Suite 540
Washington, DC 20006
Lhepner@economicliberties.us

*Counsel for Amicus Curiae*

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... ii

TABLE OF AUTHORITIES ...................................................... iii

INTEREST OF *AMICUS CURIAE* ..........................................1

INTRODUCTION ......................................................................3

ARGUMENT ..............................................................................7

    I.   Google's Arguments That the District Court Made Insufficient Findings of Fact Cannot Survive Its Egregious Destruction of Evidence ...............................................................................7

    II.  Google's Destruction of Relevant Records Has Adversely Impacted Multiple Parallel Litigation Proceedings.................................................................................11

    III. Google's Destruction of Evidence Obstructed Discovery of the Additional "Causal Connection" Evidence It Now Demands ......................................................................................13

    IV. The "Causal Connection" Analysis Does Not Limit the District Court's Discretion and Imperative to Fully Remedy Google's Illegal Monopoly ...................................................................18

CONCLUSION ....................................................................... 23

CERTIFICATE OF COMPLIANCE ........................................26

CERTIFICATE OF SERVICE ..................................................26

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Nat'l Farmers Org.,*
687 F.2d 1173, 1205 (8th Cir.1982) ................................................ 17

*Apple Inc. v. Samsung Elecs. Co.,*
881 F. Supp 2d 1132, 1136 (N.D. Cal. 2012) ................................. 18

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.,* No. C 06–
3359 JF, 2009 WL 1949124, at *10 (N.D. Cal. July 2, 2009) ........ 18

*Ford Motor Co. v. United States*, 405 U.S. 562, 573 (1972) ..... 6, 20, 23

*Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944)............................. 21

*Int'l Salt Co. v. United States*, 332 U.S. 392, 400–1 (1947) ... 20, 21, 22

*Leon v. IDX Systems Corp.,*
464 F.3d 951, 958 (9th Cir. 2006) ........................................... 13, 18

*National Society of Professional Engineers v. United States,*
435 U.S. 679, 698 (1978) .................................................................. 19

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.,*
20 F.4th 466, 486 (9th Cir. 2021).............................................. 19-20

*Phoceene Sous–Marine, S.A. v. U.S. Phosmarine, Inc.,*
682 F.2d 802, 806 (9th Cir.1982) ................................................... 18

*Radio City, Inc. v. Celestron Acquisition, LLC,*
2023 WL 5519324, at *4 (N.D. Cal. Aug. 25, 2023) ...................... 18

*The State of Texas, et al. v. Google, LLC,*
No. 4:20-cv-00957, ECF No. 752 (E.D. Tx. Jan. 6, 2025).............. 11

*United States, et al., v. Google LLC (Search),* No. 1:20-cv-03010, 2024 WL 3647498 (D.D.C. August 5, 2024) ...................... 11, 12, 14

*United States v. Crescent Amusement Co.,* 323 U.S. 173, 185 (1944) ............................................... 21

*United States v. Google LLC (Ad Tech),* No. 1:23-cv-00108 (E.D. Va.) ......................................... 12

*United States v. Grinnell Corp.,* 384 U.S. 563, 577 (1966) ................ 20

*United States v. Microsoft Corp.,* 253 F.3d 34, 103 (D.C. Cir. 2001) ..................................... 19, 20, 22

*United States v. National Lead Co.,* 332 U.S. 319 (1947) ................. 21

*Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 131 (1969) ............................................... 21

## Other Authorities

Dechert LLP, *Historic Jury Verdict Finds Google Monopolized Google Play Store and Google Play Billing,* JD SUPRA, Dec. 14, 2023, https://perma.cc/9EPA-PPG6 ............................................... 10

*Google Discovery Violations in United States v. Google (Ad Tech),* BEN EDELMAN (Dec. 3, 2024), https://perma.cc/UP66-592G ............ 4

*Google Discovery Violations in United States v. Google (Search),* BEN EDELMAN (Dec. 3, 2024), https://perma.cc/CFQ4-FP3U ........... 4

Letter from AELP, Check My Ads, and Tech Oversight Project to Chief Trial Counsel George Cardona of the State Bar of California (Oct. 21, 2024), https://perma.cc/ZB5Y-KGMQ ............. 2

Sean Hollister, *Federal judge vows to investigate Google for intentionally destroying chats,* THE VERGE, Dec. 1, 2023, https://perma.cc/UQP8-MTQD ......................................... 3

iv

Thomas Barrabi, *Google blasted as 'negligent' over evidence destruction as landmark DOJ antitrust case wraps up*, New York Post, May 3, 2024, https://perma.cc/U4HZ-C2AC.............4, 11

*U.S. judge in Google case not convinced company's conduct will get sanction*, Reuters, April 8, 2022, https://perma.cc/TZ6F-GKAS ........................................................................12

## INTEREST OF *AMICUS CURIAE*

American Economic Liberties Project ("AELP") is an independent nonprofit organization that works to promote competition, combat monopolistic corporations, and advance economic liberty for all.[1] AELP organizes and employs a diverse set of leading policy experts in areas impacted by concentrated power that include community development, the airline industry, healthcare, international trade, national security, and small business entrepreneurship. It advocates for policies that address today's crisis of concentration through legislative efforts and public policy debates.

AELP supports robust antitrust remedies that open markets to full and fair competition on the merits—and meaningful consequences for litigants that engage in spoliation and other litigation misconduct as Appellant Google LLC ("Google") has done here. AELP's previous efforts in this regard include calling for the State Bar of California to investigate potential violations of the California Rules of Professional Conduct by

---

[1] *See* https://www.economicliberties.us/

1

Google's former General Counsel and other Google attorneys for discovery misconduct in this and several other federal antitrust cases.[2]

All parties consent to the filing of this *amicus* brief. No counsel for a party has authored this brief in whole or in part, and no party, party's counsel, or any other person—other than *amicus curiae* or its counsel—has contributed money that was intended to fund preparing or submitting this brief.

---

[2] *See* Letter from AELP, Check My Ads, and Tech Oversight Project to Chief Trial Counsel George Cardona of the State Bar of California (Oct. 21, 2024), https://perma.cc/ZB5Y-KGMQ.

2

## INTRODUCTION

Google does not come to this appeal with clean hands. Extensive testimony at multiple sanctions hearings led district court Judge James Donato to conclude that Google engaged in an intentional and prejudicial program whereby it "willfully failed to preserve relevant, substantive business communications that were made by employees on the Google Chat system" that employees "used daily."[3] Judge Donato found that Google was "not truthful" about its ability to change default chat preservation settings, or the completeness of its evidence preservation,[4] and obstructed the litigation process to such an extent that its conduct amounted to "a frontal assault on the fair administration of justice" and was indeed the "most serious and disturbing evidence" he had "ever seen in [his] decade on the bench with respect to a party intentionally suppressing potentially relevant evidence in litigation."[5]

This was not the isolated assessment of just one judge. Two other

---

[3] 1-ER-25; 4-SER-614-616; 4-SER-604.

[4] 4-SER-614.

[5] 1-ER-73-74; *see also* Sean Hollister, *Federal judge vows to investigate Google for intentionally destroying chats*, THE VERGE, Dec. 1, 2023, https://perma.cc/UQP8-MTQD.

3

federal judges have drawn similar conclusions about Google's "shocking" misconduct.[6] In the instant case, the district court sanctioned Google by instructing the jury that they were permitted to draw adverse inferences that the destroyed evidence would have disfavored Google, while noting that stronger sanctions would be "amply warranted" by the record.[7]

Contrary to Google's assertion—buried in a single footnote in its Opening Brief—that the "Chats issue" is "not relevant to any legal argument Google makes in this appeal,"[8] spoliation has an ongoing impact on the fair administration of justice on appeal as well. In particular, Google argues that certain remedies should be overturned for lack of a "causal connection" to Google's illegal maintenance of "network

---

[6] *See, e.g.,* Thomas Barrabi, *Google blasted as 'negligent' over evidence destruction as landmark DOJ antitrust case wraps up*, New York Post, May 3, 2024, https://perma.cc/U4HZ-C2AC; *Google Discovery Violations in United States v. Google (Ad Tech),* BEN EDELMAN (Dec. 3, 2024), https://perma.cc/UP66-592G (collecting motions and hearing statements regarding Google's discovery misconduct in adtech antitrust case); *Google Discovery Violations in United States v. Google (Search)*, BEN EDELMAN (Dec. 3, 2024), https://perma.cc/CFQ4-FP3U (collecting motions and orders regarding Google's discovery misconduct in search antitrust case).

[7] 1-ER-74; 2-SER-113.

[8] Appellant's Opening Brief ("Google Br.") 20-21, n. 5.

4

effects."[9] Although styled as a reversible *legal* error, Google is in fact arguing that the district court failed to make sufficient *factual* findings.

As a threshold matter, we agree with Appellee's assertion that the district court established a sufficient causal connection to support the catalog-access[10] and app store-distribution[11] injunctive relief issued in this case. To the extent additional evidence supporting a "causal connection" might be wanting in a case *not* plagued by a "rampant and systemic culture of evidence suppression,"[12] here that missing evidence resulted in an instruction at trial allowing the jury to find that that evidence would have disfavored Google. Furthermore, the record in this case reveals that the deleted chats of at least one key Google executive

---

[9] *Id.* at 64.

[10] The catalog-access provision, 1-ER-4-5, provides that Google must "permit third-party Android app stores to access the Google Play Store's catalog of apps" and permit users to download such apps "on the same terms as any other download that is made directly through the Google Play Store."

[11] The store-distribution provision, 1-ER-5, states that "Google may not prohibit the distribution of third-party Android app distribution platforms or stores through the Google Play Store." 1-ER-5. Google is permitted to review such stores, and the apps they offer, using "review measures [that are] comparable to the measures Google is currently taking for apps proposed to be listed in the Google Play Store." 1-ER-5.

[12] 1-ER-74.

would have been probative of the existence of a "causal connection" between Google's illegal magnification of network effects through anticompetitive conduct.

As the Supreme Court has recognized, "all doubts" with respect to the appropriateness of an antitrust remedy are to be resolved in favor of the plaintiff, not the wrongdoer. *Ford Motor Co. v. United States*, 405 U.S. 562, 573 (1972). That principle must hold greater force in the context of a record prejudiced by pervasive spoliation.

## ARGUMENT

### I.  Google's Argument That the District Court Made Insufficient Findings of Fact Cannot Survive Its Egregious Destruction of Evidence.

Despite characterizing the district court's remedies order as a reversible *legal* error, Google focuses its argument on the contention that the lower court failed to make any findings of *fact* to support that causal connection.[13] In effect, Google is asking this Court to supplant its deference to the lower court's findings of fact in favor of a less-deferential review of conclusions of law.[14] In doing so, Google attempts to evade the obvious: To the extent that a jury and then the district court were compelled to draw inferences from an incomplete record, Google is culpable for any purported inadequacy in their findings of fact. Google chose not to appeal the district court's adverse inference instruction, but nevertheless seeks to argue that those inferences were reversible error.

Google's document destruction in this case is beyond the pale. After conducting extensive hearings, the district court concluded that Google

---

[13] Google Br. at 64, 68.

[14] Google's *ipse dixit* assertion that "the District Court did not even attempt to undertake the causation inquiry" (Google Br. at 66) is false.

7

engaged in an intentional campaign to suppress relevant evidence by systematically deleting "chats" and developing a "Communicate with Care" training program that directed employees to reroute all "sensitive" discussions to those autodeleted "history off" chats.[15] "After the Court's findings of fact against Google for willfully failing to preserve Google Chat evidence," Judge Donato recounted in a post-trial order, "more evidence emerged at trial of a frankly astonishing abuse of the attorney-client privilege designation to suppress discovery."[16] Google trained employees to shield ordinary business communications from discovery by copying attorneys to confer what one member of Google's own in-house counsel team called "fake privilege."[17] Such misconduct was normalized among droves of Google employees and extended all the way up to Google CEO Sundar Pichai, who "never" turned his own chat history on and

---

[15] *See*, *e.g.*, 4-SER-601-612; 1-ER-25; 8-SER-1384.

[16] 1-ER-47.

[17] *Id.*

8

instructed others in group chats to turn history off when discussing sensitive topics,[18] and knowingly abused "fake privilege."[19]

Judge Donato determined that chat evidence was "lost with the intent to … deprive another party of the information's use in the litigation,"[20] and that such loss "prejudice[d]" plaintiffs.[21] He summed up the severity of Google's discovery misconduct as "the most serious and disturbing evidence of intentional suppression of evidence" and obstruction of the "fair administration of justice" that he had seen in his career on the bench.[22]

---

[18] *See* Pls.' Proposed Remedy re Google's Destruction of Chat Evidence 14, ECF No. 440; *see also id*. at ECF No. 440-19; Pls.' Supp. Br. on Google Chat Prod. 3, ECF No. 400. Judge Donato concluded that the "testimony of [General Counsel] Walker was evasive and was materially inconsistent with testimony given by Google's witnesses at the Chat hearing." 1-ER-73.

[19] 1-ER-47.

[20] 4-SER-537.

[21] 4-SER-616.

[22] 1-ER-73-74. Google's "troubling" discovery misconduct is compounded by its litigation misconduct: Google "did not reveal [its evidentiary practices] with candor or directness to the Court or… plaintiffs." 4-SER-614. After initially claiming that it had met its obligation to preserve relevant evidence, when its misconduct came to light, Google was still "not truthful" and falsely claimed that it was unable to change the default chat history settings of individual employees. *Id*.

9

Judge Donato ultimately gave a "permissive inference" jury instruction—which allowed the jury to presume that the contents of deleted chats would have been unfavorable to Google.[23] However, he also indicated that was a milder sanction than the record supported, writing that a "mandatory inference instruction would be amply warranted."[24] The jury then unanimously ruled against Google on all counts after "less than four hours" of deliberation.[25]

As Appellee details in its Answering Brief, the cases cited by Google for the premise that an insufficient factual record is reversible error are distinguishable by the district court's detailed order in this case.[26] But they are also distinguishable from those cases on the basis of Google's extensive document destruction in the instant case. This Court should

---

[23] Final Jury Instr. for *Epic* Trial 17, ECF No. 592 ("You have seen evidence that Google Chat communications were deleted with the intent to prevent their use in litigation. You may infer that the deleted Chat messages contained evidence that would have been unfavorable to Google in this case.").

[24] 1-ER-74; 2-SER-113.

[25] *See* Dechert LLP, *Historic Jury Verdict Finds Google Monopolized Google Play Store and Google Play Billing*, JD SUPRA, Dec. 14, 2023**,** https://perma.cc/9EPA-PPG6; 1-ER-52-57 (verdict form).

[26] Ans. Br. of Appellee Epic Games, Inc. 85-86.

10

reject any argument by Google as to purported inadequacies in the record as flowing directly from Google's own inexcusable destruction of evidence.

## II.    Google's Destruction of Relevant Records Has Adversely Impacted Multiple Parallel Litigation Proceedings.

Two other federal judges—and counting[27]—have issued similar rebukes of Google's discovery misconduct. In *United States, et al., v. Google LLC (Search),* No. 1:20-cv-03010, 2024 WL 3647498 (D.D.C. August 5, 2024), Judge Amit Mehta called Google's behavior "shocking,"[28] writing that he was "taken aback by the lengths to which Google goes to avoid creating a paper trail for regulators and litigants" and that it was "no wonder then that this case has lacked the kind of nakedly anticompetitive communications seen in Microsoft and other Section 2

---

[27] States that have separately sued Google for antitrust violations in the adtech market also recently filed a motion for "spoliation sanctions" against Google. *See* Pl. States' Mot. For Spoliation Sanctions*, The State of Texas, et al. v. Google, LLC,* No. 4:20-cv-00957, ECF No. 752 (E.D. Tx. Jan. 6, 2025).

[28] Thomas Barrabi, *Google blasted as 'negligent' over evidence destruction as landmark DOJ antitrust case wraps up*, NEW YORK POST, May 3, 2024, https://perma.cc/U4HZ-C2AC

cases."[29] In *United States v. Google LLC (Ad Tech)*, No. 1:23-cv-00108 (E.D. Va.), Judge Leonie Brinkema observed in a hearing that Google's record on chat deletion and "clear abuse" of attorney-client privilege "creates a very serious problem for Google in terms of how much credibility the Court will be able to apply. Intent is a serious issue in this case, and I think it's going to be a problem given this history."[30]

While the above-mentioned parallel litigation is still pending, this is the first appeal from a case impacted by Google's misconduct. As such, this Court's treatment of the effect of Google's discovery misconduct on issues raised on appeal is likely to have some persuasive influence on anticipated appeals of these similar cases. Given Google's aggressive

---

[29] *U.S. v. Google LLC (Search)*, at *275. The Google Search litigation was also impacted by Google's fake privilege claims: When Judge Mehta questioned Google's claims that 140,000 documents were privileged in the search antitrust trial, 98,000 were immediately submitted to the Justice Department, making clear the claims were a ruse. *U.S. judge in Google case not convinced company's conduct will get sanction*, REUTERS, April 8, 2022, https://perma.cc/TZ6F-GKAS. Judge Mehta ultimately declined to impose sanctions, but only because he found that an adverse inference would not change his rulings and was therefore moot. *U.S. v. Google (Search)*, at *275-276.

[30] Pls.' Post-Trial Proposed Findings of Fact and Conclusions of Law 398, *U.S. v. Google LLC (Ad Tech)*, No. 1:23-cv-00108-LMB-JFA, ECF No. 1381 (E.D. Va. Nov. 5, 2024) (quoting hearing transcript).

"issue preclusion" arguments before this Court, it is reasonable to anticipate that Google may leverage this Court's decision—if it has the effect of diminishing the lower court's remedy—to undermine remedies proceedings in these other matters.

## III. Google's Destruction of Evidence Obstructed Discovery of the Additional "Causal Connection" Evidence It Now Demands.

On appeal, a "district court's factual findings, including findings of bad faith and prejudice, are reviewed for clear error." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citations omitted). And the district court's "credibility determinations," including in a spoliation context, are "entitled to special deference." *Id.* Notably, Google has appealed neither the district court's order finding that Google committed discovery misconduct that warranted sanctions, nor the court's permissive inference instruction. Instead, Google has attempted to bury the topic of spoliation in a single footnote in a 93-page brief, where it contends that the "Chats issue" is "not relevant to any legal argument Google makes in this appeal."[31]

---

[31] Google Br. 20-21, n. 5.

13

But as Judge Donato stated in a sanctions hearing, it was "plain as day to any objectively reasonable lawyer… that Chat [was] going to contain possibly relevant evidence."[32] That two-day evidentiary hearing on sanctions included testimony by Google executive Jamie Rosenberg, who was, during the relevant time period, a vice president "running a strategy team for [Google's] platforms and ecosystems organization."[33] His testimony revealed that despite Rosenberg being under multiple litigation holds, "he had Chat history off during his entire time at Google, including when he was deposed, and has 'not done anything to preserve chats for this litigation.'"[34] The restrictive Mobile App Distribution Agreements (MADAs) at the center of this case were among the relevant topics Rosenberg discussed.[35] Yet Judge Donato found that Rosenberg did not even know what specific topics were relevant to this litigation.[36]

---

[32] Ex. 50, 240, *U.S. v. Google LLC (Search)*, No. 1:20-cv-03010-APM, ECF No. 512-52 (D.D.C. Feb. 23, 2023) (attaching partial transcript from January 31, 2023 evidentiary hearing on chat preservation from Epic case).

[33] Findings of Fact and Conclusions of Law re Chat Preservation 10, ECF No. 401.

[34] *Id.* at 10 (quoting hearing transcript).

[35] *Id.* at 8.

[36] *Id.*

14

Other employees testified similarly about their failure to preserve relevant chats.[37]

In his remedy order, Judge Donato cited Rosenberg's testimony at trial about network effects—and Google's efforts to deny those network effects to rivals by adding friction to discourage users from downloading rival app stores.[38] For example, Rosenberg confirmed that an internal Google presentation noted that Google's "Play [store] benefits from network effects" and labeled the fact that "Amazon is yet to establish critical mass" as "Good News."[39] Google predicted that "Amazon will struggle to break those network effects": "Users won't go to Amazon because their catalog of apps/games is very limited"; and "Developers won't focus on Amazon because they don't have users."[40]

Google was not just passively observing market dynamics: Rosenberg (and others) also testified that Google developed a "quite complex" process that required navigating "14 steps" just to install a rival

---

[37] *Id.* at 11.

[38] 1-ER-16.

[39] *Id.* (citation omitted).

[40] *Id.*

app store on their device, and that this presented a "significant hurdle to switching to Amazon APK."[41] Rosenberg also conceded that because the "Google Play Store is preloaded on the home screen of virtually every Android phone through the MADA" while rival app stores were excluded, users would almost always face this barrier when attempting to download a rival app store.[42]

Judge Donato's remedy order makes clear that there was a causal connection between such anticompetitive conduct and the extra, ill-gotten network effects Google obtained through its illegal monopoly maintenance tactics:

> "Although Google may legitimately claim some early mover advantage, it was not entitled to *maintain and magnify* network effects, and thereby entrench its dominant position, through the anticompetitive conduct found by the jury. It bears emphasis that Rosenberg's testimony and the Amazon slides concerned events in 2017, well after the original launch of the Play Store and the start of the relevant time period in August 2016. Eight months into the time period in which Google engaged in anticompetitive conduct, it was well aware that 'to get more developers, Amazon needs more users.' …This frank admission was made precisely while Google was erecting barriers to insulate the Play Store from

---

[41] 1-ER-18 (citations omitted).

[42] *Id*.

competition."[43]

Ultimately, Judge Donato concluded that "Google unfairly enhanced its network effects in a way that would not have happened but for its anticompetitive conduct."[44]

To the extent that any additional evidence establishing a "causal connection" might otherwise be called for, the record shows that Google likely deleted just that kind of evidence. In any event, Google is not entitled to a presumption of irrelevance. Because "the relevance of ... [destroyed] documents cannot be clearly ascertained because the documents no longer exist," a party "can hardly assert any presumption of irrelevance as to the destroyed documents." *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir.1982). California district courts have recognized that the "[s]anctions levied for the destruction of evidence 'should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been absent the wrongful destruction of evidence by the

---

[43] 1-ER-17 (emphasis added).

[44] *Id.*

17

opposing party.'" *Radio City, Inc. v. Celestron Acquisition, LLC*, 2023 WL 5519324, at \*4 (N.D. Cal. Aug. 25, 2023) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp 2d 1132, 1136 (N.D. Cal. 2012)).[45] In this case, justice requires affirming the applicable remedies based on the inference that deleted evidence would have been unfavorable to Google and would have reinforced any requisite causal connection.

## IV. The "Causal Connection" Analysis Does Not Limit the District Court's Discretion and Imperative to Fully Remedy Google's Illegal Monopoly.

Factual findings notwithstanding, in seeking to reverse the district court's catalog-access and app store-distribution remedies for failure to find a "significant causal connection between the conduct enjoined or mandated and the violation found," Google misstates the breadth of

---

[45] *See also Leon*, at 958 (9th Cir. 2006) ("There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery'") (citation omitted); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C 06–3359 JF, 2009 WL 1949124, at \*10 (N.D. Cal. July 2, 2009) ("In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it.") (citing *Phoceene Sous–Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir.1982)).

18

discretion afforded to the district court. Google Br. at 64 (citing *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 486 (9th Cir. 2021) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 103 (D.C. Cir. 2001))). As a threshold matter, the district court correctly found that "Google unfairly enhanced its network effects in a way that would not have happened but for its anticompetitive conduct."[46] But this Court also held in *Optronic* that the causal connection analysis does not circumscribe the court's other remedial obligations: "[A] district court may order an injunction 'beyond a simple prescription against the precise conduct previously pursued' [] The reviewing court only asks if 'the relief [is] a reasonable method of eliminating the consequences of the illegal conduct." *Optronic*, 20 F.4th at 486 (quoting *National Society of Professional Engineers v. United States*, 435 U.S. 679, 698 (1978)).

This Court has expressly recognized that traditional principles of equity remain fully intact in an antitrust context: "the available injunctive relief is broad, including to 'terminate the illegal monopoly, deny to the defendant the fruits of its statutory violation, and ensure that

---

[46] 1-ER-17.

19

there remain no practices likely to result in monopolization in the future.'" *Optronic*, 20 F.4th at 486 (quoting *Microsoft*, 253 F.3d at 103). Moreover, this Court recognized that "antitrust relief must restore competition." *Id*. (citing *Ford*, 405 U.S. at 573). And *Ford* held that "all doubts" as to a remedy must be resolved in favor of the plaintiff, not the wrongdoer. 405 U.S. at 575.

One such fundamental principle of equity is that wrongdoers cannot retain their ill-gotten gains. *See*, *e.g.*, *United States v. Grinnell Corp.*, 384 U.S. 563, 577 (1966) ("Adequate relief in a monopolization case should put an end to the combination and deprive the defendants of any of the benefits of the illegal conduct, and break up or render impotent the monopoly power to be found in violation of the Act"); *Optronic*, 20 F.4th at 486 (Remedies must "'deny to the defendant the fruits of its statutory violation, and ensure that there remain no practices likely to result in monopolization in the future'") (*quoting Microsoft*, 253 F.3d at 103). There is no "network effects" exception to this principle.

Moreover, remedies must "pry open" markets to competition. *Int'l Salt*, 332 U.S. at 401. That imperative to pry open competition in the relevant Android App Store market undergirds the specific catalog-access

20

and app store-distribution remedies ordered in this case. Judge Donato found it "telling" that "[e]ven a corporate behemoth like Amazon could not compete with the Google Play Store due to network effects."[47] "Consequently," he wrote, "the injunction must overcome the effects by providing access to the catalog of Play Store apps for a period of time sufficient to give rival stores a fair opportunity to establish themselves."[48]

This Court has never held that the "causal connection" analysis displaces injunctive relief where a district court has found that anticompetitive conduct "had the consequence of entrenching and maintaining monopoly power," and Google offers no authority that should cause this Court to abandon the longstanding principle that a district court has broad discretion to fashion an effective remedy.[49] It certainly

---

[47] 1-ER-16.

[48] *Id.*

[49] *Int'l Salt Co. v. United States*, 332 U.S. 392, 400–01 (1947) ("[District courts] are vested with large discretion to model their judgments to fit the exigencies of the particular case") (citing *United States v. Crescent Amusement Co.*, 323 U.S. 173, 185 (1944) and *United States v. National Lead Co.*, 332 U.S. 319 (1947)); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 131 (1969) ("the remedy … is flexible and capable of nice 'adjustment and reconciliation between the public interest and private needs as well as between competing private claims'") (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944));

21

does not impose any requirement that a fact finder attempt to quantify and disentangle market power gained through years of illegal monopoly maintenance from any initial legitimately earned market power. To expand the "causal connection" requirement as Google suggests would eviscerate the fundamental aim of monopolization remedies: opening a market to full and fair competition on the merits. *Int'l Salt*, 332 U.S. at 401. Although Google argues that the district court's injunctive relief does not "properly consider" the "public interest,"[50] that is precisely the interest that opening monopolized markets to competition serves. *Id.* ("In an equity suit, the end to be served is… not merely to end specific illegal practices. A public interest served by such civil suits is that they effectively pry open to competition a market that has been closed by defendants' illegal restraints.")

Even assuming for the sake of argument that Google's novel exceptions and heightened requirements for imposing "network effects" remedies have any legal force in the abstract, Google's well documented

---

*Microsoft*, 253 F.3d at 105 ("As a general matter, a district court is afforded broad discretion to enter that relief it calculates will best remedy the conduct it has found to be unlawful.").

[50] Google Br. at 75.

22

years-long campaign of intentional spoliation–compounded by the additional litigation misconduct of making misrepresentations to the court and plaintiffs that obstructed the litigation process—provide a compelling reason to resolve "all doubts" as to the adequacy of the district court's findings of fact against the wrongdoer and choice of remedies here. *Ford*, 405 U.S. at 575.

## CONCLUSION

This Court's treatment of the nexus between Google's rampant destruction of evidence and the scope of permissible remedies is of paramount public interest and will influence at least three separate instances of parallel litigation against Google, brought by government plaintiffs on behalf of the American public, where spoliation is at issue. Google's "rampant" destruction of evidence in this case deprives it of any legitimate basis to argue the inadequacy of the record, particularly in light of the district court's thorough and thoughtful findings of fact and conclusions of law. The District Court is entitled to broad deference when crafting a remedy to Google's unlawful conduct, and any remaining doubts relating to the sufficiency of the underlying record must be resolved against Appellant and in favor of Appellee.

[signature of counsel on following page]

Dated: January 7, 2025          Respectfully submitted,

_s/ Lee A. Hepner_
Lee A. Hepner
Laurel Kilgour
American Economic Liberties Project
2001 Pennsylvania Avenue NW
Suite 540
Washington, DC 20006
(949) 412-7623
lhepner@economicliberties.us

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with Federal Rules of Appellate Procedure 29(a)(4)(G) and 32(g)(1) because it contains 4,080 words, excluding the parts that can be excluded. This brief also complies with Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced face using Microsoft Word in 14-point Century Schoolbook font.

Dated: January 7, 2025          *s/ Lee A. Hepner*
                                Lee A. Hepner
                                Laurel Kilgour

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: January 7, 2025          *s/ Lee A. Hepner*
                                Lee A. Hepner
                                Laurel Kilgour

26