Nos. 24-6256, 24-6274, 25-303

IN THE

# United States Court of Appeals for the Ninth Circuit

EPIC GAMES, INC.,

*Plaintiff-Appellee,*

v.

GOOGLE LLC, *et al.,*

*Defendants-Appellants.*

––––––––––––––––––––

Appeal from the U.S. District Court
for the Northern District of California
Nos. 3:20-cv-05671-JD, 3:21-md-02981-JD
Hon. James Donato

––––––––––––––––––––

**EPIC GAMES, INC.'S OPPOSITION TO GOOGLE LLC'S
MOTION TO STAY INJUNCTION PENDING FURTHER
APPELLATE REVIEW**

––––––––––––––––––––

Gary A. Bornstein
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
New York, NY 10001
(212) 474-1000

Paul J. Riehle
FAEGRE DRINKER BIDDLE & REATH
LLP
Four Embarcadero Center
San Francisco, CA 94111-4180
(415) 591-7500

*Counsel for Plaintiff-Appellee Epic Games, Inc.*

*(Additional Counsel Listed on Signature Page)*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Epic Games, Inc. ("Epic") states that it has no parent corporation and that Tencent Holdings Limited indirectly owns more than 10% of Epic's stock through wholly owned subsidiaries.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................. 1

BACKGROUND ............................................................................. 3

LEGAL STANDARD ...................................................................... 8

ARGUMENT .................................................................................... 9

I.    Google Is Not Likely To Succeed In Obtaining Further Review Or Reversal. ........................................................... 9

    A.    The Court's Rejection Of Google's Fact-Bound Preclusion Claim Does Not Warrant Further Review. ........................................................................ 9

    B.    The Court's Rejection of Google's Rule-of-Reason Challenge to the Jury Instructions Does Not Warrant Further Review. ............................................ 15

    C.    The District Court's Remedy Does Not Warrant Further Review. ...................................................... 21

II.    Google Faces No Irreparable Harm. ................................. 27

III.    The Balance Of Equities Weighs Against A Stay. ............. 31

CONCLUSION ............................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Fed. Trade Comm'n*,
  1 F.4th 102 (2d Cir. 2021) ...................................................17, 18

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ...................................................... 1

*Bd. of Trade of the City of Chicago v. United States*,
  246 U.S. 231 (1918) .................................................................. 19

*Bobby v. Bies*,
  556 U.S. 825 (2009) .................................................................. 14

*Buccaneer Ener. (USA) Inc. v. Gunnison Ener. Corp.*,
  846 F.3d 1297 (10th Cir. 2017) ...........................................18, 19

*Doe #1 v. Trump*,
  957 F.3d 1050 (9th Cir. 2020) ................................................. 27

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992) .................................................................. 12

*Epic Games, Inc. v. Apple Inc.* ("*Apple II*"),
  67 F.4th 946 (9th Cir. 2023)..............................................passim

*Expert Masonry, Inc. v. Boone Cnty.*,
  440 F.3d 336 (6th Cir. 2006) ...............................................18, 19

*Fed. Trade Comm'n v. Qualcomm Inc.*,
  935 F.3d 752 (9th Cir. 2019) ..................................................... 9

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010) .................................................................... 9

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007) .................................................................. 19

iii

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985) (en banc) ................................... 12

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football
    League*, 634 F.2d 1197 (9th Cir. 1980)................................30, 31

*Love v. Villacana*,
    73 F.4th 751 (9th Cir. 2023).................................................... 14

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................ 8

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
    20 F.4th 466 (9th Cir. 2021)...........................................24, 33, 34

*United States v. Apple Inc.*,
    791 F.3d 290 (2d Cir. 2015)..................................................... 17

*United States v. Microsoft Corp.* ("*Microsoft I*"),
    253 F.3d 34 (D.C. Cir. 2001) (en banc)...............................17, 24

*United States v. Mitchell*,
    971 F.3d 993 (9th Cir. 2020) ................................................... 27

*Verizon Commc'ns Inc. v. Law Office of Curtis V. Trinko,
    LLP*, 540 U.S. 398 (2004) ...................................................22, 23

## Statutes & Rules

Fed. R. App. P. 40(b)(2)............................................................. 9, 10

Sup. Ct. R. 10 .............................................................................. 9

## Other Authorities

*1-800 Contacts, Inc. v. Fed. Trade Comm'n*,
    No. 18-3848, D.E.110 (2d Cir. May 28, 2019).....................17, 18

## INTRODUCTION

Google seeks a stay that would let it continue extracting billions in supracompetitive profits from conduct that a jury unanimously found unlawful, in a verdict that the district court and a panel of this Court unanimously upheld. This Court's comprehensive opinion thoroughly rejected Google's hodgepodge of theories, finding this a straightforward case that "turns on longstanding principles of trial procedure, antitrust, and injunctive remedies." Panel Opinion ("Op.") 9; *see also* D.Ct. Dkt. 1034 (Oct. 18, 2024 Hrg. Tr. 5:12-17) (noting that this case requires only "a very straightforward application of well-established antitrust principles"). There is no reason to allow Google to continue unlawfully suppressing competition across the Android ecosystem while it pursues patently fruitless discretionary appeals.

To obtain a stay, Google must show it will likely obtain (1) discretionary review and (2) reversal on the merits. *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1006-07 (9th Cir. 2020). Google has not, and cannot, come close. *First*, the centerpiece of Google's merits argument—the supposed "conflict" with *Epic v. Apple*—is not a conflict on any *legal* principle. Google instead challenges this Court's

application of garden-variety preclusion principles to this specific set of facts. That is not the stuff of discretionary review. *Second*, Google's suggestion that this Court's Rule of Reason precedent conflicts with the law of other circuits is unfounded. Nor has Google demonstrated that these legal questions would ultimately make any difference to the outcome of this case. *Third*, Google's challenge to the scope of courts' power to remedy an adjudicated antitrust violation conflicts with longstanding law affording district courts broad discretion to craft equitable antitrust remedies—as the Department of Justice ("DOJ") and Federal Trade Commission ("FTC") explained, and this Court agreed. *See* Op.44-45, 67; D.E.151.1 at 16-20.

Google also cannot establish any real prospect of irreparable harm. Google's scaremongering aside, nothing in Google's motion calls into question this Court's conclusions that the injunction is technically feasible and that the district court took appropriate steps to protect consumer security and privacy. *See* Op.47, 63-65. And Google's contention that it will suffer competitive injury by having less money to invest is simply a plea to be allowed to continue reaping supracompetitive profits from lawbreaking.

Meanwhile, further delay will inflict obvious harm on Epic, thousands of developers and millions of consumers. Google adopted its unlawful policies to entrench its monopoly, depress competition, deny competitors scale and ultimately extract billions of dollars in fees that it could not obtain in a competitive market. The injunction has already been stayed for nearly a year during Google's appeal, and Google has continued its illegal conduct throughout, maintaining its monopoly and delaying competitive entry. Enough is enough.

## BACKGROUND

***Trial.*** In August 2020, Epic sued Google alleging violations of the Sherman Act and California law based on Google's suppression of competition with its app store, the Google Play Store ("Google Play"), and of competition with its in-app billing system, Google Play Billing ("GPB"). *See* Op.14. After 15 days of testimony, the jury delivered a unanimous verdict in favor of Epic on every count. 1-ER-52-57; Op.15. The jury found that Google violated Sections 1 and 2 of the Sherman Act and California's Cartwright Act by willfully acquiring and/or maintaining monopolies in markets for Android app distribution and for Android in-app billing services, entering into agreements that

unreasonably restrained trade in those markets and unlawfully tying the use of Google Play to the use of GPB.

**Remedy.** Following the jury verdict, the district court conducted rigorous proceedings to craft an appropriate injunction. The court accepted extensive briefing and written fact and expert testimony and held two evidentiary hearings. On October 7, 2024—ten months after the jury's verdict—the district court issued an injunction. 1-ER-3-6; Op.15. As further discussed below, the injunction prohibited specific anticompetitive conduct and required Google to take affirmative steps to address the continuing adverse effects of its unlawful behavior. The district court set implementation timelines based on technical complexity: 25 days for simple changes in conduct and eight months for measures requiring more technical work. 1-ER-3-5. The district court chose these timeframes based on testimony, including that of a Google witness who "offered a six-to-nine-month estimate for implementation" of the most complex portions of the remedy. Op.47.

Google immediately sought stays pending appeal in both the district court and this Court. The district court denied Google's motion, finding that the verdict "was amply supported by a mountain of

4

evidence about Google's anticompetitive conduct." D.Ct. Dkt. 1034 (Oct. 18, 2024 Hrg. Tr. 5:12-17). Nonetheless, to facilitate this Court's review, the district court granted an administrative stay set to expire when this Court decided Google's stay motion. D.Ct. Dkt. 711.

**Appeal.** In its motion for a stay pending appeal, Google asked that if this Court denied the stay, it nevertheless "extend the compliance deadlines" for the near-term remedies until 30 days after the denial and said nothing about the deadlines with an eight-month runway. D.E.6.1 at 29. This Court did not rule on the motion prior to ruling on the merits; it left the district court's administrative stay in place. *See* Op.16 n.4. When it then ruled on the merits, this Court denied Google's motion for a stay pending appeal as moot. *Ibid.*

In its merits decision, the Court methodically addressed and rejected each of Google's challenges. The holdings relevant to this motion are:

*Market Definition and Liability.* The Court rejected Google's claim that Epic was precluded from defining the market differently than in a separate lawsuit Epic had brought against Apple, *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 970-71 (9th Cir. 2023)

("*Apple II*"), finding that "Epic's claims against Apple involved meaningfully different commercial realities and theories of harm from its claims against Google." Op.20. As for the Rule of Reason argument Google presses in this motion—that the jury should not have been allowed "to balance pro- and anticompetitive effects"—Google acknowledged it to be foreclosed by this Court's precedent, and the Court agreed. Op.37 n.10.

*Duty to Deal*. The Court rejected Google's contention that aspects of the injunction impermissibly imposed a "duty to deal" with competitors. Following well-settled precedent, the Court held that once an antitrust violation is found, courts have broad remedial discretion to craft a remedy, including to require a defendant to stop conduct that would otherwise be lawful, in order to address the continuing competition-suppressing effects of the adjudicated violations. Op.45-46.

*Adequacy of Findings*. The Court rejected Google's assertion that the district court's findings in support of the injunction were not specific enough in segregating the effects of Google's unlawful conduct from other conduct. In exercising its remedial discretion, the district court was required under this Court's precedent to find "a significant causal

6

connection" to the unlawful conduct, and this Court held that the district court "fulfilled that obligation." Op.48-49.

*Security Concerns.* The Court found that the district court "was quite cognizant of and addressed" security concerns after considering the "robust record on the potential security risks." Op.63-64. The Court emphasized that the injunction "explicitly addresses these risks" by allowing Google to adopt reasonable measures "to ensure that the platforms or stores, and the apps they offer, are safe from a computer systems and security standpoint," Op.64-65, supported by a Technical Committee that "offers a helpful resource to attend to the 'nuts-and-bolts issues' that Google raises" and "comports with federal courts' long history of utilizing appointed experts," Op.58.

**Renewed Stay Requests.** On August 1, 2025, Google moved for an administrative stay pending its current motion for a stay pending rehearing and certiorari. *See* D.E.201.1. Although Google had nearly a year to get ready, it claimed that requiring implementation of the injunction without a stay "would expose users and developers to substantial risks and jeopardize the entire Android ecosystem." *Ibid.* at 2. This Court granted the administrative stay later that day and

7

gave Google one week to file the present motion. In its motion, Google now drops any pretense that the requested stay relates to implementation concerns. Instead, Google seeks to postpone compliance indefinitely while it seeks discretionary review to relitigate fact-bound arguments rejected by every juror, the district court judge and a unanimous Ninth Circuit panel.

## LEGAL STANDARD

To obtain a stay, Google "bears the burden" of establishing that: (1) it is likely to succeed on the merits; (2) it will be irreparably injured absent a stay; (3) the issuance of the stay will not substantially injure other parties interested in the proceeding; and (4) the public interest favors a stay. *See Nken v. Holder*, 556 U.S. 418, 426, 433-34 (2009). In this case, with only administrative stays having been granted, no court has ever found the *Nken* factors satisfied, rendering inapplicable any "general practice … of staying the mandate pending certiorari." *Contra* D.E.206.1 (Google's Motion for Stay ("Stay Mot.")) at 9. Were that not so, a party could evade its *Nken* burden entirely, and stays would (nonsensically) be easier to obtain after an appellate loss than before.

8

The first *Nken* factor requires Google to establish *both* a "reasonable probability" that further discretionary review will be granted—whether by the en banc Court or the Supreme Court, *see, e.g.*, *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010)—and a "reasonable probability or fair prospect of success" on the merits of such discretionary review. *FTC v. Qualcomm Inc.*, 935 F.3d 752, 755 (9th Cir. 2019). That is no light task; for en banc review, Google must demonstrate that the panel's decision conflicts with law from the Ninth Circuit, other circuits or the Supreme Court, or presents a legal issue of exceptional importance. *See* Fed. R. App. P. 40(b)(2). For certiorari, Google must show the decision departs from other circuits or Supreme Court precedent and presents a recurring issue or one of national concern. *See* Sup. Ct. R. 10.

## ARGUMENT

**I. GOOGLE IS NOT LIKELY TO SUCCEED IN OBTAINING FURTHER REVIEW OR REVERSAL.**

**A. THE COURT'S REJECTION OF GOOGLE'S FACT-BOUND PRECLUSION CLAIM DOES NOT WARRANT FURTHER REVIEW.**

Google offers two arguments why "the panel's preclusion holding warrants en banc review": it allegedly creates an intra-circuit conflict

9

with the Court's decision in *Apple II* and "punishes Google for pro-competitive behavior." Stay Mot.10. Both arguments fail.

*First*, what Google calls a "conflict" with *Apple II* is not a true intra-circuit conflict warranting en banc review because it is not a conflict with law from the Ninth Circuit. *See* Fed. R. App. P. 40(b)(2). Google does not suggest that the two panels established different and conflicting *legal* rules, for preclusion or otherwise; instead, it argues that the Court misapplied settled preclusion principles when it held that *Apple II* did not present the "identical" issue that the jury confronted here. Stay Mot.12-13. That fact-bound claim is not the kind of legal conflict appropriate for further review.

*Apple II* was the culmination of an action Epic brought against Apple, alleging anticompetitive conduct relating to Apple's app store and Apple's in-app billing system. That case went to trial in May 2021, and for Epic's antitrust claims, the district court defined the relevant market as "mobile-game transactions" and found Apple lacked

monopoly power in that market. The Court allowed that market definition to stand. *See Apple II* at 981.[1]

In this matter, Google argued that the market definition in *Apple II* should have precluded Epic from advocating a different market definition. *See* D.E.36.1 at 31-40. This Court disagreed. Although Google contends the panel got the preclusion analysis wrong, Google does not dispute that the panel applied the correct issue preclusion test, including the requirement that both cases involve an "identical" issue. *Cf.* Stay Mot.12. Nor does Google contend that the panel applied a different preclusion analysis than the panel in *Apple II*, which had no occasion to consider preclusion at all. Rather, Google simply takes issue with the Court's application of settled preclusion law to the facts of this case. If that were enough to establish an intra-circuit conflict, every contested denial of issue preclusion would be a candidate for en banc consideration.

To avoid this, Google frames the conflict as being "about the 'area of effective competition' for mobile-gaming transactions." Stay Mot.10.

---

[1] Epic prevailed against Apple on its state unfair competition claim. *Apple II* at 999-1002.

But market definition is a fact-bound question that depends on the specific evidentiary and economic record.  *See, e.g.*, *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482 (1992).  Google did not argue to the panel—and does not argue now—that antitrust law requires the same market definition to be applied across all cases touching the same industry.  Stay Mot.14 (disavowing that argument).  Google based its position solely on issue preclusion, and there is no conflict regarding the applicable preclusion principles.

The Court was also right to reject Google's preclusion argument.  Mere "[s]imilarity" of issues is not enough; "collateral estoppel is applied only when the issues are identical."  *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985) (en banc).  And it is well established that the relevant market can be determined "only after a factual inquiry into the commercial realities faced by consumers."  *Eastman Kodak*, 504 U.S. at 482 (cleaned up).  This "case-by-case inquiry underlies the principle that relevant markets are not independent, freestanding entities defined in a vacuum."  Op.20.  Because "Epic's claims against Apple involved meaningfully different

commercial realities and theories of harm from its claims against Google," the issues were not identical. *Ibid.*

*Second*, Google's argument that the decision punishes Google for being "more open[]" than Apple, Stay Mot.13, is overtly founded on the unique facts of this case and raises no recurring question of law on which the courts are or could be divided. Google's argument also misrepresents this Court's decision. The Court did not reject Google's preclusion argument "because [Google] made a competitive choice to offer more openness," Stay Mot.13, but because the issues were "not identical," Op.19-20. Preclusion does not turn on which model is "more open[]" but on whether the issues presented by each model are the same.

To the extent Google is arguing that, regardless of whether preclusion applies, it is entitled as a matter of *antitrust* law to the same markets applied in *Apple II*, *cf.* Stay Mot.13, that is self-evidently wrong, and Google eventually concedes the point, *see* Stay Mot.14 (admitting that it does not contend "'a court's definition of a given market' in one case could become 'a universal ban on antitrust action in any market within or overlapping that market'"). There is thus no

13

merit to Google's claim that the Court's decision creates perverse incentives for how technology companies will structure their offerings. *Contra* Stay Mot.13. This is a fact-specific preclusion ruling, unlikely to recur.

Moreover, even if the panel's "identical issue" analysis were wrong, changing it would not affect the outcome for two reasons. *First*, preclusion requires that in addition to being identical, the issue decided in the first case must also be "necessary to decide the merits." *Love v. Villacana*, 73 F.4th 751, 754 (9th Cir. 2023) (citations omitted). And as Epic explained, the market definition question was not necessary to the outcome in *Apple II*. *See* D.E.135.1 (Epic's Answering Brief) at 42-44. Specifically, in *Apple II*, this Court held that "even assuming Apple has monopoly power, Epic failed to prove Apple's conduct was anticompetitive." *Apple II* at 999. Thus, Apple would have prevailed regardless of market definition, making the market definition finding non-essential to the judgment, and thus not controlling here. *See, e.g.*, *Bobby v. Bies*, 556 U.S. 825, 834 (2009) ("If a judgment does not depend on a given determination, relitigation of that determination is not precluded.").

14

*Second*, Google's preclusion defense independently fails because, as this Court noted, "the district court determined that Google's preclusion argument was untimely and without 'good cause excusing the delay.'" Op.17 n.5. Thus, the district court judgment can be affirmed on the alternative ground that Google forfeited its preclusion defense by failing to preserve it. *Cf.* D.E.135.1 at 31-35 (arguing Google waived its preclusion argument by not timely raising it before the district court and "failing to challenge the district court's timeliness decision on appeal"). If an en banc Court agreed, it would never even reach the issue preclusion question that Google claims is worthy of en banc consideration.

### B. THE COURT'S REJECTION OF GOOGLE'S RULE-OF-REASON CHALLENGE TO THE JURY INSTRUCTIONS DOES NOT WARRANT FURTHER REVIEW.

Google argues that "the panel's treatment of Epic's burden under the Rule of Reason framework conflicts with Supreme Court and at least Second Circuit precedent and is ripe for further appellate review." Stay Mot.14; *see also* D.E.211.1 (Petition for Rehearing En Banc and/or Panel Rehearing ("Rehearing Pet.")) at 17 (claiming that the "Sixth, and Tenth Circuits follow" the Second Circuit). According to Google, "this

Circuit's precedent" "relieved Epic of its burden at step three" by permitting the jury "to find a Sherman Act violation so long as it determined that competitive harms outweighed the procompetitive benefits of the challenged conduct, even if Epic failed to prove that the procompetitive benefits could be reasonably achieved through less restrictive means." Stay Mot.15. That argument mischaracterizes the state of the law and the facts.

*First*, Google's assertion that the district court did not require Epic to satisfy Step 3 of the Rule of Reason is wrong. The instruction Google cites says the opposite of what Google claims. Stay Mot.7 (citing 4-ER-831 ("if you find that Google has proven a procompetitive rationale, then you ***must*** determine if Epic has met its burden to prove the existence of a substantially less restrictive alternative") (emphasis added)); *see also* 2-SER-136 ("***If*** you find that a challenged restraint resulted in competitive benefits in a relevant market that were not achievable through substantially less restrictive means, ***then*** you must balance those competitive benefits against the competitive harm resulting from the same restraint.") (emphasis added). That should end the matter.

16

Regardless, *second*, there is no circuit conflict.  Like this Court, the Second Circuit has repeatedly recited and applied the D.C. Circuit's formulation of the Rule of Reason in *United States v. Microsoft Corp.* ("*Microsoft I*"), which distilled Step 3 into two alternative paths for plaintiffs:  once the defendant meets its burden of production at Step 2, the plaintiff at Step 3 may rebut the procompetitive justifications by *either* proving a less restrictive alternative *or* "demonstrat[ing] that the anticompetitive harm of the conduct outweighs the procompetitive benefit."  253 F.3d 34, 59 (D.C. Cir. 2001) (en banc).  Consistent with the D.C. Circuit, the Second Circuit held in *United States v. Apple Inc.* that if the defendant offers procompetitive evidence, "[t]he factfinder then weighs the competing evidence 'to determine if the effects of the challenged restraint tend to promote or destroy competition.'"  791 F.3d 290, 329 (2d Cir. 2015) (citation omitted).

The only Second Circuit case Google cites as allegedly to the contrary is *1-800 Contacts, Inc. v. FTC*, 1 F.4th 102, 114, 120-22 (2d Cir. 2021), but that case does not hold that balancing is impermissible if a plaintiff fails to prove less restrictive alternatives.  There, in defending the FTC's finding of an antitrust violation, the government

17

*chose* not to marshal a balancing argument, proceeding *only* under the theory that the FTC did not err in finding substantially less restrictive alternatives. *See* Brief for Respondent, *1-800 Contacts, Inc. v. FTC*, No. 18-3848 (2d Cir. May 28, 2019), D.E.110. It was a litigant's choice not to argue balancing; the court did not reject it. Indeed, the Second Circuit reaffirmed that "at the end of the day, our job is to weigh the competing evidence to determine if the effects of the challenged restraint tend to promote or destroy competition"—*i.e.*, the balancing that Google eschews. *1-800 Contacts*, 1 F.4th at 121 (quotation omitted).

In its rehearing petition, Google also cites *Expert Masonry, Inc. v. Boone County*, 440 F.3d 336, 343 (6th Cir. 2006), and *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1310 (10th Cir. 2017), and claims the Sixth and Tenth Circuits "follow this rule, *requiring* antitrust plaintiffs to prove that a defendant could have achieved the same procompetitive benefits using substantially less restrictive, alternative conduct." Rehearing Pet.17. But neither case addressed what happens when a plaintiff fails to prove less restrictive alternatives. *Buccaneer* was decided at Step 1—the court found the

plaintiff failed to define relevant markets and demonstrate anticompetitive effects, explicitly stating it need not reach subsequent issues. 846 F.3d at 1312-20. *Expert Masonry* found no antitrust injury and never conducted the substantive rule of reason analysis. 440 F.3d at 345-48. Cases that never decided the issue do not create a circuit split.

*Third*, the Court's ruling is consistent with Supreme Court precedent. *Contra* Stay Mot.15-16. As this Court has said, "Supreme Court precedent neither requires a fourth step nor disavows it." *Apple II* at 993-94. And the Supreme Court has made clear that the Rule of Reason exists to "distinguish[] between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). When first articulating the standard in *Board of Trade of the City of Chicago v. United States*, the Court explained that the "true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." 246 U.S. 231, 238 (1918).

19

Determining whether a restraint "promotes" or "destroys" competition necessarily requires balancing its procompetitive benefits against its anticompetitive harms. Otherwise, a monopolist could continue conduct with anticompetitive harms that vastly outweigh any benefits, so long as it would incur even a modest cost to switch to equally effective alternative conduct.

*Fourth*, even if this Court accepted Google's position on the law, it would again not change the outcome. Analyzing Step 3 of the Rule of Reason would be relevant only if Google had satisfied its burden at Step 2 to prove legitimate business reasons for its competition-harming restraints. And here, the district court upheld the jury's verdict on the straightforward ground that it had "ample evidence" to find that Google failed at Step 2—Google could not offer a non-pretextual procompetitive justification for its restrictions. 1-ER-45.

That finding is correct. The record contained substantial evidence that Google's wide range of exclusionary agreements and technical impediments to competition were "motivated by anticompetitive reasons, rather than legitimate business ones." 1-ER-45-46. Moreover, even if this did not render any instructional error on Step 3 harmless,

20

any retrial would likely reach the same ultimate result, making this a poor case for rehearing.

### C. THE DISTRICT COURT'S REMEDY DOES NOT WARRANT FURTHER REVIEW.

Google also urges en banc review of part of the district court's remedial order requiring Google, for three years, to implement "catalog-access" and "app-store distribution" remedies to help restore competition in the Android app distribution market. Stay Mot.17-21. Under the "catalog-access" remedy, Google must temporarily make Google Play's catalog of apps available for competing app stores to display to users. (If a user downloads an app made available this way, all associated revenues would still flow to Google, not the competing store.) This remedy is intended to reduce the "chicken and egg" barrier to entry that competing stores face from network effects, where new stores cannot attract users because they have too few apps—and cannot attract developers and their apps because they have too few users. Under the "app-store distribution" remedy, Google Play must carry competing stores to help overcome how Google's anticompetitive conduct habituated users to go to Google Play (and nowhere else) to find apps. Google argues that "forcing Play to share its catalog with competitors

21

and to distribute competitors' app stores contravenes Supreme Court, Ninth Circuit, and D.C. Circuit precedent," and that "[c]ompelled sharing is a highly disfavored remedy under antitrust law." Stay Mot.17 (formatting omitted). This issue does not warrant en banc review either.

*First*, the Court correctly rejected Google's arguments as based on a misreading of the law and a misdescription of what the district court ordered. Google claims the Court's decision conflicts with *Verizon Communications Inc. v. Law Office of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004), arguing that the remedies "foist the District Court into a central planning role of setting and supervising the novel terms, price, and mechanics of these forced distribution arrangements." Stay Mot.17-18. But as the Court correctly noted, the district court had "large discretion" to craft appropriate remedies given the "special needs" of this case, including "the particular characteristics of digital markets, which can allow monopolists that achieved or maintained dominance through exclusionary conduct to perpetuate entry barriers and maintain monopoly power long after that conduct has stopped." Op.42, 44. The Court correctly found that the catalog-access and

app-store distribution remedies address the network effects that Google
unlawfully obtained and maintained.  As a Google document
acknowledged:  "Users come to Play because we have by far the most
compelling catalog of apps/games"; "Developers come to Play because
that's where the users are"; and even a large company like "Amazon
will struggle to break those network effects."  Op.44.

The DOJ and FTC agreed that Google fundamentally misreads
*Trinko* and that the district court's remedy was lawful.  "*Trinko*
addresses the narrow circumstances in which *liability* for a unilateral
refusal to deal with rivals violates Section 2" and "does not address the
available *remedies* for monopolization."  D.E.151.1 at 9 (emphasis in
original).  Google was not held liable for refusing to deal, but for
monopolization through exclusionary conduct, and the remedies
properly address "the anticompetitive consequences of Google's illegal
conduct."  *Ibid.* at 18-19 (quotation omitted).  This Court agreed.
Op.45-46 (stating *Trinko* was about "whether a unilateral refusal to
deal with rivals violates Section 2 of the Sherman Act—*not* the legality
of compelling a defendant already found liable under that statute to
deal with its competitors").

Nor does this Court's decision conflict with the D.C. Circuit's decision in *Microsoft I*. *Contra* Stay Mot.17-19. Google claims that case does not permit a remedy to address network effects "absent a finding of a 'significant causal connection' between the conduct found unlawful and the defendant's 'dominant position' in the market." *Ibid.* at 18 (quoting *Microsoft I* at 106). But the panel here acknowledged the need for a "clear indication of a significant causal connection between the conduct enjoined or mandated and the violation found," quoting verbatim the D.C. Circuit's standard. Op.43 (quoting *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 20 F.4th 466, 486 (9th Cir. 2021), which quotes *Microsoft I* at 105). Google's disagreement about the Court's *application* of that agreed-upon standard to the facts here is not a circuit conflict.

The district court found that Google's anticompetitive agreements preserved the "moat" of network effects and "entrench[ed]" Google's market position. 1-ER-17. This Court agreed, affirming the district court's remedies as a permissible way to "undo the consequence of Google's ill-gotten gains" by "giving competitors a chance to reach users now anchored to the Play Store," explaining that Google's own

24

documents showed competitors would "struggle" because "their catalog of apps/games is very limited" and "they don't have users." Op.51.

The Court's affirmance is well-founded. Google "d[id] not argue" on appeal "that the district court clearly erred in its factual findings on causation. For good reason." Op.49. This Court reviewed the record and held that it is "replete with evidence that Google's anticompetitive conduct entrenched its dominance, *causing* the Play Store to benefit from network effects." *Ibid.* (emphasis added). In fact, the record shows that Google specifically sought to prevent Amazon from "break[ing] those network effects." *Ibid.* And unlike in *Microsoft I*, where the court had to rely on inference, the Court here could—and did —point to Google's "own internal communications" showing how "benefits from network effects" both "motivated and flowed from anticompetitive activity 'entrenching and maintaining' the Play Store's dominant position." *Ibid.*

Even if the network effects were legitimately obtained in the first instance, Google was not permitted to preserve that favorable landscape by suppressing competition that could erode its customer base. The Court noted that "Google's '*unfairly enhanced*' network effects" resulted

from Google's conduct that "locked other app stores out of the Play Store, while app developers and users were locked in." Op.51 (emphasis added). The Court thus recognized the distinction between unlawfully enhanced network effects and network effects flowing from legitimate conduct. *Contra* Stay Mot.20-21. Google's suggestion that courts must "measure the extent" of the consequences of a defendant's unlawful conduct, *ibid.* at 20, would create an insuperable obstacle to relief; Google offers no metric by which such "measure[ment]" should be done and cites no case imposing such a quasi-quantitative requirement.

Here again it was not just Epic making the argument; the DOJ and the FTC explained the district court "found 'that Google unfairly enhanced its network effects in a way that would not have happened *but for* its anticompetitive conduct'"—a "finding of 'but for' causation" that "went well beyond what is required in an antitrust case"—and "that the anticompetitive conduct and enhanced network effects together 'had the consequence of entrenching and maintaining Google's monopoly power.'" D.E.151.1 at 17-18 & n.6 (quoting 1-ER-16-17) (alteration in original). They further explained that the district court's remedies are "reasonable methods of eliminating the consequences of

26

Google's unlawful conduct," *ibid.* at 16-22, and that "remedies in digital markets will often need to do more than merely enjoin the specific exclusionary conduct to restore competition to the market effectively," *ibid.* at 8.

## II.     GOOGLE FACES NO IRREPARABLE HARM.

Google also fails to establish the irreparable harm necessary for a stay.

Google must show that it will suffer "irreparable" harm that is "probable—as opposed to merely possible—if the stay is not granted." *United States v. Mitchell*, 971 F.3d 993, 996 (9th Cir. 2020).  Google "cannot meet this burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record."  *Doe #1 v. Trump*, 957 F.3d 1050, 1059-60 (9th Cir. 2020).

At the outset, Google's claim that a stay is needed to avoid irreparable harm from the catalog-access and app-store distribution requirements, *see* Stay Mot.23, is hard to fathom.  Even without a stay, those requirements are not scheduled to come into effect immediately, *see* Op.16 & n.4.  Google makes no effort to explain why the implementation deadline for these remedies must be paused, given its

promise to pursue further appellate review with expedition, *see* Stay

Mot.28 (promising to "file its certiorari petition no later than 45 days

after this Court's rehearing order"), and the ten months it has already

had to prepare.  Regardless of how any other aspect of this motion is

resolved, the clock on implementation of these remedies should continue

to run pending Google's pursuit of discretionary review, and Google

should be required to comply immediately upon the exhaustion of any

further appeals.

On the merits, Google and its amici rehash a set of objections that

have been rejected at every stage of this case, asserting that the

injunction "threatens immense reputational harm via immediate

increased security concerns on the Android ecosystem."  Stay Mot.22.

The district court thoroughly investigated that claim and rejected it,

finding after extensive hearings that Google "will have room to engage

in its normal security and safety processes" under the injunction.

1-ER-18-19.  This Court comprehensively addressed these arguments as

well, affirming that the district court's findings were supported by "a

robust record on the potential security risks attendant to the

catalog-access and app-store distribution remedies."  Op.64.  The Court

28

found that the injunction adequately "addresses these risks" by allowing Google to adopt "reasonable measures" to "ensure that the platforms or stores, and the apps they offer, are safe from a computer systems and security standpoint," Op.57, 64-65, and by having a Technical Committee available (subject to court supervision) to address any concrete claims of a well-defined security threat, Op.58-60. The Court noted that while some amici warned of security risks, others like Microsoft and the Electronic Frontier Foundation explained that Google's security concerns were a pretext. Op.64 n.19 (quoting, *e.g.*, EFF's argument that Google's "'feudal' security model would be improved by the injunction in the long run, because 'the security offered by a monopolist is more fragile than what a competitive market can provide'"). Google does not explain any *legal* flaw in this Court's rejection of its security arguments; it simply re-argues the facts (without claiming clear error).

Google next claims that the injunction requires "fundamental business changes that … cannot be easily undone" if the injunction is later vacated. Stay Mot.26. But Google fails to substantiate that assertion. Google identifies no technical reason why the required

29

modifications to its systems cannot be undone.  As the Court found, "Google is not being asked to develop a new product or service from scratch," and "the record confirms that Google can make the existing Play Store's app catalog available to other app stores at a cost of under $1 million, by using existing metadata servers and technical procedures."  Op.47.  Other provisions of the injunction—such as those prohibiting Google from "sharing Play Store revenue with actual or prospective entrants," barring "restrictive deals that condition payment or access to the Play Store," and prohibiting Google from "continuing to require Google Play Billing for all apps distributed on the Play Store," Op.40—prohibit business practices that can be easily reinstated in the unlikely event this Court's decision is reversed.  Similarly, the Technical Committee involves appointing representatives to an oversight body—hardly an irreversible structural change.

Finally, Google claims that it will be unable to recover lost profits that would have accrued pending further appeals if the Court's decision is ultimately reversed.  But the fact that compliance with an injunction has monetary consequences is not a sufficient reason for a stay.  *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d

30

1197, 1202 (9th Cir. 1980) ("It is well established, however, that such monetary injury is not normally considered irreparable.").  That rule makes particular sense when, as here, the jury, the district court and this Court have all found the alleged monetary losses to constitute supracompetitive profits reaped in violation of federal and state antitrust laws.  And as discussed next, any risk of "unrecoverable business expenses" to Google, Stay Mot.25, is far outweighed by the losses developers and consumers will bear if a stay is imposed.[2]

### III.    THE BALANCE OF EQUITIES WEIGHS AGAINST A STAY.

The balance of equities weighs firmly against further delay.  For the reasons above, Google has not shown it is likely to win before (or even secure review from) the en banc Court or Supreme Court, nor has it demonstrated genuine irreparable harm.  This Court affirmed that the injunction will provide immediate benefits to Epic that have been unlawfully withheld for years, while a stay will ensure that Epic, other

---

[2] Google tries to cast its reduced profits as creating an irreparable disadvantage in competition with Apple.  *See* Stay Mot.25-26.  Even setting aside whether and in what market such competition might occur, Google does not and cannot contend that it is somehow resource-constrained, such that losing supracompetitive profits from its unlawful conduct will make it unable to "reinvest[] in improving Play and the Android ecosystem."  *Ibid.*

developers and the consuming public continue to suffer ongoing and irreparable competitive harm.

Epic's harm is undeniable. Epic "is a competing games distributor and would earn additional revenue but for [Google's] restrictions." Op.66 (quoting *Apple II* at 972). The anticompetitive effects of Google's conduct, "if the restrictions were not enjoined, would continue to harm competition in the defined markets of Android in-app billing and Android app distribution, in which Epic is undisputedly a player." *Ibid.* Epic cannot be made whole through money damages because its competitive injury is ongoing and stems from being excluded from the markets where it seeks to compete. As the Court noted, "it was precisely Epic's attempt to launch *Fortnite* on the Play Store that led to this litigation." *Ibid.*

The harm to the broader public also will continue absent the injunction and cannot be meaningfully remedied in any other way. The record demonstrates that Google's unlawful conduct has systematically harmed competition for years. As Epic argued to the Court, Google's "years-long strategy to suppress competition among app stores and payment solutions" used a "combination of tactics" because Google

believed "competing on price … is prone to be a race to the bottom." D.E.135.1 at 1. Google paid OEMs for complete exclusivity, required technical obstacles to dissuade users from obtaining apps outside Google Play, paid app developers to withhold exclusive content from rivals and "paid potential competitors not to launch competing app stores." *Ibid.* "As a result, only 3% of Android devices in the United States have successfully installed a competing app store" and "[w]ould-be competitors—from small innovators to powerful companies like Amazon—have been fenced out." *Ibid.* at 1-2.

Google charges developers a 30% commission "for the vast majority of in-app purchases through GPB" and "levies this charge for each and every in-app purchase in perpetuity." *Ibid.* at 9. "In 2021, Google Play had an operating profit of 71%." *Ibid.* These supracompetitive profits come directly at the expense of developers and, ultimately, consumers who pay higher prices. That is the status quo Google seeks to maintain, and the real reason it seeks an indefinite stay.

Antitrust remedies are designed to "deny to the defendant the fruits of its statutory violation" and "ensure that there remain no

practices likely to result in monopolization in the future." *Optronic*, 20 F.4th at 486 (citation omitted). Every additional day allows Google to continue extracting supracompetitive profits from illegal conduct. Thus, granting a stay would inflict further losses on developers and consumers on top of the billions of dollars of harm illegally inflicted in years past that will never be recovered. The balance of equities strongly favors immediate implementation of this carefully crafted remedy to restore the competition that Google has unlawfully suppressed for far too long.

## CONCLUSION

Google's stay motion should be denied.

August 18, 2025                    Respectfully submitted,

                                   */s/Gary A. Bornstein*_____

                                   Gary A. Bornstein
                                   Antony L. Ryan
                                   Yonatan Even
                                   Lauren A. Moskowitz
                                   Justin C. Clarke
                                   Michael J. Zaken
                                   M. Brent Byars
                                   CRAVATH, SWAINE & MOORE LLP
                                   Two Manhattan West
                                   375 Ninth Avenue
                                   New York, NY 10001
                                   (212) 474-1000

                                   Paul J. Riehle
                                   FAEGRE DRINKER BIDDLE
                                   & REATH LLP
                                   Four Embarcadero Center
                                   San Francisco, CA 94111
                                   (415) 591-7500


        *Counsel for Plaintiff-Appellee Epic Games, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to this Court's order of _____, 2025, I certify that this filing complies with applicable type-volume and length limitations because it contains 6,338 words, excluding the parts exempted by Fed. R. App. P. 27(a)(2)(B) and Fed. R. App. P. 32(f).

I certify that this filing complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E).

August 18, 2025

/s/ *Gary A. Bornstein*
Gary A. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on August 18, 2025. All participants in the case are registered ACMS users, and service will be accomplished by the appellate ACMS system.

/s/ *Gary A. Bornstein*
Gary A. Bornstein