**Nos. 24-6256, 24-6274 & 25-303**

IN THE

# United States Court of Appeals for the Ninth Circuit

IN RE: GOOGLE PLAY STORE ANTITRUST LITIGATION

EPIC GAMES, INC.,
  *Plaintiff-Appellee*

v.

GOOGLE LLC, ET AL.,
  *Defendants-Appellants*

*On Appeal from the
United States District Court for the Northern District of California
Nos. 20-cv-05671 & 21-md-02981 (Hon. James Donato)*

**BRIEF OF *AMICUS CURIAE* GREGORY J. WERDEN SUPPORTING PANEL REHEARING AND REHEARING *EN BANC***

AMY R. UPSHAW
CHRISTOPHER C. YOOK
JEFFREY S. SPIGEL

KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Suite 900
Washington, D.C. 20006
(202) 737-0500
*aupshaw@kslaw.com*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF *AMICUS CURIAE* .................................................................... 1

INTRODUCTION .................................................................................................. 1

SUMMARY OF ARGUMENT ............................................................................. 2

ARGUMENT ........................................................................................................... 2

I. THE JURY VERDICT SHOULD BE SET ASIDE BECAUSE ERRONEOUS INSTRUCTIONS PREJUDICED GOOGLE ..................... 2

   A. Cross-Market Justification Is Permissible ........................................... 3

   B. The Jury Was Improperly Instructed on Justification ....................... 5

   C. The Jury Was Improperly Instructed on Balancing ........................... 6

II. THE REMEDY SHOULD BE MODIFIED SUBSTANTIALLY ................ 8

CONCLUSION ...................................................................................................... 11

CERTIFICATE OF COMPLIANCE ................................................................. 12

# TABLE OF AUTHORITIES

**Cases:** **Page**

*Appalachian Coals, Inc. v. United States*,
    288 U.S. 344 (1933) ................................................................................ 3

*California ex. Rel. Harris v. Safeway, Inc.*,
    651 F.3d 1118 (9th Cir. 2011) (*en banc*) ................................................. 6

*Chuman v. Wright*,
    76 F.3d 292 (9th Cir. 1996) ................................................................. 5–6

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*,
    433 U.S. 36 (1977) ............................................................................. 3–4

*County of Tuolumne v. Sonora Cmty. Hosp.*,
    236 F.3d 1148 (9th Cir. 2001) ................................................................ 7

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ......................................................... 3, 7–8

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
    547 U.S. 28 (2006) ................................................................................. 4

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007) .............................................................................. 4

*Mozart Co. v. Mercedes-Benz of N. Am., Inc.*,
    833 F.2d 1342 (9th Cir. 1987) ............................................................... 4

*NCAA v. Alston*,
    594 U.S. 69 (2021) ............................................................................ 3–4

*NCAA v. Bd. of Regents of the Univ. of Okla.*,
    468 U.S. 85 (1984) ................................................................................ 4

*O'Bannon v. NCAA*,
    802 F.3d 1049 (9th Cir. 2015) ............................................................... 4

*Optronic Techs., Inc. v. Ningbo Sunny Elect. Co.*,
    20 F.4th 466 (9th Cir. 2021) .............................................................. 8–9

**Cases–Continued:** Page

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) .................................................................. 11

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006) ................................................................................ 6–7

*Trump v. CASA, Inc.*,
    606 U.S. ___, 145 S. Ct. 2540 (2025) ....................................................... 9

*United States v. Microsoft Corp.*,
    56 F.3d 1448 (D.C. Cir. 1995) ................................................................10

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) (*en banc*) ................................................8–9

*Standard Oil Co. of N.J. v. United States*,
    221 U.S. 1 (1911) ................................................................................9–10

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
    395 U.S. 100 (1969) ..............................................................................10

**Miscellaneous:**

Samuel L. Bray & Paul B. Miller, *Getting into Equity*,
    97 Notre Dame L. Rev. 1763 (2022) ....................................................... 9

## INTEREST OF *AMICUS CURIAE*

Gregory J. Werden has devoted his career to the application of antitrust law. He served in the Antitrust Division of the U.S. Department of Justice for more than four decades, and his scholarly contributions have been cited in more than 20 federal antitrust decisions.

All parties consented to the filing of this brief. No party's counsel authored any part of the brief, and no party, counsel, or any other person contributed funds for the preparation of the brief.

## INTRODUCTION

Google, LLC (Google) and Apple, Inc. (Apple) orchestrate the dominant mobile device platforms, which compete on functionality and security. Aided by complementors, Google and Apple enable communication, navigation, entertainment, and commerce with pocket-sized devices.

Google and Apple financed expensive platform development mainly by taking commissions when users pay app developers. In an effort to free ride on the mobile platforms, app developer Epic Games, Inc. (Epic) brought separate antitrust suits against Google and Apple.

An improperly instructed jury found Google liable, and the district court imposed a drastic remedy designed to create competition. The panel erred both in sustaining the verdict and in sustaining the remedy.

## SUMMARY OF ARGUMENT

I. The *en banc* Court should set aside the verdict of Sherman Act liability because the jury instructions prevented due consideration of Google's contention that the challenged conduct was amply justified by its promotion of mobile platform competition.

II. The Court should strike all remedial provisions designed to create competition in app distribution. The jury verdict does not imply that the condemned conduct materially contributed to Google's dominance over Android app distribution, and the court made no such finding.

## ARGUMENT

### I. THE JURY VERDICT SHOULD BE SET ASIDE BECAUSE ERRONEOUS INSTRUCTIONS PREJUDICED GOOGLE

The panel wrongly asserts that: "The rule of reason does not require consideration of procompetitive benefits across markets." *Epic Games, Inc. v. Google LLC*, No. 24-6256, slip op. at 36 (9th Cir. July 31, 2025) (Op.) (capitalization altered). And the panel criticizes Google for trying "to sidestep the focus of the case." Op. at 36–37. But Google was entitled to focus its defense on platform-level competition with Apple, and rehearing is needed to correct the panel's tunnel vision with respect to the rule of reason.

**A. Cross-Market Justification Is Permissible**

The *en banc* Court should address the panel's holding that: "Because consideration of cross-market competitive benefits is an open question and not an established legal requirement, it was not error for the district court to exclude it from the jury instruction." Op. at 38.

The rule of reason "set[s] up the essential standard of reasonableness." *Appalachian Coals, Inc. v. United States*, 288 U.S. 344, 360 (1933). "Under this rule, the factfinder weighs *all of the circumstances* of a case in deciding whether a restrictive practice should be prohibited." *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977) (emphasis added).

Cross-market considerations can be relevant circumstances, and courts have weighed them. This Court recently noted that it had credited "cross-market rationales when applying the Rule of Reason." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 989 (9th Cir. 2023). The Court did not then rule on the propriety of weighing cross-market considerations because the justification at issue was related to the relevant market. *Id.* at 990.

The Court observed that Supreme Court precedent "on this issue is not clear." *Id.* at 989, citing *NCAA v. Alston*, 594 U.S. 69 (2021). The Supreme Court expressed "no views" on cross-market justification in *Alston*, but explained that the plaintiffs did "not question that the NCAA may

3

permissibly seek to justify its restraints in the labor market by pointing to procompetitive effects they produce in the consumer market." *Id.* at 87.

The Supreme Court previously had allowed harm to competition in football broadcasting to be justified by the promotion of competition on the field or competition with other sports. *NCAA v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 104 (1984). This Court did much the same in *O'Bannon v. NCAA*, 802 F.3d 1049, 1072–74 (9th Cir. 2015).

Vertical restraints, as in this case, often can be justified by the promotion of interbrand competition, which is "the primary concern of antitrust law," *Sylvania*, 433 U.S. at 51–52 & n.19. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 889–92 (2007) (resale price maintenance); *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 35–36 (2006) (tying).

Interbrand competition typically operates outside the market restrained. When Mercedes-Benz required dealers to sell only its replacement parts, a properly instructed jury found that the restraint was justified by enhanced competition in the sale of cars. This Court affirmed. *Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1343, 1348–51 & n.7 (9th Cir. 1987).

The panel decision conflicts with *Mozart*, *O'Bannon*, and other cases. If a question remains open, this Court should decide it by holding that the rule of reason permits cross-market justification.

## B. The Jury Was Improperly Instructed on Justification

Without elaboration, the panel asserts that the "Section 1 Sherman Act (restraint of trade) instruction imposed no limit on procompetitive considerations in other markets." Op. at 38. The panel should correct that mistaken assertion.

The jury was properly instructed on the plaintiff's prima facie case. 6-ER-1436–43. The extensive instructions correctly tied the jury's inquiry at this initial step to the relevant market. In previewing subsequent steps, the instruction improperly indicated that the inquiry still would be confined to the relevant market. The reference to possible "countervailing competitive benefits," 6-ER-1439–40, connoted a direct offset in the relevant market.

The rebuttal instruction was: "Now, if you find that Google has proven that a challenged restraint resulted in substantial harm to competition in a relevant market, then you must next determine whether Google has proven that the restraint also benefits competition in other ways." 6-ER-1443. The court should have told the jury that Google's conduct could be justified as reasonably necessary to promote mobile platform competition. Google had made a timely request for that instruction. 4-ER-837–38.

"Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading."

5

*Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996). The justification instruction failed to draw the jury's focus outside the relevant market. At a minimum, the jury was misled on how to weigh Google's justification.

### C. The Jury Was Improperly Instructed on Balancing

The balancing instruction, which the panel approved, Op. at 37 n.10, did not correctly state the law. The jury was wrongly instructed: "Now, if you find that a challenged restraint resulted in competitive benefits *in a relevant market* that were not achievable through substantially less restrictive means, then you must balance those competitive benefits against the competitive harm resulting from the same restraint." 6-ER-1444 (emphasis added).

This instruction was plain error, assuming that a balancing instruction should have been given. First, the jury was wrongly instructed to ignore Google's justification if it was not "in a relevant market," and it was not. That was error because the "rule of reason weighs legitimate justifications for a restraint against any anticompetitive effects." *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1133 n.10 (9th Cir. 2011) (*en banc*).

Second, in sharp contrast to the instruction on less-restrictive alternatives, 6-ER-1443, the balancing instruction failed to place the burden on Epic. It is well established that "antitrust plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable." *Texaco Inc. v.*

6

*Dagher*, 547 U.S. 1, 5 (2006). If there is to be balancing, the plaintiff must demonstrate that competitive harm outweighs competitive benefit.

A balancing instruction was given, and approved by the panel, because this Court had held that "where a plaintiff's case comes up short at step three [less-restrictive alternative], the district court must proceed to step four and balance the restriction's anticompetitive harms against its procompetitive benefits." *Apple*, 67 F.4th at 994.

The Court explained that, "[i]n most instances," step four should involve no more than "briefly confirming the result suggested by a step-three failure." *Id.* The Court referred to a case in which it had affirmed summary judgment for the defendant while noting that competitive benefits obviously outweighed competitive harms. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1152, 1160 (9th Cir. 2001).

The instruction here invited something vastly different. Rather than confirming the result suggested by step three, the jury was invited to reach the opposite result no matter how reasonable Google's conduct was. If a jury is instructed to balance under the rule of reason, it also should be instructed that the plaintiff normally can carry this burden only by proving that the asserted benefit is trivial while the harm is not.

7

The *en banc* Court should clarify the nature and scope of step four or jettison step four altogether. In *Apple*, this Court could not see "what value a balancing step adds" and was "skeptical of the wisdom" of undertaking it. *Apple*, 67 F.4th at 994. There is no value or wisdom in allowing a jury to act arbitrarily under the mantle of balancing, as was done here.

## II. THE REMEDY SHOULD BE MODIFIED SUBSTANTIALLY

The panel rightly observed that a court reviewing a Sherman Act remedy "asks if the relief is a reasonable method of eliminating the consequences of the illegal conduct." Op. at 43 (quoting *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 486 (9th Cir. 2021)). But the panel wrongly relied on consequences not implied by the jury verdict.

The panel relied on the district court's assertion that the jury found that the conduct at issue "had the consequence of entrenching and maintaining its monopoly." Op. at 48 (quoting 1-ER-17). But the jury found only unlawful maintenance of monopoly, 1-ER-53, which requires only a weak causal connection to monopoly—that the conduct "reasonably appears capable of making a significant contribution to maintaining monopoly." *United States v. Microsoft Corp.*, 253 F.3d 34, 79 (D.C. Cir. 2001) (*en banc*) (per curiam).

This Court has declared that a Section 2 remedy "must be based on a 'clear indication of a significant causal connection between the conduct

8

enjoined or mandated and the violation found directed toward the remedial goal intended.'" *Optronic*, 20 F.4th at 486 (quoting *Microsoft*, 253 F.3d at 105). The weak connection implied by the verdict does not supply the clear connection that the district court's remedial goal requires.

*Optronic* quoted *Microsoft*, which held: "Absent some measure of confidence that there has been an actual loss to competition that needs to be restored," relief in a monopoly maintenance case "should . . . merely enjoin the offensive conduct at issue." *Microsoft*, 253 F.3d at 80. The verdict did not supply that confidence because the offense did not require an actual loss of competition, and the jury was properly instructed. *See* 6-ER-1431–35.

The basic equitable principle is that, "the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be." *Trump v. CASA, Inc.*, 606 U.S. \_\_, 145 S. Ct. 2540, 2558 (2025) (quoting Samuel L. Bray & Paul B. Miller, *Getting into Equity*, 97 Notre Dame L. Rev. 1763, 1797 (2022)).

Thus, every Section 2 remedy must be "tailored to fit the wrong creating the occasion for the remedy." *Microsoft*, 253 F.3d at 107. This basic principle has been applied in Section 2 cases since *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1 (1911), in which the Supreme Court made two key points:

9

First, "ordinarily where it was found that acts had been done in violation of the statute, adequate measure of relief would result from restraining the doing of such acts in the future." *Id.* at 77. Thus, even when the plaintiff "has proved antitrust violations at trial, the remedies must be of the 'same type or class' as the violations." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1460 (D.C. Cir. 1995) (per curiam) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 132 (1969)).

Second, when monopoly "has been brought about in violation of the statute," the court has a duty to "dissolve the combination found to exist in violation of the statute." *Standard Oil*, 221 U.S. at 77. Similarly, in a monopoly maintenance case, the remedy should be aimed at restoring competition to the extent that the market would have restored competition but for the unlawful conduct.

In assessing reasonableness, the panel also relied on the district court's assertion that "Google unfairly enhanced its network effects in a way that would not have happened but for its anticompetitive conduct." Op. 49 (quoting 1-ER-17). But enhancing network effects was without consequence if they already were as powerful as the district court indicated. 1-ER-16.

Moreover, the jury must have found that Google's dominant position was protected by barriers other than network effects. Under instructions that did

10

not mention network effects as a possible barrier, 6-ER-1429–31, the jury found monopoly power. That finding requires significant barriers to entry. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995).

Drastic remedies in Section 2 cases are rare and require strong showings of lost competition that should be restored. The jury was not asked whether the conduct it condemned caused a significant loss of competition. Nor did the court take briefing or hear argument directed to the issue. The district court had no basis for the drastic remedies it imposed. The panel was wrong to uphold the injunction and should correct that error.

## CONCLUSION

This Court should grant rehearing to clarify the application of the rule of reason and substantially narrow the district court's remedy.

Respectfully submitted,

August 25, 2025

/s/ *Amy R. Upshaw*

AMY R. UPSHAW
CHRISTOPHER C. YOOK
JEFFREY S. SPIGEL

KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Suite 900
Washington, D.C. 20006
(202) 737-0500
aupshaw@kslaw.com

11

# CERTIFICATE OF COMPLIANCE

**9th Cir. Case Numbers**   24-6256, 24-6274, 25-303

I am an attorney.

**This brief contains**   2,293   **words,** including   0   words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○  complies with the word limit of Cir. R. 32-1.

○  is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⊗  is an **amicus brief** and complies with the word limit of Cir. R. 29-2(c)(2).

○  is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated                .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**   */s/ Amy R. Upshaw*              **Date**   August 25, 2025