Nos. 24-6256, 24-6274, 25-303

IN THE
# United States Court of Appeals for the Ninth Circuit

IN RE: GOOGLE PLAY STORE ANTITRUST LITIGATION

EPIC GAMES, INC.,

*Plaintiff-Appellee*,

v.

GOOGLE LLC, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of California
Nos. 3:20-cv-05671-JD, 3:21-md-02981-JD
Hon. James Donato

**REPLY IN SUPPORT OF MOTION FOR A STAY OF PERMANENT INJUNCTION PENDING GOOGLE'S FORTHCOMING PETITIONS FOR REHEARING AND, IF NECESSARY, CERTIORARI**

Neal Kumar Katyal
MILBANK LLP
1101 New York Avenue NW
Washington, DC 20005
Telephone: (202) 835-7505
nkatyal@milbank.com

Jessica L. Ellsworth
Reedy C. Swanson
Natalie Salmanowitz
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5886
jessica.ellsworth@hoganlovells.com

August 25, 2025

*Counsel for Defendants-Appellants*

*(Additional Counsel Listed on Signature Page)*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

    I.    GOOGLE HAS A REASONABLE PROBABILITY OF PREVAILING ON EN BANC OR CERTIORARI REVIEW ......................2

        A.    The Panel's Preclusion Ruling Conflicts With *Epic v. Apple* ...............2

        B.    This Court's Rule-of-Reason Framework Conflicts With Precedent From The Supreme Court And Other Circuits .....................5

        C.    The Panel's Affirmance Of The Duty-to-Deal Remedies Contravenes Settled Law ........................................................................7

    II.    THE EQUITIES STRONGLY FAVOR A STAY .....................................10

CONCLUSION ........................................................................................................13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*1-800 Contacts, Inc. v. FTC*,
   1 F.4th 102 (2d Cir. 2021) ............................................................................... 6

*Abromson v. Am. Pac. Corp.*,
   114 F.3d 898 (9th Cir. 1997) ............................................................................ 7

*Beeman v. Anthem Prescription Mgmt., LLC*,
   689 F.3d 1002 (9th Cir. 2012) (en banc) ......................................................... 3

*Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*,
   846 F.3d 1297 (10th Cir. 2017) ........................................................................ 6

*Care Heating & Cooling, Inc. v. Am. Standard, Inc.*,
   427 F.3d 1008 (6th Cir. 2005) .......................................................................... 6

*Epic Games, Inc. v. Apple, Inc.*,
   559 F. Supp. 3d 898 (N.D. Cal. 2021) ............................................................. 2

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ............................................................................. 4

*Expert Masonry, Inc. v. Boone County*,
   440 F.3d 336 (6th Cir. 2006) ............................................................................ 6

*FTC v. Qualcomm Inc.*,
   935 F.3d 752 (9th Cir. 2019) .......................................................................... 11

*Gregory v. Fort Bridger Rendezvous Ass'n*,
   448 F.3d 1195 (10th Cir. 2006) .................................................................. 6, 7

*In re Victor Techs. Sec. Litig.*,
   792 F.2d 862 (9th Cir. 1986) .......................................................................... 11

*In re Westgate-California Corp.*,
   642 F.2d 1174 (9th Cir. 1981) .......................................................................... 4

# TABLE OF AUTHORITIES—Continued

Page(s)

*Law v. NCAA*,
  134 F.3d 1010 (10th Cir. 1998) ...................................................................7

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
  634 F.2d 1197 (9th Cir. 1980) ...................................................................11

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
  883 F.3d 32 (2d Cir. 2018) ..........................................................................6

*Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*,
  325 F.3d 712 (6th Cir. 2003) ......................................................................6

*NCAA v. Alston*,
  594 U.S. 69 (2021) ......................................................................................7

*Nilavar v. Mercy Health Sys.*,
  244 F. App'x 690 (6th Cir. 2007) ...............................................................6

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
  20 F.4th 466 (9th Cir. 2021) ....................................................................8, 9

*United States v. Apple, Inc.*,
  791 F.3d 290 (2d Cir. 2015) ....................................................................5, 6

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) (en banc) ..................................................8, 9

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
  257 F.3d 256 (2d Cir. 2001) .......................................................................6

*White v. Ford Motor Co.*,
  312 F.3d 998 (9th Cir. 2002) ......................................................................7

**RULE:**

Fed. R. App. P. 40(b)(2)(A) ...............................................................................3

## INTRODUCTION

Epic's opposition does not seriously dispute that this injunction will have irreversible impacts on Play and the Android ecosystem, including over 100 million U.S. Play users and 500,000 app developers. That is, after all, the injunction's whole point. Epic's half-hearted claims that these harms are speculative ignore the extensive evidence Google submitted as well as amicus briefs from former national security officials, academics, app developers, and industry experts all confirming these changes would dramatically increase security and safety risks for users and developers, irreparably harm the public interest, and undermine competition itself.

Google has also shown that it has more than a "reasonable probability" or "fair prospect" of prevailing on further review—the applicable standard, as Epic agrees. Opp. 9. Epic cannot reconcile the conflicting antitrust regimes that would apply to Google and Apple and fails to rebut clear legal conflicts on the plaintiff's burden under the Rule of Reason and the standard for antitrust remedies. A stay should be granted for the limited period required for the en banc Court and, if necessary, the Supreme Court to consider these important issues.

## ARGUMENT

I. **GOOGLE HAS A REASONABLE PROBABILITY OF PREVAILING ON EN BANC OR CERTIORARI REVIEW.**

### A. The Panel's Preclusion Ruling Conflicts With *Epic v. Apple*.

Epic has not rebutted Google's strong showing that the panel opinion creates an irreconcilable conflict with *Epic v. Apple*.

Start with everything Epic does not dispute: that *Apple I* made conclusive findings about the "area of effective competition" for mobile gaming transactions that this Court affirmed, *see* Reh'g Pet. 1-2, 11-12; Mot. 10-11; that those findings concluded Google was Apple's "main competitor" for those transactions, *see* Mot. 1; that the markets Epic asserted in this case—in a complaint filed the same day as its complaint against Apple—largely consist of the *very same mobile gaming transactions* that *Apple* addressed, *see* Mot. 12; and, critically, that applying preclusion to *just those transactions* would be fatal to its antitrust case against Google. *See* Opp. 9-15.

This establishes a clear conflict with *Apple*. Yet Epic argues in one paragraph—really, a single sentence—that the panel correctly refused to apply preclusion because "Epic's claims against Apple involved meaningfully different commercial realities and theories of harm." Opp. 12-13 (quoting Op. 20). But this simply repeats the panel's error in treating Google's different business model—free and open versus Apple's "walled garden"—as dispositive even though *Apple I*

2

found that business-model difference *was part of the competition. Epic Games, Inc. v. Apple, Inc.*, 559 F. Supp. 3d 898, 1038 (N.D. Cal. 2021). Google does not argue that Epic has to assert the exact *same* markets as in *Apple*, but merely that Epic is precluded from seeking contradictory markets. *See* Mot. 12.

As Epic does not contest, *all* the panel's purported distinctions from *Apple* rest on Google opening Android to competition, while Apple did not similarly open iOS. Mot. 13. This reasoning would create perverse consequences for digital platform owners: If Google faces *increased* antitrust exposure precisely because it allows more competition, other companies will naturally follow Apple's closed model. *See* Op. 20-21.

Epic tries to sidestep this conflict by suggesting that *only* a purely "legal" conflict can warrant en banc review. *See, e.g.*, Opp. 1-2, 10. But this Court has recognized that "inconsistent enforcement" of the law warrants en banc review. *Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1005 (9th Cir. 2012) (en banc); *accord* Fed. R. App. 40(b)(2)(A) (rehearing appropriate "to secure or maintain uniformity of the court's decisions"). That is exactly the situation here: The antitrust laws are being enforced inconsistently as to Google and Apple, two pioneering technology companies with substantial significance to the economy, with Google singled out for disfavored treatment *because* Android facilitated

3

greater competition. *Cf.* ECF No. 214.1 at 9-12 (ACT | The App Association detailing the "non-stop close competition" between Google and Apple).

Epic's other attempts to skirt preclusion similarly fail. Contrary to Epic's assertion (at 14), market definition was essential to the result in *Apple*. *See* Reply Br. 8. The *Apple II* Court rejected Epic's antitrust claims because Apple lacked a sufficient share of those markets and because Epic could not prevail applying the Rule of Reason within those markets. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 983-999 (9th Cir. 2023). Both grounds rely on the competition between Apple and Google for mobile gaming transactions. *See id.* at 981 ("it is [the district court's] market in which we assess whether Apple's conduct is unlawful"). Moreover, even if there were multiple independent holdings, *each* would be preclusive. *In re Westgate-California Corp.*, 642 F.2d 1174, 1176-77 (9th Cir. 1981).

Epic also cites the District Court's pre-trial statement that Google's preclusion motion was untimely because it was raised in limine rather than at summary judgment. Opp. 15. But Google's answer asserted preclusion and the court resolved summary judgment motions *the same day* it resolved Google's preclusion motion, and even the District Court abandoned its timing concerns in resolving Google's post-trial arguments for preclusion. *See* Reply Br. 9-11; 1-ER-29-31. Timing is not an alternative basis for affirmance.

4

### B. This Court's Rule-of-Reason Framework Conflicts With Precedent From The Supreme Court And Other Circuits.

This Court's precedent allows a defendant to be liable under the Rule of Reason even where the plaintiff fails to prove there are less restrictive alternatives to the challenged conduct. That conflicts with the law of the Supreme Court and at least three other circuits.

Epic begins by wrongly suggesting the jury instructions required a showing of less restrictive alternatives at Rule-of-Reason step three before engaging in free-for-all balancing. Opp. 16. Not so. The instructions provided that regardless of how the jury resolved the less-restrictive-alternatives question, it "*must then* balance any competitive harms … against any competitive benefits." 6-ER-1435-36; 6-ER-1444 (emphasis added). That eliminated Epic's burden to show less restrictive alternatives. When Google objected below, Dkt. 806 at 99, Epic countered that balancing was an "essential step in the rule of reason analysis." *Id.* at 135, 138.

Epic cannot keep its story straight, as it also insists that this Court's precedents do not require a showing of less restrictive alternatives. Opp. 17. It cannot be that the District Court properly "*require[d]*" that Epic show this, Opp. 16 (emphasis added), and that such a showing is merely optional, Opp. 17.

Epic fails to rebut the clear circuit split on this issue. Epic paints the Second Circuit as having "held" in *United States v. Apple, Inc.*, 791 F.3d 290, 329 (2d Cir.

5

2015), that a factfinder must always engage in balancing. Opp. 17. But neither the concurrence nor dissent joined the part of the opinion Epic quotes. The panel thus "reached no majority as to the rule of reason." *Apple*, 791 F.3d at 349 (Jacobs, J., dissenting).

This single-judge dictum is an outlier among Second Circuit precedent, which has denied relief to plaintiffs failing to show less restrictive alternatives. *See, e.g.*, *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 45 (2d Cir. 2018). Epic suggests *1-800 Contacts, Inc. v. FTC*, 1 F.4th 102 (2d Cir. 2021), was a product of litigation strategy and did not hold that a plaintiff must establish a less restrictive alternative. Opp. 17-18. But the Second Circuit has confirmed that *1-800 Contacts* meant what it said: A plaintiff "*must show* the same purpose could be achieved without restricting competition," and the court has affirmed summary judgment where a plaintiff failed to meet that burden. *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 265 (2d Cir. 2001) (emphasis added). The Sixth and Tenth Circuits have also described this requirement with mandatory language in at least seven decisions.[1] These circuits are in lockstep with the

---

[1] *Nilavar v. Mercy Health Sys.*, 244 F. App'x 690, 695 (6th Cir. 2007); *Expert Masonry, Inc. v. Boone County*, 440 F.3d 336, 343 (6th Cir. 2006); *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1012 (6th Cir. 2005); *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 718 (6th Cir. 2003); *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1310 (10th Cir. 2017); *Gregory v. Fort Bridger Rendezvous Ass'n*, 448

6

Supreme Court, which has held that the Rule of Reason "require[s]" the plaintiff "show that there are substantially less restrictive alternative [means]." *NCAA v. Alston*, 594 U.S. 69, 100 (2021) (quotation marks omitted).

Epic also argues the Court can affirm because the jury could have found for Epic at the second step of the Rule of Reason. Opp. 20. That is wrong. Jury instructions must "fairly and adequately cover the issues presented, correctly state the law," and not be "misleading." *Abromson v. Am. Pac. Corp.*, 114 F.3d 898, 902 (9th Cir. 1997). When, as here, instructions misstate the law, the error is presumptively prejudicial. *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002). There is no basis in the verdict form to tell whether the jury stopped at step two or proceeded to step three, 1-ER-53, 1-ER-55, and therefore no way to know whether the jury relied on the erroneous instruction.

### C. The Panel's Affirmance Of The Duty-to-Deal Remedies Contravenes Settled Law.

The panel's decision contravenes this Court's and the D.C. Circuit's mandate to tailor remedies to the consequences of antitrust violations. Epic's efforts to minimize this error fail.

Epic first tries to defend the panel's conclusion that *Trinko*'s concerns about compelled sharing apply only in the liability context. Epic does not even

---

F.3d 1195, 1205 (10th Cir. 2006); *Law v. NCAA*, 134 F.3d 1010, 1019 (10th Cir. 1998).

acknowledge the Supreme Court's instruction that "[s]imilar considerations" about compelled sharing "apply" at both the liability and remedy stages; nor does Epic dispute that the Supreme Court has counseled courts *not* to "impose a duty to deal" remedy that places them in a central-planning role—as the duty-to-deal remedies here unquestionably would. Mot. 18-19 (citations omitted) (collecting cases). Instead, Epic cites only an amicus brief of two federal agencies, themselves repeat antitrust plaintiffs. Opp. 22-23; ECF No. 151.1 at 1 n.1 (agencies highlighting their "ongoing civil litigation against Google").

Epic further claims (at 24) that because the panel quoted *Optronic*'s and *Microsoft*'s "significant causal connection" language, Google's argument concerns only the panel's application of the law to this case. But the panel misconstrued the legal test, holding that a district court need not limit an antitrust injunction to "only touch the consequences of a defendant's conduct," Op. 48, and need not conduct any record-based analysis or make any record-based finding that a remedy will undo a consequence of anticompetitive conduct. Op. 49.

That newfound understanding cannot be squared with precedent. This Court and the D.C. Circuit have made clear that relief must be aimed at "eliminating the consequences of the illegal conduct." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 486 (9th Cir. 2021) (citation omitted); *see also United States v. Microsoft Corp.*, 253 F.3d 34, 104-105 (D.C. Cir. 2001) (en banc). Both courts

8

require a specific, record-grounded finding of "a significant causal connection" between the remedy and antitrust violation, *Optronic*, 20 F.4th at 486 (quoting *Microsoft*, 253 F.3d at 105), not a general assertion untethered to record evidence.

Epic downplays this departure from precedent by claiming (at 24–26) that the District Court made the necessary findings and Google did not dispute them. But *there were no record-based findings to dispute*. As Google explained, the jury was not asked to make any findings about this issue and the only evidence that the District Court and panel cited showed that Google *already* enjoyed network effects by the beginning of the relevant time period; there was no evidence of network effects created or entrenched by anticompetitive conduct. Mot. 21; Opening Br. 66-67.

Epic's only answer (at 26) is that requiring courts to measure the consequences of anticompetitive (rather than lawful) conduct would "create an insuperable obstacle to relief." That hyperbole exposes Epic's failure to have introduced evidence meeting its burden on this issue.[2] Courts resolving a monopoly maintenance case must always distinguish between consequences resulting from anticompetitive entrenchment versus "vigorous competition." *Microsoft*, 253 F.3d at 58. That rule preserves innovation. The injunction here would stifle it.

---

[2] Instead, Epic built its case around evidence that competitors need to *distinguish* themselves from Play—not use Play's catalog or be distributed through Play. *See, e.g.*, 6-ER-1252-53; 6-ER-1469.

## II.  THE EQUITIES STRONGLY FAVOR A STAY.

The injunction threatens irreparable harm and disserves the public—as shown not by conclusory assertions, but through declarations from those responsible for implementing the remedy and confirmation from developers, experts, and former government officials.  Mot. 22-28.

***Irreparable Harm.***  Epic does not contest that security risks, reputational harm, and compelled business changes to the entire Android ecosystem constitute irreparable harm, but argues there is insufficient evidence these harms will occur.  Opp. 27-30.  Epic is wrong.

Google's evidence of increased security risks to users and developers has not been "rejected at every stage of this case," Opp. 28; in fact, no findings on this issue have ever been made by the jury or any court.  The District Court *disclaimed* responsibility for evaluating security risks, stating it was "in no position to anticipate what those [risks] might be."  1-ER-18.  And the panel wrongly conflated the existence of a "robust record on … potential security risks" with *findings* that those risks were unsubstantiated.  Op. 64.  Nor can Epic contest that degrading Android's security harms Google's brand and competitively disadvantages Google against Apple.  Mot. 24.

Google amply supported that the injunction would require "fundamental business changes that … cannot *easily* be undone."  Mot. 26 (emphasis added)

10

(citation omitted); 2-ER-377-383; 2-ER-386-387. That standard does not require Google to show that "the required modifications … cannot be undone" *in their entirety*, as Epic argues. *Compare* Opp. 29-30, *with FTC v. Qualcomm*, 935 F.3d 752, 756 (9th Cir. 2019) (collecting cases). In contrast to Google's evidence, Epic offers (at 29-30) nothing but its own say-so that Google could easily undo the injunction's requirements, which require fundamentally restructuring Play and its business model for a hundred million U.S. users and 500,000 developers.

Epic also fails to rebut Google's showing of economic harms, including unrecoverable compliance costs and lost competitive position against Apple (which Epic misleadingly reframes as "lost profits"). *See* Opp. 30. *Los Angeles Memorial Coliseum Commission v. National Football League*—the case Epic relies on—held that a *plaintiff's* prospects of lost revenues were not irreparable because it could eventually receive damages. 634 F.2d 1197, 1202 (9th Cir. 1980). Here, it is undisputed that Google will lose millions in *unrecoverable* expenses absent a stay, which constitutes irreparable harm. *In re Victor Techs. Sec. Litig.*, 792 F.2d 862, 863-864 (9th Cir. 1986).[3]

---

[3] Google does not "cast its reduced profits as creating an irreparable disadvantage in competition with Apple." Opp. 31 n.2. Google's competitive-disadvantage injury results from the security risks and from other brand-level harms the injunction inflicts on the Android ecosystem. Mot. 25-26.

11

Epic's observation (at 27) that portions of the injunction do not threaten irreparable harm because they do not "come into effect immediately" is irrelevant. Although the injunction provides time to comply with duty-to-deal remedies,[4] it would require substantial immediate action both on the remedies that come into effect more quickly and to prepare for those coming into effect later, engendering substantial confusion in the market. 2-ER-205-213; 2-ER-377-391; 2-ER-424-429. Epic's version (at 28) of a stay requiring compliance with these provisions "immediately upon the exhaustion of any further appeals" is tantamount to no stay at all.

***Other Equitable Considerations.*** The public interest strongly favors a stay. As national security experts explain, app-based security threats are "far from hypothetical"; immediately constraining Google's ability to protect against those risks "could be catastrophic for the Nation's security." ECF No. 212.2 at 3-7. Denying a stay would also be bad for competition. The perverse incentives created by the panel's preclusion ruling would "chill incentives for platform innovation, and, ultimately, harm consumers by degrading a major product in the market." ICLE Amicus Br., ECF No. 215.2 at 4.

---

[4] The District Court granted a partial administrative stay 11 days after issuing the injunction. Dkt. 1030. The panel issued a new administrative stay one day after it issued its opinion. ECF No. 203.

12

Finally, Epic's claim (at 32) that it will be harmed because it is "excluded from the markets where it seeks to compete" is simply false: Epic has *always* been able to operate a competing Android store and has done so since last August. This argument captures the core fallacy of Epic's suit—Epic does not seek to compete on a level playing field, but on the precise terms that it prefers. That has never been the purpose of antitrust law.

## CONCLUSION

Google's motion should be granted.

Dated: August 25, 2025

Respectfully submitted,

/s/ Neal Kumar Katyal

Neal Kumar Katyal
MILBANK LLP
1101 New York Avenue NW
Washington, DC 20005
Telephone: (202) 835-7505
nkatyal@milbank.com

Katherine B. Wellington
HOGAN LOVELLS US LLP
125 High Street, Suite 2010
Boston, MA 02110
Telephone: (617) 371-1000

Brian C. Rocca
Sujal J. Shah
Michelle Park Chiu
Leigha Beckman
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596

Jessica L. Ellsworth
Reedy C. Swanson
Natalie Salmanowitz
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5886
jessica.ellsworth@hoganlovells.com

Johannah Cassel-Walker
HOGAN LOVELLS US LLP
4 Embarcadero Ctr., Suite 3500
San Francisco, CA
Telephone: (415) 374-2334

Glenn D. Pomerantz
Kuruvilla Olasa
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071

Telephone: (415) 442-1000

Jonathan I. Kravis
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

Telephone: (213) 683-9100

Justin P. Raphael
Dane P. Shikman
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

*Counsel for Defendants-Appellants*

14

# CERTIFICATE OF COMPLIANCE

I certify that this reply complies with applicable type-volume and length limitations of Circuit Rule 27-1(1)(d) and Circuit Rule 32-3 because it contains 2,798 words, excluding the items exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).

This reply complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this reply has been prepared in a proportionally spaced typeface using Microsoft Office Word for Office 365 in 14-point Times New Roman font.

/s/ Neal Kumar Katyal
Neal Kumar Katyal

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on August 25, 2025.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

/s/ Neal Kumar Katyal
Neal Kumar Katyal
